```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
BARBARA HANDSCHU, RALPH DIGIA, ALEX         :
MCKEIVER, SHABA OM, CURTIS M. POWELL        :
ABBIE HOFFMAN, MARK A. SAGAL,               :
MICHAEL ZUMOFF, KENNETH THOMAS,             :
ROBERT RUSCH, ANNETTE T. RUBENSTEIN,        :
MICKEY SHERIDAN, JOE SUCHER, STEVEN         :
FISCHLER, HOWARD BLATT, ELLIE               :         71 Civ. 2203 (CSH)
BENZONI, on behalf of themselves and all others :
similarly situated,                         :
                                            :
                    Plaintiffs,             :
                                            :
      -against-                             :         MEMORANDUM OPINION
                                            :               AND ORDER
SPECIAL SERVICES DIVISION, a/k/a Bureau of  :
Special Services; WILLIAM H.T. SMITH,       :
ARTHUR GRUBERT; MICHAEL WILLIS;             :
WILLIAM KNAPP; PATRICK MURPHY;              :
POLICE DEPARTMENT OF THE CITY OF NEW :
YORK; JOHN V. LINDSAY; and various          :
unknown employees of the Police Department  :
acting as undercover operators and informers, :
                                            :
                    Defendants.             :
----------------------------------------------------------------- x
```

HAIGHT, Senior District Judge:

## I. BACKGROUND

This ongoing litigation had its genesis in 1971, when plaintiff citizens of New York City complained that those in charge of the New York City Police Department ("NYPD") were conducting surveillance and intelligence-gathering activities that violated their rights under the United States Constitution. A class was certified and a consent decree entered establishing guidelines governing police conduct during investigations of political activity ("the Handschu Guidelines" or "the Guidelines"). The Guidelines were amended on the NYPD's motion following

the events of September 11, 2001.[1] Disputes have continued to arise between Class Counsel and the City's Corporation Counsel, representing the NYPD, concerning the meaning and implementation of the Guidelines. The Court has filed a series of opinions in the case. This opinion bears the vintage number "*Handschu IX*." Familiarity is assumed with the Court's most recent opinion and order, *Handschu VIII*, 2007 WL 1711775 (S.D.N.Y. June 13, 2007) (hereinafter "the 6/07 Opinion" or "the 6/07 Order"), as well as with *Handschu I - Handschu VII*, cited and summarized in *Handschu VIII* at *1-5. *Handschu V*, 288 F. Supp. 2d 411 (S.D.N.Y. 2003), is referred to hereinafter as "the 8/03 Order." *Handschu VII*, 475 F. Supp. 2d 331 (S.D.N.Y. 2007), is referred to hereinafter as "the 2/07 Order." The facts of the case are recounted only to the extent necessary to explicate the present disputes and the Court's resolution of them. Those disputes arise in the context of the NYPD Guidelines the NYPD included in its Patrol Guide as the result of the Court's prior opinions and orders. *See* the 6/07 Opinion, 2007 WL 1711775, at *1-4. The full text of the NYPD Guidelines appears as an appendix to the 8/03 Order. *See* 288 F. Supp. 2d at 419-30.

The Court's 2/07 Order granted Class Counsel's motion to enjoin the implementation of Interim Order 47 ("Order 47") issued by NYPD Commissioner Raymond Kelly to regulate the NYPD's photographing and videotaping of public demonstrations and participants in them. Corporation Counsel was dissatisfied by the 2/07 Order and moved under Rules 59 and 60(b)(1), Fed. R. Civ. P., and Local Rule 6.3 to vacate or modify it. The Court's 6/07 Order vacated its 2/07 Order and appeared, on its face, to give the NYPD much of the relief it asked for. But Corporation

---

[1] Throughout this litigation the Corporation Counsel of the City of New York, who represent all the defendants, have referred to the defendants collectively as "the City." The Court's opinions refer to the principal defendant as "the NYPD." For purposes of this and the prior opinions, the terms are synonymous.

