**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - -x
           :

BARBARA HANDSCHU, et al.,
           :
           :

        Plaintiffs,
           :
                No. 71 Civ. 2203 (CSH)

       v.
           :
                **MEMORANDUM OPINION**

POLICE DEPARTMENT OF THE CITY
                **AND ORDER**
OF NEW YORK, et al.,
           :

        Defendants.
           :

- - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/19/10

HAIGHT, Senior United States District Judge:

This civil rights action against the New York City Police Department ("NYPD"),

complaining about certain surveillance and intelligence-gathering conduct, was filed in 1971. This

Court certified the suit as a class action in 1979, and in 1986 approved a settlement agreed upon by

the plaintiff class and the NYPD. That settlement created what came to be known as the "Handschu

Guidelines" governing the pertinent police conduct. The Court modified the Guidelines in 2003.

The case, now in its 39th year, has generated a number of opinions in this Court and the Court of

Appeals. Familiarity with those opinions is assumed. They need not be recounted in detail to

address the present issues, which this opinion resolves.

The present issues arise out of a motion by Class Counsel for a declaration that the plaintiff

class is the prevailing party in respect of a particular aspect of the litigation, thereby entitling the

class to attorneys' fees under the fee-shifting provisions of 42 U.S.C. § 1988, and for related relief.

The NYPD, represented by the Corporation Counsel of the City of New York (hereinafter

"Corporation Counsel"), contends that the class should not be regarded as a prevailing party, and that in any event the award of attorneys' fees would not be appropriate in the circumstances of the case. The pertinent facts, essentially undisputed, are established by certain of the Court's prior opinions, and by affidavits submitted by the parties previously and on the present motion. The issues have been fully briefed. The Court has heard oral argument.

## I. BACKGROUND

Following the modification of the Handschu Guidelines, the NYPD promulgated Interim Order 47, which is captioned "Guidelines for the Use of Photographic/Video Equipment to Record Police Operations and Public Activities" and sets forth detailed instructions and procedures for such conduct by NYPD officers.

In November 2005 Class Counsel, contending that Interim Order 47 violated the modified Handschu Guidelines and the First Amendment to the United States Constitution, moved to enjoin the NYPD from continuing to implement Interim Order 47 with respect to the videotaping of political activity. Corporation Counsel resisted that motion.

The validity and implementation of Interim Order 47 gave rise to spirited litigation and three separate opinions of the Court, described in Part II, *infra*. However, the present motion turns upon related but different circumstances. The motion papers establish that on April 13, 2007, the NYPD replaced Interim Order 47 (the target of the plaintiff class's motion for equitable relief) with Interim Order 22, which contained a materially different set of procedures and directives.[1] But Corporation

---

[1] This portion of the discussion in text is taken from an earlier opinion and order, reported at 2009 WL 666940 (S.D.N.Y. March 13, 2009), and reproduced here for the sake of continuity.

Counsel did not inform Class Counsel or the Court that Interim Order 47 was no longer in effect. On the contrary, from April 2007 until September 2008, during the course of a number of hearings, submission of motion papers, and correspondence, Corporation Counsel defended Interim Order 47 and resisted discovery into its application requested by Class Counsel, just as if (contrary to the fact) Interim Order 47 was still in full force and effect.

It was not until September 2008 that Corporation Counsel informed Class Counsel that Interim Order 22 had replaced Interim Order 47; and even then, Corporation Counsel's disclosure was inadvertent, not intentional. Specifically, on August 11, 2008 Corporation Counsel complied with an order of the Court allowing the plaintiff class discovery into the manner in which the NYPD was applying Interim Order 47 (discovery which Corporation Counsel had energetically resisted in submissions during July 2008). In so complying, Corporation Counsel delivered to Class Counsel 83 NYPD videotapes, which Corporation Counsel described in a letter as "taken during the *effective period* of Interim Order 47." (emphasis added). Struck by this wording, Class Counsel wrote a letter dated August 19, 2008 to Corporation Counsel, stating: "The wording of your letter suggests to us that Interim Order 47 is no longer in effect. Please advise whether that is correct and if it is, please provide us with a copy of the policy or procedure that has replaced Interim Order 47." Corporation Counsel replied in a letter dated September 18, 2008, which said in pertinent part: "We write in response to plaintiffs' letter dated August 19, 2008, wherein plaintiffs request 'a copy of the policy or procedure that has replaced Interim Order 47.' . . . In response, Defendants enclose Interim Order 22, dated April 13, 2007, consisting of pages 1 though 3."[2]

---

[2] The system by which the NYPD numbers its Interim Orders is baffling, but not material to the issues.

3

As a result of the NYPD's promulgation of Interim Order 22 to replace Interim Order 47, and in the light of certain prior decisions by the Court during the litigation, Class Counsel now move to have the plaintiff class declared a "prevailing party" under § 1988 on its underlying motion for injunctive relief, thereby paving the way for an application for attorneys' fees. Class Counsel also ask the Court, in an exercise of its equitable powers, to direct the NYPD "to give notice to plaintiff class counsel and to the Court of any decision to withdraw Interim Order 22 or to substitute a new policy concerning the videotaping or photographing of political activity for that set forth in Interim Order 22." Supplemental Notice of Motion at 2. Class Counsel do not attempt to conceal their irritation, manifestly genuine and not feigned for the sake of advocacy, at Corporation Counsel's continuing to litigate the validity and effect of Interim Order 47 long after that Order had been replaced by Interim Order 22, without notifying Class Counsel or the Court of the change.