Counsel remain dissatisfied. Brush fires of controversy continue to burn. To understand the nature of the continuing disputes, it is necessary to recite certain of the Court's prior holdings in some detail.

A.  **What the 6/07 Opinion Held**

The 6/07 Opinion contains four holdings.

First, I held that "under the present wording of the consent decree and the Guidelines, police conduct must violate a class member's constitutional rights in order to sustain a motion by Class Counsel to hold the NYPD in contempt." 2007 WL 1711775, at *10. That holding accepted the NYPD's contention that the Court's 2/07 Order was inconsistent with its 8/03 Order. Accordingly, the Court vacated the 2/07 Order.

Second, I held that since "[t]he NYPD Guidelines resulted from a promise made to the Court by the NYPD," were "enacted in compliance with an order of the Court," and were expressly ordered to "remain in the NYPD Patrol Guide unless otherwise directed by the Court," those acts "brought the NYPD Guidelines within the ambit of the court's equitable power," 2007 WL 1711775 at *10, *12; and "if it were shown that the NYPD had adopted a policy that disregards the NYPD Guidelines, the Court may exercise its continuing equitable powers in granting appropriate injunctive relief," *id.* at *20. That holding rejected the NYPD's contention that "Class Counsel cannot complain of and the Court cannot consider NYPD conduct that violates the NYPD Guidelines but not the Constitution." *Id.* at *10. I further explained that, in the specific context of the NYPD's videotaping practices, such equitable relief "could not be premised upon isolated and aberrant photographing or videotaping in manners that did not comply with the NYPD Guidelines"; rather, "Class Counsel would have to demonstrate that the NYPD, in the course of photographing or

3

videotaping public gatherings and their participants, systematically and repeatedly disregarded the NYPD Guidelines, to a degree sufficient to show a NYPD policy to act in such a fashion." *Id.* at *20.

Third, I held that the NYPD Guidelines only apply when the police collect information for the purpose of investigating political activity. 2007 WL 1711775, at *14-16. However, I noted that "the NYPD's proffered purpose is not necessarily determinative," and that a purpose to investigate political activity "could be inferred from objective indicia," such as the manner of investigation or the subsequent use of collected information. *Id*. at *16. I also explained that "while an investigative purpose [meaning a purpose to investigate political activity] is required in order for the [NYPD] Guidelines to apply, the presence of a non-investigative purpose does not preclude application of the [NYPD] Guidelines," *id* at *15; and I specifically noted that "the NYPD Guidelines might still apply in the presence of a legitimate law enforcement purpose, so long as there was *also* a purpose to investigate political activity," *id*. at *15 n.16.

Fourth, after considering the texts, I held: "The NYPD Guidelines are therefore not violated by Order 47 on its face." 2007 WL 1711775, at *20. That holding accepted the NYPD's contention. However, I went on to say: "But in the light of the foregoing analysis, there remains the possibility that they could be violated by Order 47 as applied." *Id.* That latter observation sets the stage for the ongoing disputes revealed by the most recent submissions of the parties. They are sparked by what I then said in the 6/07 Opinion, part of which was also quoted *supra*:

> It is that entire picture that would need to be examined in order to discern whether a purpose to investigate political activity was present, and if so, whether the photographing or videotaping of a demonstration violated the NYPD Guidelines.

4

> It is for Class Counsel to say whether Class Counsel believe they presently have sufficient evidence to make such a case, particularly in light of the NYPD's recently submitted affidavits after months of imprudent delay. Should Class Counsel believe that Order 47 has been applied in a manner that violates the NYPD Guidelines and should they consider an evidentiary hearing necessary to resolve the as-applied question, they may make that application to the Court. Similarly, they may reapply for discovery of the documentation required by Order 47 in order to assess the Order's implementation by the NYPD.
>
> It is useful to emphasize that while for the reasons stated in Part II.C., *supra*, this Court has equitable powers to enforce the promise the NYPD gave and memorialized in the NYPD Guidelines in order to obtain the Court's modification of the consent decree, a finding that the NYPD broke that promise could not be premised upon isolated and aberrant photographing in manners that did not comply with the NYPD Guidelines. To trigger the Court's equitable powers, Class Counsel would have to demonstrate that the NYPD, in the course of photographing or videotaping public gatherings and their participants, systematically and repeatedly disregarded the NYPD Guidelines, to a degree sufficient to show a NYPD policy to act in such a fashion.