Corporation Counsel express indignation at Class Counsel's indignation, defend the conduct of their Office and the NYPD, deny that the plaintiff class is a "prevailing party" under the statute and is entitled to any attorneys' fees, and object to the request that the NYPD give notice of any changes in the policies and procedures set forth in Interim Order 22.

## II. DISCUSSION

### A.    Is the Plaintiff Class a "Prevailing Party?"

### 1.    *The Statute*

The governing statute is 42 U.S.C. § 1988, which provides in pertinent part:

> In any action to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

4

42 U.S.C. §1988 (b).

"The legislative history of § 1988 makes clear that a plaintiff who has prevailed on a claim under § 1983 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 95, 97 (2d Cir. 1997) (citing and quoting S. Rep. No. 94-1011, at 4 (1976)). "We review the district court's grant of attorney's fees for abuse of discretion." *Garcia v. Yonkers School District*, 561 F.3d 97, 102 (2d Cir. 2009). "Inasmuch as the resolution of the district court's grant of attorney's fees implicates questions of law, our review is *de novo.*" *Id.* (citation omitted).

## 2.   *The Litigation*

To determine whether the plaintiff class should be regarded as the "prevailing party" in that aspect of the case identified on the present motion, it is necessary to revisit three prior opinions of this Court, which I refer to by the numerology developed for this 38-year old case: *Handschu VII*, 475 F. Supp. 2d 331 (S.D.N.Y. February 15, 2007); *Handschu VIII*, 2007 WL 1711775 (S.D.N.Y. June 13, 2007); and *Handschu IX*, 2008 WL 515695 (S.D.N.Y. Feb. 27, 2008).

*Handschu VII* recites that "on September 10, 2004, the NYPD by direction of Commissioner Kelly distributed Order 47 to all commands." 475 F. Supp. 2d at 334. The plaintiff class commenced that aspect of the litigation pertinent to this motion by moving "to enjoin enforcement of Order 47 and the implementation by the NYPD of the procedures the Order directs." *Id.* The class based that motion upon two claims: (1) Interim Order 47 and police conduct implementing the

Order violated the Modified Handschu Guidelines, *id.* at 338-353;[3] and (2) the procedures established by Interim Order 47 and police activities conducted thereunder constituted violations of the United States Constitution, *id.* at 353-355.

The Court's opinion in *Handschu VII* rejected the plaintiff class's constitutional challenge to Interim Order 47, principally on the authority of *Laird v. Tatum*, 408 U.S. 1 (1972), and its progeny. 475 F. Supp. 2d at 353-355. As for the class's contention that Interim Order 47 violated the Handschu Guidelines, the Court accepted the class's contentions in part, and entered an order, *id.* at 357, which has come to be known as "the 2/07 Order." I will use that designation in this opinion. The specifics of the 2/07 Order are not recited here, because its directives were changed as the result of the opinions in *Handschu VIII* and *Handschu IX*.

*Handschu VIII* was generated by the NYPD's motion under Federal Rules of Civil Procedure 59 and 60(b)(1) and Local Civil Rule 6.3 for, *inter alia*, an order "vacating, altering, and/or reconsidering" the 2/07 Order with which *Handschu VII* concluded. The parties' submissions on these two motions made it apparent that the differences and disputes between the plaintiff class and the NYPD extended far beyond the narrow boundaries of Interim Order 47's validity and implementation. Those submissions revealed a fundamental disagreement about the rights and obligations of the parties within the context of the entire case, as shaped by the Court's earlier opinions and orders. *Handschu VIII* took note of that fundamental disagreement:

---

[3] The manner in which the original Handschu Guidelines morphed into the Modified Handschu Guidelines, or "Modified Handschu" as they are sometimes called, is summarized in *Handschu VIII*, 2007 WL 1711775, at *4. In this opinion, I will henceforth refer to the present version as "the Handschu Guidelines" or "the Guidelines." It should also be noted that the Modified Handschu Guidelines were incorporated into the text of the NYPD Patrol Guide and are sometimes referred to as "the NYPD Guidelines."

> Modified Handschu is the version of the decree under which the parties have coexisted since August 2003. Nevertheless, it appears that uncertainty remained as to the consequences of my incorporation of the NYPD Guidelines into the Order and Judgment of the Court. When Class Counsel appeared before the Court with their motion to enjoin Interim Order 47, they possessed one view of those consequences; it turned out that Corporation Counsel possessed quite another. In *Handschu VII*, the 2/07 opinion and order, I granted Class Counsel's motion. For the reasons there stated, I held that Modified Handschu empowered the plaintiff class to seek relief – including contempt – for violations of the NYPD Guidelines and that Interim Order 47 violated the NYPD Guidelines. It is this 2/07 Order that the NYPD's present motion requires me to revisit.

2007 WL 1711775, at *4. The sensation is akin to pulling on a loose thread and unraveling the entire sweater.

In *Handschu VIII*, the NYPD contended that "the 2/07 Order misinterpreted or impermissibly modified the consent decree as it has been interpreted in prior orders of this Court." 2007 WL 1711775, at *7. In support of that contention, the NYPD made three arguments: (1) The 2/07 Order's conclusion that the NYPD could be subject to contempt for non-constitutional violations of the NYPD Guidelines was inconsistent with a prior order making the NYPD subject to contempt only for violations of the Guidelines that rise to a constitutional level. (2) Sole power to ensure non-constitutional compliance with the Guidelines is vested in the Police Commissioner. (3) In determining whether Interim Order 47 conflicted with the Guidelines, the 2/07 Order's interpretation of the Guidelines conflicted with a prior determination of their scope. *Id.* I prefaced the discussion in *Handschu VIII* by saying : "For the reasons that follow, I agree with the first and third of the NYPD's contentions. The 2/07 Order must perforce be vacated. I disagree with the NYPD's second contention." *Id. Handschu VIII*, dated June 13, 2007, vacated the 2/07 Order, concluded with certain holdings, and has come to be called "the 6/07 Opinion."