20007 WL 1711775, at *20. That analysis echoes *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978), cited at *20 n. 20.

**B.     The Present Applications of the Parties**

There are two applications presently before the Court.

First, the NYPD moves for an order amending, altering, or reconsidering the 6/07 Order pursuant to Federal Rule of Civil Procedure 59 and Local Civil Rule 6.3. Corporation Counsel contend that the 6/07 Opinion improperly overlooked Section X of the NYPD Guidelines, captioned "Reservation," which states that the Guidelines "may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party" and do not "place any limitation on otherwise lawful investigative and litigative prerogatives of the NYPD or the City of New York."

In light of this provision, Corporation Counsel propose that any proceeding challenging a policy on the ground that it disregards or violates the NYPD Guidelines must be (1) subject to a threshold determination of whether there is a legitimate law enforcement purpose for the challenged policy (because "the Section X Reservation permits law enforcement activity supported by a legitimate law enforcement purpose," Corporation Counsel Brief dated June 27, 2007 at 6), and (2) submitted to the Handschu Authority for investigation and report, without the participation of Class Counsel, prior to any proceedings before this Court.[2]

Second, Class Counsel "ask the Court for permission to seek discovery of the documentation required by Interim Order 47, in order to assess the Order's implementation by the NYPD." Class Counsel Letter Brief dated July 2, 2007 at 1-2. Class Counsel suggest that such discovery will help it demonstrate "that the NYPD videotaping policy involves the widespread and systematic recording of political activity in circumstances where such recording is not supported by a law enforcement purpose and that, therefore, it is the custom and practice of the NYPD to violate the Modified Handschu Guidelines." *Id*. at 2.

## II. DISCUSSION

### A. The NYPD's Motion for Amendment, Alteration, or Reconsideration

Corporation Counsel moves for relief upon Federal Rule of Civil Procedure 59 and Local Civil Rule 6.3. Corporation Counsel also filed a notice of appeal from the 6/07 Opinion and Order. Class Counsel moved in the Court of Appeals to dismiss the appeal. Before the Court of Appeals ruled on that motion, the parties stipulated to the withdrawal of the notice of appeal. The case is now

---

[2] The NYPD's successful motion to modify the Handschu Guidelines limited the responsibilities and powers of the Handschu Authority. Corporation Counsel's present suggestion would expand them.

before this Court on the NYPD's motion under Rule 59 and Local Rule 6.3. Class Counsel contend that the motion does not lie under Rule 59 because that Rule applies only to appealable judgments or orders. In Class Counsel's view, the 6/07 Order cannot be so characterized. The parties have exchanged erudite briefs on that question. I need not resolve it because the NYPD's motion clearly lies under Local Rule 6.3. That Rule allows a party to move for reconsideration of a court's order or decision on a motion on the ground, *inter alia*, that the Court overlooked material matters or controlling authority. In the case at bar, the NYPD contends principally that this Court's 6/07 Opinion and Order overlooked Section X of the NYPD Guidelines, captioned "Reservation," with which the NYPD Guidelines conclude. Specifically, the NYPD relies upon the last paragraph of the Section X Reservation, which as previously noted states:

> These guidelines are set forth solely for the purpose of internal NYPD guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitation on otherwise lawful investigative and litigative prerogatives of the NYPD or City of New York.