7

Still dissatisfied, the NYPD made yet another motion, this time under Federal Rule 59 and Local Rule 6 .3 of Civil Procedure, for relief from or reconsideration of the 6/07 Opinion. That motion begat *Handschu IX*, dated February 27, 2008. The NYPD asserted that the 6/07 Opinion in *Handschu VIII* overlooked the Section X "Reservation" with which the NYPD Guidelines concluded, and which, the NYPD contended, "significantly limits the Court's oversight function and Class Counsel's ability to participate in the process." *Handschu IX*, 2008 WL 515695, at *4. Class Counsel, content with the 6/07 Opinion and its accompanying directives, opposed the NYPD's motion for reconsideration and cross-moved for the Court's "permission to seek discovery of the documentation required by Interim Order 47, in order to assess the Order's implementation by the NYPD." *Id.*, at *6. *Handschu IX* denied the NYPD's motion attacking the 6/07 Opinion, and granted the plaintiff class's cross-motion for discovery into how the NYPD was implementing Interim Order 47.

It is now necessary to take a deep breath and review the rights and obligations of the parties as of February 27, 2008, the date the Court decided *Handschu IX.* Those rights and obligations were defined, amplified and clarified by the *Handschu VII, VIII,* and *IX* trilogy. Those opinions and their accompanying orders may be summarized as follows:

1. The Court *rejected* the plaintiff class's claims that Interim Order 47 was facially invalid under the Guidelines or the Constitution, but recognized the possibility that the Order could violate the Guidelines as applied.

2. The Court *accepted* the NYPD's claim that police conduct must violate a class member's constitutional rights in order to sustain a motion by Class Counsel to hold the NYPD in contempt of the Court's order establishing the Guidelines.

8

3. The Court *rejected* the NYPD's claim, advanced repeatedly in different guises, that the Police Commissioner had sole power to ensure the NYPD's compliance with the Guidelines in matters not implicating the Constitution, with Class Counsel and the Court having no roles to play in that regard.

4. The Court *accepted* plaintiff class's claim that, contrary to the NYPD's contention, the Guidelines and the NYPD's compliance with them fell within the Court's equitable power, and that if Class Counsel were able to demonstrate the NYPD had adopted a policy that disregarded the Guidelines, the Court may exercise that equitable power and grant equitable relief.

5. The Court *held* that the Guidelines' Section X Reservation's "limitation on the creation of enforceable rights, properly understood, prohibits (1) *individual* legal actions based on violations of the NYPD Guidelines, and (2) legal actions in the name of the plaintiff class based on *isolated instances* of violations of the NYPD Guidelines that do not rise to constitutional violations; but the Section X Reservation does not preclude *Class Counsel* from challenging NYPD *policies* that disregard the NYPD Guidelines." *Handschu IX*, 2008 WL 515695, at *5 (emphasis in original).

6. Given that holding that Class Counsel had standing to challenge NYPD policies, the Court *granted* the plaintiff class's motion to discover the NYPD documentation required by Interim Order 47.

Those were the rules of engagement on February 27, 2008, established after vigorous litigation and three opinions by this Court. From all outward appearances, in February 2008 the NYPD was conducting photographic and video surveillance in accordance with the provisions of Interim Order 47. Class Counsel, exercising the right granted by the Court in *Handschu IX*, served discovery demands upon the NYPD with respect to the documents whose creation Order 47

9

mandated. However, as recounted in Part I, *supra*, during that discovery process the NYPD inadvertently revealed that *on April 13, 2007* the NYPD had rescinded Interim Order 47 and replaced it with Interim Order 22, without notifying either Class Counsel or the Court.

That revelation triggered the plaintiff class's present motion.

### 3.    *The Plaintiff Class as Prevailing Party*

The NYPD contends that the plaintiff class cannot be regarded as the prevailing party in the litigation focusing upon Interim Order 47 because the class's motion initially sought injunctive relief on the grounds that Order 47 was facially invalid under the Guidelines and the First Amendment, and the Court rejected both claims.

If the facial validity of Interim Order 47 was the only issue addressed by the Court's three subsequent opinions – the *alpha* and *omega* of this chapter of the case – then the NYPD's position would be unassailable. However, as the discussion in Part II.2. demonstrates, during the course of this part of the case, additional issues were raised by the submissions of both parties, vehemently argued by counsel, and decided by the Court. On one of those additional issues, the Court accepted the contention of Class Counsel and rejected that of the Corporation Counsel, resulting in the Court's holding that Class Counsel could assert a non-constitutional claim that an NYPD policy violated the Guidelines, and if the claim be proven, obtain injunctive relief for the benefit of the class. If the plaintiff class can be characterized as a prevailing party, it is because of the ways in which that issue was posed by the parties and decided by the Court.