On this motion the NYPD does not ask explicitly for reconsideration of the 6/07 Opinion's holding that the Court has the equitable power to enforce the NYPD's promise to abide by the NYPD Guidelines. Instead, the NYPD focuses upon the quoted Reservation. Its argument is distilled in Corporation Counsel's Reply Letter Brief dated July 23, 2007 at 1:

> At the heart of the City's motion is the principle that the equitable power to enforce the NYPD's promise to abide by the [NYPD] Guidelines must take into account that the Section X Reservation limits the creation of any rights on the part of the class to enforce the [NYPD] Guidelines. The class cannot gain though the back door what neither the Consent Decree nor the [NYPD] Guidelines permit, namely the right to initiate proceedings to enforce the [NYPD] Guidelines in the absence of a Constitutional violation.

7

The NYPD's argument appears to be that while the Court has the equitable power and the duty to oversee and correct NYPD policies that disregard the NYPD Guidelines but do not violate the Constitution (as indeed the 6/07 Opinion held), the Section X Reservation significantly limits the Court's oversight function and Class Counsel's ability to participate in the process. Furthermore, the NYPD's motion appears to suggest that the Court's previously noted holding that "the NYPD Guidelines might still apply in the presence of a legitimate law enforcement purpose, so long as there was *also* a purpose to investigate political activity" was mistaken in light of the Section X Reservation.

The 6/07 Opinion did not specifically discuss the Reservation. Corporation Counsel properly invoke Local Rule 6.3 to suggest that the Court improperly overlooked it.

The Court did discuss the Section X Reservation in *Handschu V*, 288 F. Supp. 2d 411, a/k/a the 8/03 Order. That opinion granted Class Counsel's motion to have the NYPD Guidelines, included in the Patrol Guide, made a part of the Court's order and judgment in the case. Class Counsel proposed "to leave unchanged the 'Reservations' paragraph with which the Modified Handschu Guidelines appearing in the NYPD Patrol Guide concludes, but to include in a revised Order and Judgment language to the effect that (to quote counsel's letter) 'the last paragraph of the Guidelines shall be read in the light of the fact that the Guidelines are incorporated in the Consent Decree, and procedures under the Consent Decree may be pursued in case of an alleged violation of the Decree.'" *Id*. at 418. I stated approvingly that "[t]his approach gives the plaintiff class an increased protection warranted by recent events without unfairly burdening the NYPD," observed that "[r]etention of the Guidelines' 'Reservations' paragraph continues to insulate the NYPD from

8

*individual legal actions* based upon perceived failures to follow the Guidelines which do not rise to a constitutional level," and concluded with the reflection that "the history of this class action, going back to the entry of the first consent decree in 1985, reflects the parties' understanding that *Class Counsel, not individual plaintiffs*, would bring any motion to hold the NYPD in contempt." *Id*. at 418-19 (emphasis added) (footnote omitted).

In *Handschu V*, I interpreted the Section X Reservation to support the distinction the opinion drew between Class Counsel, representing the entire plaintiff class, and individual class members as plaintiffs. That distinction reflects the central role played by Class Counsel in this ongoing case, and the practical benefit to the Court and all parties (including the NYPD) of entrusting Class Counsel with the protection of the interests of all class members. *Handschu V* dealt principally with constitutional claims. The 6/07 Opinion, dealing with the Court's equitable Guidelines oversight, also emphasizes Class Counsel's key role. The 6/07 Opinion summarizes the second question presented as "whether, under the consent decree and the Guidelines as they are presently worded, Class Counsel cannot complain of and the Court cannot consider NYPD conduct that violates the NYPD Guidelines but not the Constitution," and answers that question in the negative. 2007 WL 1711775, at *10.

Given the Court's prior holdings in the case, and upon careful reconsideration, I conclude that Section X's limitation on the creation of enforceable rights, properly understood, prohibits (1) *individual* legal actions based on violations of the NYPD Guidelines, and (2) legal actions in the name of the plaintiff class based on *isolated instances* of violations of the NYPD Guidelines that do not rise to constitutional violations; but the Section X Reservation does not preclude *Class Counsel* from challenging NYPD *policies* that disregard the NYPD Guidelines.