It is therefore necessary to review that issue and its resolution in greater detail. A useful method of doing so is to quote pertinent passages from *Handschu VIII* and *Handschu IX*:

10

> Corporation Counsel contend that in the case of non-constitutional violations, sole and unfettered authority is vested in the Police Commissioner to monitor and enforce compliance with the NYPD Guidelines. Counsel base that contention upon their characterization of the NYPD Guidelines incorporated in the Patrol Guide as "internal." In Corporation Counsel's view, so long as police conduct does not violate a class member's constitutional rights, the Commissioner may turn a blind eye and a deaf ear to a violation or disregard of the procedures required by the NYPD Guidelines, whether that violation or disregard is an isolated incident or an established practice. The careful reader will understand that I am not saying Commissioner Kelly has behaved in this fashion or is likely to do so. But the logical conclusion of Corporation Counsel's argument poses the question whether the Commissioner could behave that way if he chose, with Class Counsel and the Court powerless to take any action. Upon careful consideration, I answer this question in the negative.

*Handschu VIII*, 2007 WL 1711775, at \*10 (citations to record omitted)..

> The 6/07 Opinion [*Handschu VIII*] contains four holdings . . . .

> Second, I held that since the NYPD Guidelines resulted from a promise made to the Court by the NYPD, were enacted in compliance with an order of the Court, and were expressly ordered to remain in the NYPD Patrol Guide unless otherwise directed by the Court, those acts brought the NYPD Guidelines within the ambit of the Court's equitable power, and if it were shown that the NYPD had adopted a policy that disregards the NYPD Guidelines, the Court may exercise its continuing equitable powers in granting appropriate injunctive relief. That holding rejected the NYPD's contention that Class Counsel cannot complain of and the Court cannot consider NYPD conduct that violates the NYPD Guidelines but not the Constitution.

*Handschu IX*, 2008 WL 515695, at \*1-\*2 (citations and internal quotation marks omitted).

That holding, resolving a core question in the case, determined a crucial relationship between Class Counsel and the NYPD under the Guidelines, namely, Class Counsel's ability to inquire into and challenge NYPD policies and the NYPD's obligation to respond to such inquiries and challenges, rather than simply ignoring them. Had the NYPD's contention prevailed, much of the

11

combined efforts of counsel and Court over years of litigating this case would have become "sound and fury, signifying nothing," *Macbeth*, V. v. 17, "a consummation devoutly to be wish'd" by the NYPD, *Hamlet*, III. i. 56. However, the plaintiff class prevailed on the question, thereby establishing to its advantage its relationship, through Class Counsel, with the NYPD, and setting the stage for possible future litigation. In these circumstances, I conclude without difficulty that the plaintiff class is a "prevailing party" under § 1988.

"[T]o be considered a prevailing party, a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but the change must also be judicially sanctioned." *Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)) (other citations and internal quotation marks omitted). However, to materially alter parties' legal relationship, a party need not succeed on all its claims. In *LaRouche v. Kezer*, 20 F.3d 68, 71 (2d Cir. 1994), the Second Circuit said:

> A party need not succeed on every issue raised by him, nor even the most crucial one. Victory on a significant claim will suffice to give him prevailing party status. The degree of success on the merits does not alter plaintiff's eligibility for a fee award, although it may decrease the amount of the award.

(citations omitted). In consequence, and contrary to the NYPD's contention, the plaintiff class's lack of success on its initial claims that Interim Order 47 was facially invalid does not preclude prevailing party status, so long as the class achieved (1) victory on a significant claim which (2) brought about a material alteration of the legal relationship between the parties and (3) was which was judicially sanctioned. In the particular circumstances of the case at bar, it is entirely clear that the plaintiff class satisfies all three criteria.

12

### a. Victory on a Significant Claim

During this most recent motion practice the plaintiff class achieved victory on a significant claim: that the Guidelines subjected the NYPD to Class Counsel's inquiries into police surveillance policies and potential injunctive relief for the class and against the NYPD. The central importance of that victory to the ongoing governance of this important class action has been demonstrated *supra*.

### b. Material Alteration of the Legal Relationship

The Court's ruling on this claim brought about a material alteration in the legal relationship between the parties. Until that ruling, the NYPD's perceived relationship with the class and Class Counsel cast the NYPD in the role of the all-powerful arbiter of implementation of the Guidelines in non-constitutional areas, and cast the class and Class Counsel in the roles of powerless onlookers. Having contended for its perceived relationship during the litigation and lost, the NYPD cannot now be heard to say that the Court's ruling did no more than reaffirm a relationship that everyone agreed had always existed. The NYPD was entitled to its perception and contention; I accept that my prior opinions on the point were capable of two reasonable interpretations. Thus was the field laid out for the battle that then ensued, from which the class withdrew victorious on a claim that, for the first time and forever (barring appeals), altered the relationship between the NYPD and the class by empowering Class Counsel to challenge NYPD policies resulting in non-constitutional violations of the Guidelines.

My conclusion that this is a sufficient relationship alteration to qualify the plaintiff class as a prevailing party is supported by the Second Circuit's latest decision on point, *Perez v. Westchester County Department of Corrections*, 587 F.3d 143 (2d. Cir. 2009). Plaintiffs, Muslim inmates

confined at the Westchester County Jail, claimed that the County violated their constitutional rights "by serving them meat that was 'Haram' (in violation of their beliefs) as opposed to 'Halal' (which is consistent with their beliefs)." *Id.* at 145.[4] After motion practice and conferences before District Judge Berman, the parties entered into a "Settlement, Release and Stipulation of Discontinuance" pursuant to which "the County agreed to provide all present and future Muslim inmates . . . who request a Halal diet with Halal meat with the same frequency as Kosher meat is served to Jewish inmates requesting the Kosher diet." *Id.* at 148. While the agreement expressly indicated that it was "not a consent decree," it recited that the County "made this change 'in contemplation of settling' the lawsuit and in consideration of Plaintiffs' discontinuing their actions," and "the dismissal of the lawsuits only took effect '[u]pon the Court's approval and entry of this Stipulation and Order.'" *Id.* Judge Berman reviewed the agreement, amended the caption to reflect that it was an "Order of" Settlement, made several other non-substantive alterations, "instructed the clerk to close the case, and 'so-ordered' the settlement." *Id.*