9

I am unpersuaded by Corporation Counsel's claim, based on the Section X Reservation, that the NYPD Guidelines place no limitation on police activity whenever there is a legitimate law enforcement purpose. Such a reading would effectively eviscerate the substantive requirements of the NYPD Guidelines, and is unreasonable in the history and context of the case. When the NYPD promised to adopt the NYPD Guidelines, when the Court conditioned the granting of the NYPD's modification motion upon the enactment of the NYPD Guidelines, when the Court ordered the NYPD Guidelines to remain in the NYPD Patrol Guide, and when the Court incorporated the NYPD Guidelines into the consent decree and amended judgment, the parties and the Court clearly had in mind the *substantive* provisions of the NYPD Guidelines—the actual *guidelines* for investigation—and not merely a commitment that the police act with some "legitimate law enforcement purpose." I take this opportunity to adhere to and reaffirm the holdings in the 6/07 Opinion, previously noted, that while an NYPD purpose to investigate political activity "is required for the [NYPD] Guidelines to apply," the concomitant presence of a different purpose "does not preclude the application of the [NYPD] Guidelines," and that "the NYPD Guidelines might still apply in the presence of a legitimate law enforcement purpose, so long as there was *also* a purpose to investigate political activity." 2007 WL 1711775, at *15, *15 n.16.

Given this analysis of the Section X Reservation, and viewing the Reservation in the setting of the Court's prior rulings and the totality of the circumstances of the case, I reject Corporation Counsel's contention that any challenge by Class Counsel to an NYPD policy on the ground that it disregards or repudiates the NYPD Guidelines on investigations into political activity is subject to a threshold determination of whether there is also a legitimate law enforcement purpose, or must be submitted to the Handschu Authority for investigation, before the matter may be considered by this

Court.

**B.      Class Counsel's Request for Discovery**

Class Counsel has applied to the Court for "permission to seek discovery of the documentation required by Interim Order 47, in order to assess the Order's implementation by the NYPD." Class Counsel Letter Brief dated July 2, 2007 at 2-3.

If the responsible NYPD officers complied with the documentation requirements contained in Interim Order 47, a considerable paper trail was generated by each police request for the use of photographic or visual recording (videotaping) equipment.  Specifically, Order 47 requires a "ranking officer" of the Department who is contemplating the use of photographic or videotaping equipment to submit a written report "on typed letterhead" to his or her "Patrol Borough/Bureau Commander" requesting the deployment of such equipment and trained personnel. The request must include the date, time, and location of the incident or event to be recorded; the identity of the individuals or groups involved; and "the specific permissible objective(s) to be achieved." A Patrol Borough/Patrol Commander is required to enter each such request in a log maintained for that purpose, and to document the approval or disapproval of the request, giving the reasons for a disapproval. Upon completion of an approved photographing/videotaping, the recordings are to be maintained "for a minimum of one (1) year from the date the images were recorded," and a "written summary describing the event and activities preserved in each recording, to assist in indexing and retrieval" must be prepared. After one year, materials that do not contain evidence of criminal activity or are not "deemed valuable for other purposes, for example, litigation, training, after action reports, etc." and consequently are not preserved for that reason "may be destroyed." Interim Order 47 at 2-4.

As I have previously observed, in a letter dated July 2, 2007 at 1-2, Class Counsel state:

> Counsel for the Handschu plaintiff class now ask the Court for permission to seek discovery of the documentation required by Interim Order 47, in order to assess the Order's implementation by the NYPD. We note that there is an outstanding notice for discovery, which we intend to amend and re-serve. After conducting such discovery, we will ask to present evidence to the Court, in support of the pending motion of the plaintiff class, that the NYPD videotaping policy involves the widespread and systemic recording of political activity in circumstances where such recording is not supported by a law enforcement purpose and that, therefore, it is the custom and practice of the NYPD to violate the Modified Handschu Guidelines.