The District Court held that in these circumstances, the plaintiff class qualified as a "prevailing party" under 42 U.S.C. § 1988. The Court of Appeals affirmed. On the element of material alteration of a legal relationship, the Second Circuit rejected the County's contention that "it began serving Halal meat voluntarily and that the legal relationship between the parties was unaltered." 587 F.3d at 149-150. The Court reasoned that during the litigation the County defendants repeatedly acknowledged that "they did not serve Halal meat to Muslim inmates as often as they served Kosher meat to Jewish inmates *and did not want to do so*." *Id.* at 150 (emphasis

---

[4] "Halal" is an Arabic term that is widely used to designate food seen as permissible according to Islamic law. It is the opposite of "Haram." Haram food has the same significance for Muslims as Kosher food does for Jews.

14

added). However, as the result of the so-ordered settlement agreement, "the County is now *legally incapable* of acting as it did before the entry of the Order." *Id.* (emphasis added). Even if the County was constitutionally "free to serve Halal meat to Muslim inmates less often than it served Kosher meat to Jewish inmates, it cannot do so now without violating *a Court order*." *Id.* (citation omitted, emphasis in original). "Whether the County's initial decision to serve Halal meat at the appropriate frequency was voluntary or not is thus inconsequential, *as it can no longer freely reverse that decision*." *Id.* (emphasis added).

On this element, *Perez* is directly in point with the case at bar. The NYPD made it plain repeatedly that it did not want to pay any attention to Class Counsel's questions or views about whether its surveillance policies violated the Handschu Guidelines. The NYPD argued through Corporation Counsel that so long as no constitutional violation was implicated, the Police Commissioner's authority to promulgate such a policy was unfettered, beyond Class Counsel's ability to challenge or the Court's authority to address. After the so-ordered opinions in *Handschu VIII* and *Handschu IX*, the NYPD is no longer free to disregard the plaintiff class because it wanted to, just as after the so-ordered agreement in *Perez*, Westchester County officials were no longer free to serve or withhold Halal meat whenever they wanted to. By prevailing on this issue in *Handschu VIII* and *Handschu IX*, the plaintiff class achieved an alteration of the legal relationship between the NYPD and the class that is of central importance to the ongoing functioning and effect of the Guidelines.[5]

---

[5] This concept of legal relationship alteration through behavior modification finds support in *Farrar v. Hobby*, 506 U.S. 103 (1992), upon which the NYPD places a mistaken reliance. *Farrar* held that a civil rights plaintiff who recovered a judgment for nominal damages of one dollar was a "prevailing party" under the fee-shifting provisions of § 1988 because "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the

Corporation Counsel, characterizing this particular issue as one of standing, argue that a litigant cannot earn its "prevailing party" stripes by achieving nothing more than establishing its standing to sue. While on occasion Class Counsel referred to "standing" in their submissions, and may now regret their use of the noun, in reality the contested claim upon which the class prevailed was not one of standing of the sort that Corporation Counsel's argument posits. "Standing," in that sense, asks if someone is entitled to assert a claim. It is a threshold the claimant must cross in order to litigate the merits of his claim. In constitutional cases, standing depends upon a claimant's ability to demonstrate a particular form of personal injury in order to reach the merits of an asserted violation of the Constitution. In the case at bar, however, the settlement of the class action, and the promulgation of the Handschu Guidelines incorporated in a Court order, conferred standing upon the class and Class Counsel on behalf of its members to assert the non-constitutional Guidelines claim upon which the class prevailed in *Handschu VIII* and *Handschu IX.*

### c. Judicial Imprimatur

This element requires little discussion. The alteration of the legal relationship between the plaintiff class and the NYPD was judicially sanctioned – indeed, brought about – by the Court's opinions in *Handschu VIII* and *Handschu IX.* Both opinions ended with the significant declaration "It is So Ordered." That decretal language endowed the settlement agreement in *Perez,* which counsel drafted, with the judicial sanction necessary to confer prevailing party status upon the

---

defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113. So in the case at bar: the orders in *Handschu VIII* and *Handschu IX* force the NYPD to respond to possible future contentions by the plaintiff class that its policies violate the Guidelines, and to submit to discovery in aid of such a challenge. *Farrar* went on to hold that although the plaintiff was a "prevailing party," a *de minimis* victory did not justify the award of his attorney's fees: a separate question, which does not arise in this case.

plaintiff class. In the case at bar, the Court wrote the opinions with which the so-ordered language concluded. On the question of judicial sanction, *Perez* applies to this case *a fortiori*.

For the foregoing reasons, the plaintiff class qualifies as a "prevailing party" under § 1988 and is entitled to an award of attorneys' fees. However, as noted in Part II.A.2., the class did not succeed on all claims it asserted on its motion for equitable relief. In particular, the Court rejected the plaintiff class's claim that Interim Order 47 was facially invalid under the Constitution and the Handschu Guidelines. In consequence, the question arises whether the class's attorneys' fees are subject to reduction to reflect that partial lack of success. I turn to that question.