With all due respect to counsel, there is a degree of advocate's breast-beating in this passage. Counsel's professed belief of what discovery will unearth is entirely conclusory. The only evidence presently in the record has to do with the videotaping of two public demonstrations referred to in prior opinions, where the descriptions contained in affidavits submitted by class member witnesses and NYPD attorney witnesses are irreconcilable. *See* the 6/07 Opinion, 2007 WL 1711775, at * 4-6.

That limited amount of present proof leads Corporation Counsel to dismiss Class Counsel's present discovery request as based upon "the mere whim of class counsel, without regard to whether or not there is a factual basis for believing a policy exists," and to contend that granting the discovery "amounts to monitoring of the NYPD by class counsel, a result grossly at odds with the Consent Decree." With equal respect to counsel, there is also some advocate's chest-beating here. A "monitor," in consent decree parlance, is appointed by a court to observe, direct, and report upon future conduct of the individuals or entity being monitored. Class Counsel would not perform that function. Their discovery, if granted, would be confined to presently existing documents generated by Interim Order 47 from the date it became effective to the date of the Court order granting discovery. And it is unfair to disparage Class Counsel's request as indulging a "mere whim," given the vastly differing accounts of the public events contained in the record.

I think it obvious that the requested discovery may shed light on disputed factual issues with respect to the NYPD's implementation of Interim Order 47. For example, the documentation may help indicate whether the undisputed fact that Deputy Commissioner Cohen, charged with the supervision of investigations into political activity, has never been asked to approve a request to videotape under the Interim Order 47 protocol is indicative of an NYPD policy to disregard the NYPD Guidelines. I should not be understood as predicting such a revelation. I say only that Class Counsel is entitled to inquire.

The document discovery requested by Class Counsel is limited in scope, namely, the documents generated by the operation of Interim Order 47. This will not unduly burden the NYPD. After that production is made, Class Counsel will bear the burden of justifying further discovery or other litigation with respect to the sort of claim described in the 6/07 Opinion, 2007 WL 1711775, at *20. Class Counsel's present request for discovery will be granted.

If these documents are content-sensitive, safeguards are available: an attorneys'-eyes-only confidentiality order; prohibiting or limiting copying; and related remedies. These are only suggestions. I intimate no present view as to what safeguards, if any, should actually be put in place. Counsel are directed to work together in the mutual good faith that has characterized this case to agree on a protective order, should one be desired. Absent an agreement, the Court will resolve any differences.

### III. CONCLUSION

For the foregoing reasons, the Court makes this Order:

1. Assuming without deciding that the 6/07 Opinion and Order fall within the ambit of Fed. R. Civ. P. 59, the NYPD's motion for relief under Rule 59 is DENIED.

2. The NYPD's motion for reconsideration under Local Civil Rule 6.3 is DENIED.

3. Class Counsel's request for discovery, as set forth in their Letter Brief dated July 2, 2007, is GRANTED.

4. The case will proceed in a manner consistent with this Opinion and Order.

It is SO ORDERED.[3]

Dated: New York, New York
February 27, 2008

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Presumably Corporation Counsel will consider filing another notice of appeal. Whether the 6/07 Order and this Order are appealable is for the Court of Appeals to decide. If those Orders are not appealable as of right, and given the importance of the issues presented, this Court would consider an application to certify the Orders for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). There is precedent for an interlocutory appeal from a district court's discovery order. In *Herbert v. Lando*, 73 F.R.D. 387 (S.D.N.Y. 1977), a defamation action brought by a public figure against a television station, this Court granted an order compelling discovery of the defendants' editorial processes in producing the program in question. The Second Circuit reversed. 568 F.2d 974 (2d Cir. 1977). The Supreme Court granted certiorari, reversed the Second Circuit, and reinstated this Court's discovery order. 441 U.S. 153 (1979).

14