**B. Reduction of the Fee**

In *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), involving an award of attorneys' fees under 42 U.S.C. § 1988, the Supreme Court said that where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith." Based on that principle, the Court held in *Hensley* that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. That holding applies to the plaintiff class's distinct and unsuccessful claim that Interim Order 47 was facially invalid. Accordingly, Class Counsel's fees for the recent motion practice must be reduced, even if their time was reasonably expended and the claimed hourly rate is reasonable.

In *Hensley*, the Court suggested two alternative procedures for district courts to

17

utilize in

reducing such fees: "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." 461 U.S. at 436-37. Either procedure is available to district courts considering awards of attorneys' fees under a fee-shifting statute such as § 1988. I used the second one in *Sheehan v. Metropolitan Life Insurance Co.*, 450 F. Supp. 2d 321 (S.D.N.Y. 2006), an ERISA action where plaintiff complained of the defendant insurance company's cessation of disability payments. After trial, plaintiff received a judgment for part of the amount he claimed, but his claim for another part was rejected. On plaintiff's subsequent application for attorneys' fees, I held that he was a prevailing party under ERISA's fee-shifting statute, and the full amount of his attorneys' fees was reasonable. However, that amount was subject to reduction under *Hensley* and its progeny because "Sheehan received only a part of the claimed past disability payments, and his claim for future payments was rejected entirely," losses "sufficient in amount to require a downward adjustment of his attorney's fees." *Id.* at 330. The amount of the adjustment is fact specific; given the particular circumstances in *Sheehan*, I reduced the attorney's fee by 30%. *See id.*

In the case at bar, I opt for the first procedure, which requires the identification "of specific hours that should be eliminated." That part of the recent motion practice upon which the plaintiff class prevailed – the empowerment of Class Counsel in respect of NYPD surveillance policies – is separate and distinct from that part where the class failed – its challenge to the facial validity of Interim Order 47. Time spent on that latter issue is not compensable. An accurate allocation of time should not be difficult. *Hensley* places the responsibility for eliminating uncompensable hours upon "the district court," but the initial burden falls fairly upon the attorneys, who are seeking an award

18

and have superior knowledge of how their time was spent. Class Counsel are directed to pare down their requested fees and costs so as to eliminate the time and expense allocable to the issue of Interim Order 47's facial invalidity. The time and expense allocable to the issues *Handschu VIII* and *Handschu IX* decided in favor of the plaintiff class will be allowed.

The discussion in this subpart relates to an allowance of attorneys' fees under 42 U.S.C. § 1988. However, there is a second vehicle for awarding attorneys' fees in this case: the inherent power of this Court. I turn to the applicability of the inherent power doctrine to the instant case.

## C.    An Award of Attorneys' Fees Under the Court's Inherent Power

### 1.    *28 U.S.C. § 1927*

Before discussing the Court's inherent power to impose the sanction of attorney's fees, it is necessary to consider an alternative source of authority that, as will appear, is not applicable to this case.

During the briefing and argument of the case, reference was made to 28 U.S.C. § 1927 as a possible source of the Court's authority to award attorneys' fees to the plaintiff class. That statute provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The question of § 1927's applicability to this case arises out of the conduct of Corporation Counsel in continuing to litigate for 17 months the validity of Interim Order 47 after the NYPD rescinded the Order and replaced it with Interim Order 22, which changed the NYPD's surveillance

policies and practices in material ways. Order 47 was rescinded and replaced by Order 22 on April 13, 2007. Corporation Counsel did not advise Class Counsel or the Court that this had happened. Instead, the parties continued to litigate and the Court continued to consider the validity and effect of Order 47. The Court delivered its opinion in *Handschu VIII* on June 13, 2007, and in *Handschu IX* on February 27, 2008. Both dealt with Interim Order 47. Corporation Counsel did not inform Class Counsel of Order 47's rescission until September 18, 2008, and even then the disclosure was inadvertent, not intentional. The pertinent facts are recited in full in Part I, *supra.*

I think it plain that Corporation Counsel's conduct cannot be excused. The able Assistant Corporation Counsel who argued the case, and was not involved in the underlying facts, had the unenviable task of defending the indefensible. The papers submitted by Corporation Counsel on its own and the NYPD's behalf seek to justify the failure to notify Class Counsel and the Court of the rescission of the Order being litigated by describing internal discussions and perceptions, and by contentions that certain impressions should have been formed from communications that were exchanged. This is not good enough. Such rationalizations entirely disregard Corporation Counsel's professional obligation *as officers of the Court* to notify their adversaries and the Court that Interim Order 47, the focal point of the ongoing litigation, had been rescinded. That is not an onerous obligation. The Police Commissioner replaced Order 47 with Order 22 on April 13, 2007. All Corporation Counsel had to do to satisfy their professional responsibilities was to send Class Counsel on April 14 a one-sentence letter advising that Interim Order 47 had been rescinded and enclosing a copy of Interim Order 22. Corporation Counsel's conduct in keeping mum about this event of central importance, and continuing the litigation as if it had not occurred, multiplied the proceedings unnecessarily and therefore unreasonably.

Nonetheless, Corporation Counsel's conduct, while deplorable, is not sanctionable under § 1927. Corporation Counsel's fallback position is that even if they should have notified Class Counsel and the Court of the withdrawal of Interim Order 47 when it occurred, their failure to do so cannot be characterized as in bad faith, which, it is contended, Second Circuit jurisprudence requires before attorneys' fees can be awarded under 28 U.S.C. § 1927. That contention finds support in the statutory language that to be sanctionable, an attorney must multiply proceedings "unreasonably *and vexatiously.*" (emphasis added). The adverb "vexatiously" is linguistically paired with the adjective "vexatious," defined as conduct "without reasonable or probable cause or excuse; harassing; annoying," *Black's Law Dictionary* (7th ed. 1999 at 1559), a concept consistent with bad faith. And indeed, the Second Circuit has said recently that § 1927 "authorizes sanctions when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose, and upon a finding of conduct constituting or akin to bad faith," *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (citation and internal quotation marks omitted). I agree with Corporation Counsel that the conduct of that office in representing the NYPD *as an advocate* does not support an explicit finding of bad faith.

**2.      *The Court's Inherent Power***

But that does not end the inquiry. Alternatively, a district court may exercise its "inherent power" to levy sanctions in response to attorneys' abusive litigation practices. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).[6]  In *United States v. International Broth. of Teamsters*, 948

_____

[6]*See also Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992) (inferring and upholding district court's "inherent authority" as proper alternative grounds to impose sanctions against pro se litigant for vexatious and oppressive tactics where section 1927 and Rule 11 would not apply

F.2d 1338, 1345 (2d Cir. 1991), the Second Circuit made it plain that a court's inherent power exists in addition and as an alternative to 28 U.S.C. § 1927 and Fed. R. Civ. P. 11 ("Finally, a court has a third means at its disposal for sanctioning improper conduct: its inherent power.") (after discussing § 1927 and Rule 11).

The court's inherent power derives from the basic principle that courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821)); *accord, DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998). This inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43.

Included in a court's inherent power is the ability to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46. *See also Roadway Express*, 447 U.S. at 765-66 ("There are ample grounds for recognizing, however, that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel. . . . The power of a court over members of its bar is at least as great as its authority over litigants.").

"Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express*, 447 U.S. at 764. Accordingly, where

---

to non-lawyer); *Bowler v. United States I.N.S.*, 901 F. Supp. 597, 606 n.5 (S.D.N.Y. 1995)(acknowledging that sanctions under inherent power doctrine would have also been appropriate in case where court used restraint and thus chose to apply section 1927 instead). *Sassower* used the phrase "inherent authority." The more frequently used phrase, which of course means the same thing, is "inherent power."

the conduct of an attorney as an advocate for his client is at issue, the Second Circuit generally requires a finding of "bad faith" for the imposition of sanctions under the inherent power doctrine. *Teamsters*, 948 F.2d 1338 , 1345 (2d Cir. 1991) ("this Court, in recognizing the need for restraint, has always required a particularized showing of bad faith to justify the use of the court's inherent power.").

Just as with § 1927, discussed in Part II.C.1., I am not prepared to hold that in failing to advise Class Counsel and the Court of the rescission of Interim Order 47, Corporation Counsel acted in bad faith in its role as advocate for the NYPD. However, the Second Circuit does not condition the imposition of attorney's fees under the trial court's inherent power when attorney misconduct is not related to the course or substance of a litigation, but is rather a "negligent or reckless failure to perform his or her responsibility as an officer of the court." *United States v. Seltzer*, 227 F.3d 36, 41 (2d Cir. 2000).

In *Seltzer*, the Second Circuit drew a distinction, crucial to the case at bar, between an attorney's conduct "that is integrally related to the attorney's role as an advocate for his or her client, 227 F. 3d at 40, and the conduct expected of an attorney as an officer of the court. Bad faith is a necessary prerequisite where courts impose sanctions "by reason of [an attorney's] excesses in conduct of the sort that is normally part of the attorney's legitimate efforts at zealous advocacy for the client." *Id.* Thus when a district court imposes sanctions for behavior by an attorney in " the actions that led to the lawsuit . . [or] conduct of the litigation," or actions "taken on behalf of a client, the district court must make an explicit finding of bad faith." *Id.* at 41-42. However, the Second Circuit continued in *Seltzer*, "when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other

misconduct that is not undertaken for the client's benefit, *the district court need not find bad faith* before imposing a sanction under its inherent power." *Id.* at 42 (emphasis added). This distinction invests a district court with the "power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation." *Id.* Accordingly, a district court may sanction attorneys' conduct "which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." *Id.*

In *Seltzer*, a criminal case, the district court, invoking its inherent power, fined the defense attorney for an unexplained and unapologetic tardiness in returning to the courtroom after the jury had arrived at a verdict, leaving the trial judge, prosecutors, defendant and jurors collectively cooling their heels. The attorney appealed on the ground, *inter alia*, that "there is no indication of bad faith on her part, and bad faith is required prior to imposition of a sanction pursuant to the inherent powers of the court." 227 F.3d at 37. The Second Circuit rejected that contention, on the basis of the distinction just noted,[7] a distinction it reasserted in *In re Pennie & Edmonds LLP*, 323 F.3d 86, 93 (2d Cir. 2003) ("Noting that the conduct at issue was not 'undertaken as part of [the lawyer's] role in representing her client,' . . . we ruled [in *Seltzer*] that in such circumstances a sanction may be justified 'absent a finding of bad faith . . . '").[8] *See also  Richard A. Leslie Company,* 2007 WL 4245847 at *5 (S.D.N.Y. 2007) (applying *Seltzer* distinction to impose sanctions on plaintiff's attorney for being "grossly negligent" in engaging in "radio silence," failing

---

[7] The court of appeals in *Seltzer* remanded the case to the district court for additional factual development with respect to the attorney's conduct. In the instant case, no further development of the facts is necessary.

[8] *In re Pennie* turned upon the proper application of Rule 11. The *Pennie* court distinguished *Seltzer* for that reason.

to communicate with opposing counsel or the court for months).

In the case at bar, it cannot be said that Corporation Counsel's conduct in failing to advise Class Counsel and the Court of the rescission of Interim Order 47 was "undertaken for the client's benefit." Corporation Counsel's client, the NYPD, and the taxpayers who fund it derived no benefit from Corporation Counsel continuing to litigate the validity and implementation of an Interim Order which had ceased to exist 17 months before. Quite the contrary: Corporation Counsel's indulgence in meaningless litigation imposed a cost on their client, it did not confer a profit. I conclude without difficulty that Corporation Counsel's conduct constitutes a quintessential example of "neglect or reckless failure to perform [their] responsibility as an officer of the court" to notify opposing counsel and this Court of a material change in the underlying litigated facts, a particularly egregious failure when one considers Corporation Counsel's belated notification of the replacement of Interim Order 47 was made inadvertently, not intentionally. The Court is left to wonder when, if ever, Corporation Counsel would have chosen to reveal the replacement of the Order if Class Counsel had not specifically inquired about a possible replacement in their August 19, 2008 letter to Corporation Counsel.

In these circumstances, and in the exercise of the Court's inherent power, I impose a sanction upon the office of the Corporation Counsel which requires that office to pay Class Counsel's fees and expenses from April 13, 2007, the date Interim Order 47 was rescinded, to September 18, 2008, the date Corporation Counsel told Class Counsel of the rescission, to the extent that such fees and expenses would not have been incurred if Corporation Counsel had told Class Counsel of the

Order's rescission when it occurred.[9] To recover on this ground, Class Counsel must demonstrate that the allocation is sound. To the extent they do so, the resulting award of fees and expenses will not be subject to reduction on a *Hensley* rationale of partial success.

### D. The Plaintiff Class's Additional Claim for Equitable Relief

As noted in Part I, the plaintiff class couples its present motion for attorney's fees with a request, addressed to the Court's equitable powers, that the NYPD be directed "to give notice to plaintiff class counsel and the court of any decision to withdraw Interim Order 22 or to substitute a new policy concerning the videotaping or photographing of political activity for that set forth in Interim Order 22."

I agree with Class Counsel that an order of some sort is justified by the fact that neither Class Counsel nor the Court were notified that Interim Order 47 had been withdrawn, a failure of responsibility ascribable more to Corporation Counsel than the NYPD. The wording of an order suggested by Class Counsel is problematic, because it could be read to require the NYPD to give Class Counsel (and the Court) notice of a decision or policy being formulated within the NYPD hierarchy and not yet promulgated or made effective. It would not be appropriate to have Class Counsel given notice and the concomitant ability to interject their views at such a stage in the process. However, if after the date of this opinion the NYPD promulgates and makes effective a new or revised order, directive or policy which alters, modifies or has any effect upon the sort of police conduct and activity which forms the subject matter of this action and is governed by the

---

[9] For example, it would seem that any post-April 13, 2007 work by Class Counsel in preparing for or seeking to compel discovery into the NYPD's implementation of the then non-existent Interim Order 47 would fall within this compensable category.

Handschu Guidelines, the NYPD or Corporation Counsel must give Class Counsel written notice

of its substance within ten calendar days of the effective date of the new order, directive or policy.

If the NYPD is of the view that such disclosure should not be made for security reasons or other

concerns, the requisite notice must be made to this Court within the same time frame for

examination *in camera*. This paragraph sets forth the Court's ORDER in response to the claim of

the plaintiff class for additional equitable relief.


## III. CONCLUSION

For the foregoing reason, the motion of the plaintiff class for an award of attorney's fees is

GRANTED. The amount to be awarded will be the subject of further submissions.

Class Counsel are directed to file and serve, on or before February 12, 2010, a claim for

attorneys' fees and expenses in an amount or amounts consistent with this Opinion. If Counsel

claim amounts under both 42 U.S.C. § 1988 and the Court's inherent power, they must avoid double

counting. The Court will enforce the Second Circuit's requirements for court-ordered compensation

for attorneys:

> Hereafter, any attorney – whether a private practitioner or an
> employee of a non-profit law office – who applies for court-ordered
> compensation in this Circuit for work done after the date of this
> opinion must document the application with contemporaneous time
> records. These records should specify, for each attorney, the date, the
> hours expended, and the nature of the work done.

*New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.

1983).[10]

The NYPD and Corporation Counsel are directed to file and serve opposing papers as to the amounts claimed on or before February 26, 2010. Class Counsel may, if so advised, file and serve reply papers on or before March 5, 2010. If the Court desires oral argument, counsel will be notified.

The motion of the plaintiff class for additional equitable relief is GRANTED in the manner specified in Part II.D. of this opinion.

It is SO ORDERED.

Dated: New York, New York
       January 19, 2010

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[10] The Second Circuit decided *Carey* in 1983, a year so far removed from the technological, electronic and computerized marvels of the present day that it evokes images of Dickensian scriveners perched on high stools making entries with quill pens. Cases following *Carey* have recognized the changing technology and allow the amount and purpose of attorneys' time to be proved by artifacts such as computer-generated printouts or summaries. However, such proof must be accompanied by affidavits or other evidentiary material showing that the printouts are based upon or derived from *contemporaneous* records which are accurately reflected in the printouts or summaries.