USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:_____
DATE FILED:_11/28/2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

BARBARA HANDSCHU, et al.,

                Plaintiffs,                               No. 71 Civ. 2203 (CSH).

            -against-                            **MEMORANDUM OPINION**
                                                      **AND ORDER**

POLICE DEPARTMENT OF THE CITY OF
NEW YORK, et al.,

                Defendants.

------------------------------------------------------------------------X

**HAIGHT, Senior United States District Judge:**

      This Memorandum Opinion and Order resolves a dispute that has arisen between Class Counsel and the Corporation Counsel, who represents the NYPD.  That dispute centers upon the breadth of an Order of Injunction contained in the Court's Opinion and Order dated January 19, 2010, reported at 679 F.Supp.2d 488 and designated as *Handschu X* in the bibliography of this long-lasting civil rights action.

## I.  BACKGROUND

      Familiarity is assumed with respect to *Handschu X* and all other opinions in the case, of this Court and the Court of Appeals.  The history of the case need not be recounted here in detail.  For present purposes, it is sufficient to state that in 1979, this Court certified a class of all residents of New York City, individuals physically in the City, and organizations located or operating in the City

              who engage in or have engaged in lawful political, religious,
              educational or social activities and who, as a result of these activities,

1

> have been, are now or hereafter may be subjected to or threatened by infiltration, physical and verbal coercion, *photographic, electronic and physical surveillance*, provocation of violence, recruitment to act as police informers and dossier collection and dissemination by defendants and their agents.

*See* 605 F.Supp. 1384, 1388 (S.D.N.Y. 1985) (opinion approving settlement of class action and promulgation of Handschu Guidelines); *affirmed*, 787 F.2d 828 (2d Cir. 1986) (emphasis added).

That aspect of the case presently under consideration was generated when Class Counsel decided to challenge NYPD practices and procedures for the use of photographic and video taping equipment during surveillance activities.  As stated in *Handschu X*, 679 F.Supp.2d 491: "Following the modification of the Handschu Guidelines, the NYPD promulgated Interim Order 47, which is captioned 'Guidelines for the Use of Photographic/Video Equipment to Record Police Operations and Public Activities' and sets forth detailed instructions and procedures for such conduct by NYPD officers."  The wording of Interim Order 47 is recited in detail in *Handschu VII*, 475 F.Supp.2d 331 (S.D.N.Y. 2007).

Class Counsel moved for a Court order enjoining police conduct based upon Interim Order 47, on the grounds that Order 47 violated the Modified Handschu Guidelines and the United States Constitution.  Corporation Counsel challenged Class Counsel's ability to assert such claims, and defended the validity of Order 47.  These contentions begat a number of opinions, summarized in *Handschu X* at 679 F.Supp.2d 492-495.  In essence, the Court rejected Class Counsel's claim that Interim Order 47 violated the Constitution, but upheld Class Counsel's standing and authority to claim that the Order violated the Handschu Guidelines.  The Court allowed in principle Class Counsel's right to conduct discovery in aid of that claim.

During an exchange of attorneys' correspondence about discovery, Corporation Counsel

inadvertently revealed its conduct "in continuing to litigate for 17 months the validity of Interim Order 47 after the NYPD rescinded the Order and replaced it with Interim Order 22, which changed the NYPD's surveillance policies and practices in material ways.  Order 47 was rescinded and replaced by Order 22 on April 13, 2007.  Corporation Counsel did not advise Class Counsel or the Court that this had happened.  Instead, the parties continued to litigate and the Court continued to consider the validity and effect of Order 47."  *Handschu X*, 679 F.Supp.2d at 500-501.

The previously unannounced demise of Interim Order 47 mooted Class Counsel's motion to enjoin its implementation.  In that circumstance, Class Counsel tailored their claims in a manner summarized in *Handschu X* as follows:

> As a result of the NYPD's promulgation of Interim Order 22 to replace Interim Order 47, and in the light of certain prior decisions by the Court during the litigation, Class Counsel now move to have the plaintiff class declared a "prevailing party" under § 1988 on its underlying motion for injunctive relief, thereby paving the way for an application for attorneys' fees.  Class Counsel also ask the Court, in an exercise of its equitable powers, to direct the NYPD "to give notice to plaintiff class counsel and to the Court of any decision to withdraw Interim Order 22 or to substitute a new policy concerning the videotaping or photographing of political activity for that set forth in Interim Order 22."

679 F.Supp.2d at 492.

In *Handschu X*, the Court ruled that within the context of the litigation triggered by Class Counsel's motion challenging Interim Order 47, the plaintiff Class was a "prevailing party" as that phrase is used in 28 U.S.C. § 1988(b), so that the Class could recover attorneys' fees and costs in an amount to be determined.  The Court further held that as alternative basis for recovering part of its attorneys' fees during this period, the Office of the Corporation Counsel was required by 28 U.S.C. § 1927 to pay as a sanction in an amount to be proved "Class Counsel's fees and expenses from April

3

13, 2007, the date Interim Order 47 was rescinded, to September 18, 2008, the date Corporation Counsel told Class Counsel of the rescission, to the extent that such fees and expenses would not have been incurred if Corporation Counsel had told Class Counsel of the Order's rescission when it occurred."  679 F.Supp.2d at 504 (footnote omitted).

Lastly, the Court granted Class Counsel's claim for equitable relief.  Class Counsel's written submissions included a request, addressed to the court's equitable powers, which in Class Counsel's words asked that the NYPD be directed "to give notice to plaintiff class counsel and the court of any decision to withdraw Interim Order 22 or to substitute a new policy concerning the videotaping or photographing of political activity for that set forth in Interim Order 22."  679 F.Supp.2d at 504. I granted that request in principle because "I agree with Class Counsel that an order of some sort is justified by the fact that neither Class Counsel nor the Court were notified that Interim Order 47 had been withdrawn, a failure of responsibility ascribable more to Corporation Counsel than the NYPD." *Id*.  In practice, I implemented Class Counsel's prayed-for equitable relief by departing somewhat from the language Class Counsel suggested, and including in the text of *Handschu X* an order of injunction of the Court's devising.  It is the wording of that injunction that gives rise to the present dispute.  The injunction reads as follows:

> [I]f after the date of this opinion the NYPD promulgates and makes effective a new or revised order, directive or policy which alters, modifies or has any effect upon the sort of police conduct and activity which forms the subject matter of this action and is governed by the Handschu Guidelines, the NYPD or Corporation Counsel must give Class Counsel written notice of its substance within ten calendar days of the effective date of the new order, directive or policy.  If the NYPD is of the view that such disclosure should not be made for security reasons or other concerns, the requisite notice must be made to this Court within the same time frame for examination *in camera*.

4

*Id.*

*Handschu X* is dated January 19, 2010.  Thereafter the Court filed an opinion dated July 18, 2010, reported at 2010 WL 2991414 (*Handschu XI*), which quantified the amounts of attorneys' fees and expenses owing by the City to the plaintiff class as a prevailing party under 28 U.S.C. § 1988(b), and owing by Corporation Counsel to the class as a sanction under 28 U.S.C. § 1927.

The NYPD filed a notice of appeal from *Handschu X* and *Handschu XI*.  Before the appeal was perfected, the parties entered into a stipulation withdrawing the appeal on certain terms and conditions which appear in a Stipulation and Order dated March 9, 2011, which the Court endorsed on March 14, 2011 and made the subject of a further implementing order dated July 18, 2011.

Specifically, in consideration of the NYPD's withdrawing its appeal, the parties jointly requested this Court to enter an order modifying its rulings in *Handschu X* and *Handschu XI* by (i) vacating its finding that the plaintiff class was a "prevailing party"; (ii) vacating its finding that the Office of the Corporation Counsel engaged in sanctionable conduct; and (iii) vacating the sanction imposed under the Court's inherent authority upon the Office of the Corporation Counsel.  If the Court made those modifications, the NYPD agreed to pay Class Counsel the fees in the amounts awarded to them in *Handschu XI*.  The Stipulation further recited at ¶ 3 the parties' agreement to submit to this Court "their remaining dispute regarding the breadth of the injunctive order contained in *Handschu X*.  The parties reserve the right to appeal the Court's decision regarding that dispute."

In its implementing orders, this Court made the requested modifications in its prior opinions, and specified the procedures for resolving the "dispute regarding the breadth" of *Handschu X*'s injunction.  Those actions by this Court, combined with additional declarations required by the Court of Appeals, prompted the Court of Appeals by mandate dated April 8, 2011 to dismiss the NYPD's

appeal.  The mandate also recited: "Should either party wish to appeal the District Court's further resolution of the dispute regarding the breadth of the injunction, as provided in paragraph 3 of the stipulation, that party must do so by filing a new notice of appeal."

The procedure adopted to resolve the breadth-of-injunction dispute consisted of the filing of simultaneous briefs and reply briefs.  No additional evidence needed to be elicited.  This Opinion resolves the dispute.

## II.  DISCUSSION

### A.   The Parties' Differing Interpretations of the Injunction

As previously noted, the parties' stipulation and pronouncements of this Court and the Court of Appeals identify the present dispute as regarding "the breadth of the injunction" contained in this Court's opinion in *Handschu X*.  Corporation Counsel's interpretation of the injunction is narrow. Class Counsel's interpretation is broad.

At issue is the injunction's direction that the NYPD or Corporation Counsel give Class Counsel written notice of the promulgation and effective date of any "new or revised order, directive or policy which alters, modifies or has any effect upon the sort of police conduct which forms the subject matter of this action and is governed by the Handschu Guidelines. . . "

Corporation Counsel interpret that injunctive language to mean that "the NYPD should not be required to do more than provide notice of new or revised orders, directives, and policies that are issued to change the policy regarding videotaping at demonstrations that is set forth in Interim Order 22."  Main Brief at 8.  This is the narrow interpretation.

Class Counsel's position is that the injunctive language means, or should be interpreted to mean, as requiring of the NYPD the "giving notice of any change in surveillance policies that

6

implicate the Guidelines" in unspecified ways.  This is the broad interpretation.

**B.    Resolution of the Dispute**

One may begin the requisite interpretation of the *Handschu X* injunction by parsing the phrase that requires the NYPD to give notice of new or revised orders, directives or policies having any effect "upon the sort of police conduct which forms the subject matter of this action and is governed by the Handschu Guidelines."  In defining the police conduct covered by the injunction, the phrase "governed by the Handschu Guidelines" performs no useful function, since police conduct, to be cognizable at all by the Court in this class action, must be governed by the Guidelines. So the question becomes: What sort of police conduct falls within the phrase "forms the subject matter of this action"?

I think it fair to say that "the subject matter of this action" came into being when Class Counsel filed their motion to enjoin the NYPD's implementation of Interim Order 47's protocols for the use of photographing and videotaping class members' activities.  It is of course true that the underlying class action, whose broadly phrased class certification was quoted *supra*, is not confined to the particular conduct Order 47 regulated.  The subject matter of *that* underlying action is as all-inclusive as the Guidelines themselves; and the Handschu Class will endure as long as there is a New York City, a New York Police Department, and individuals and organizations whose activities attract the interest of the police.  Judge Weinfeld was the first Handschu judge; I am the second; in the fullness of time it is likely there will be others.  It is not too fanciful to liken the underlying class action to a volcano,  seemingly inactive and emitting only an occasional wisp of steam, but capable at any time of erupting over a particular issue, roaring and trembling, spewing hot lava in the form of clashing briefs and affidavits. Class Counsel's assault upon police photographing and videotaping,

7

as authorized and regulated by Interim Order 47, was such an eruption.  Each discrete eruption, if one accepts the volcanic analogy, constitutes a separate "action" for certain purposes.  I do not mean by this geological analogy to make light of the problem.  On the contrary: Class Counsel raised questions of great importance, which fully engaged the attention and efforts of the parties and the Court.

This analysis, which I believe to be realistic and fair, tends to support Corporation Counsel's interpretation of the injunction as limited to NYPD orders and practices which authorize or regulate police use of photographs and videotapes in the surveillance of class members.  Class Counsel initiated the present sub-action (a more professional term than "eruption") by moving to declare Interim Order 47 unconstitutional or to enjoin its implementation as violative of the Guidelines.  When Order 47's replacement by Interim Order 22 inadvertently became known, Class Counsel adjusted their aim and asked the Court to direct the NYPD to give notice to Class Counsel and the Court "of any decision to withdraw Interim Order 22 or to substitute a new policy *concerning the videotaping or photographing of political activity for that set forth in Interim Order 22*." (emphasis added).  Thus Class Counsel's motion for relief, begun as a relatively narrow attack upon police photographing and videotaping under Interim Order 47, retained that narrow focus as the litigation continued, with the substitution of Order 22 for Order 47 in Class Counsel's equitable relief cross-hairs.

The parties' most recent submissions reveal that Class Counsel have now significantly shifted their position: From a narrow form of injunctive order limited to police photographing and videotaping conduct during surveillance, to a broad form of injunctive order, covering "any change in surveillance policies that implicate the Guidelines." The genesis of that shift may be traced to oral

arguments on the present motion during a hearing on April 22, 2009.  Class Counsel quote excerpts

in their Main Letter Brief at 3-5.  These exchanges took place between Jethro Eisenstein, a Class

Counsel, and the Court:

> MR. EISENSTEIN: In this motion we're asking for two forms of relief.  We're asking that in the future the NYPD be directed to advise the class, through its representatives, of changes in policies like the videotaping policy; that is, policies that implicate the Modified Handschu Guidelines.  And we're asking, as you have indicated, for an order declaring that we are the prevailing party on the motion, which will enable us to apply for counsel fees.
>
> \*       \*       \*       \*       \*       \*
>
> THE COURT: And sum up for me for this record exactly what it is you want me to order them to notify you of.
>
> MR. EISENSTEIN: With respect to videotaping policy and other policies that implicate political – investigation of political activities, both of which are defined terms still in the consent decree; if they change those policies, that they notify the representatives of the class of such a change.

Transcript of Hearing at 10, 16.  During the hearing, Class Counsel based this suddenly expanded

demand for notification upon their decidedly jaundiced view of the NYPD and Corporation Counsel,

as forcibly expressed by Mr. Eisenstein:

> The NYPD continues, through all the submissions that have been made in this case, to act as if to say that they haven't done anything wrong by failing to inform the Court and counsel that the very subject of the litigation of the motion going on at that point is gone.  And that is – it's inconceivable to me that anyone can say that, with a straight face.  And what it means to me is that this is a statement, and I say this advisedly, that it is a reflection of a belief that the plaintiff class has no rights that the NYPD is bound to respect; that they were free, simply, or that they were free simply to ignore us in the middle of this motion and let us go on and let the Court go on as if IO 47 was still in place.  And that seems to me ample evidence, ample evidence that

9

in order to – that they are capable of acting in that way, and that in order to preserve the powers that you have granted us in aid of your jurisdiction, we have to know what's going on. And that's why we are asking for the notification that I've described. That it seems to me, if nothing else, the history of what the NYPD did in this case, is a basis for telling them, in no uncertain terms, that they cannot do that again in relation to matters that implicate the Modified Handschu Guidelines.

Transcript of Hearing at 20.

The Court entered its opinion and order of injunction in *Handschu X* after the hearing took place. In their most recent submissions, Class Counsel read the wording of the injunction as representing the Court's total acceptance and implementation of the expanded notification obligation on the part of the NYPD that Class Counsel unveiled during the hearing. For several reasons, I cannot accept Class Counsel's interpretation of the injunction.

First, Class Counsel argued at the hearing that the Court should direct the NYPD to notify Class Counsel "of changes in policies like the videotaping policy; that is, policies that implicate the Modified Handschu Guidelines." There is a conceptual tension between policies "like the videotaping policy"(narrow in phrasing) and policies "that implicate the Modified Handschu Guidelines" (broad and all-inclusive in phrasing): *Quaere* whether all varieties of police conduct governed by policies discernible in any one of the many Guidelines are "like" police conduct in videotaping or photographing.[1]

_____

[1] As the result of prior Court opinions and orders in the case, the Modified Handschu Guidelines are read and applied in combination with NYPD Guidelines, which in turn adapted FBI Guidelines promulgated by then Attorney General Ashcroft. Inclusion of the NYPD Guidelines in the NYPD Patrol Guide and promised adherence to them were conditions of the Court's order approving the Modified Handschu Guidelines. *See* opinion reported at 2007 WL 1711775. The Court's prior opinions also established that "the Guidelines and the NYPD's compliance with them fell within the Court's equitable power, and that if Class Counsel were able to demonstrate the NYPD had adopted a policy that disregarded the Guidelines, the Court may exercise that equitable

In this regard, it is perhaps revealing to note that in their Reply Letter Brief at 5, Class Counsel suggest that "in order to ensure that the order itself gives clear notice to the NYPD of what it is required to do," the injunction be "reformulat[ed]" to read that notice must be given of any "new or revised order or policy which alters, modifies or has any effect upon the *Investigation of Political Activity as those terms are defined in the Modified Handschu Guidelines . . .* " The reformulation of the injunction adds the emphasized language, whose addition may reflect an unspoken acknowledgment that neither Class Counsel's initial motion nor counsel's quoted submissions during oral argument painted with quite so broad a brush.

There is a second and more fundamental problem with Class Counsel's broad interpretation of the *Handschu X* injunction. Even if one construes counsel's quoted remarks during the hearing as an unequivocal application for the expanded notification injunction the plaintiff class now seeks, the fact remains that this revised application was made for the first time during oral argument on Class Counsel's motion, which had previously been confined, on initial application and briefing, to notification of changes in the NYPD policy on videotaping and photographing. Appellate and trial courts disapprove that sort of belated timing and disregard the claims involved. *See, e.g., Decision Strategy Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir. 2006) ("At oral argument the issue of whether a claim for punitive damages independently entitles a plaintiff to a jury trial under the Seventh Amendment was raised for the first time in this case. The issue, however, was not argued, nor even mentioned, in the brief. Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.") (citation and internal quotation marks omitted); *In re*

_____

power and grant equitable relief." *Handschu X*, 679 F.Supp.2d at 494. All this is well-settled law of the case. The present point, as stated in text, is that the Guidelines in their entirety deal with many forms of police conduct in addition to videotaping or photographing during surveillance.

*Monster Worldwide, Inc. Securities Litigation*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ("As to Monster's second argument – that the alleged misstatements were immaterial and therefore cannot support a presumption of reliance under *Basic* – this argument was raised for the first time at oral argument and so was waived in terms of this motion.") (plaintiff's motion for class certification). The reasons for the courts' exclusionary practice are plain enough: A party asserting a claim for the first time during post-briefing oral argument deprives the other party of the opportunity to challenge the merits of the claim in an orderly fashion.

That observation leads directly to the third problem with Class Counsel's assertion at oral argument that the *Handschu X* injunction should be interpreted so as to require the NYPD to give notice of all policy changes that "implicate the Modified Handschu Guidelines." Rule 65(d) of the Federal Rules of Civil Procedure provides: "Every order granting an injunction and every restraining order must: (A) state the reasons why it was issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Class Counsel's most recent brief prays for an injunction which requires the NYPD to give notice of the "substance" of any "new or revised order, directive or policy which alters, modifies or has any effect upon the Investigation of Political Activity as those terms are defined in the Modified Handschu Guidelines," Guidelines which in turn regulate a broad spectrum of police conduct. It requires no analysis to demonstrate that the broad and unspecific wording of such an injunction would have difficulty passing muster with the precise and specific requirements of Rule 65(d); rather, a likely effect would be to sow uncertainty among the parties as to whether a particular policy had some sort of effect upon a particular investigation as regulated by a particular Guideline. The injunction which Class Counsel now profess to perceive in *Handschu X* is also

subject to question under Second Circuit cases such as *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24, 30 (2d Cir. 1978) (an injunction may not undertake to "enjoin all possible breaches of the law") (citation and internal quotation marks omitted), *cert. denied*, 440 U.S. 960 (1979); and *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) ("Since an injunctive order prohibits [or commands] conduct under threat of judicial punishment,  fairness requires that the litigants receive explicit notice of precisely what conduct is outlawed."), *cert. denied*,  534 U.S. 833 (2001).

Class Counsel argues  that its requested broad-form injunction finds support in those sections of the Court's opinion in *Handschu X* in which the Court criticized Corporation Counsel's failure to advise that Order 22 had replaced Order 47, and held that Class Counsel are empowered to challenge non-constitutional NYPD violations of the Guidelines.  I adhere to what I said in that opinion, but the Court's utterances were for the purpose of demonstrating that the plaintiff class was a prevailing party on the fee-allowance issue, a quite different question.  The class's entitlement to equitable relief was and is a separate question, discussed separately at the conclusion of *Handschu X*.

Nor is Class Counsel's request on the present record for a broad notification injunction justified by the argument that absent such requirement, the class's "ability to challenge surveillance policies would be limited to situations in which NYPD policy changes fortuitously come to light," Reply Letter Brief at 4, an assertedly unacceptable situation since "the ability of class counsel to challenge non-constitutional violations of the Guidelines ought not to depend on serendipity,"  Main Letter Brief at 7, a noun defined as "an aptitude for making desirable discoveries by accident." *Random House Dictionary of the English Language* (College Ed. 1969) at 1201.

A core function of Class Counsel is to challenge NYPD surveillance policies revealed by

police conduct based upon those policies: revelations that do not solely or even frequently hinge upon accident or luck.  "The whole world is watching!" Chicago protesters chanted during political gatherings not that long ago; affected citizens are watching still.  In  the case at bar, Class Counsel challenged NYPD photographing and videotaping policies because individuals noticed police photographing or recording them during gatherings or marches and didn't like it.  More recently, Class Counsel have averred that "they have reason to believe that the NYPD, in its investigation of the Muslim communities that form a part of the plaintiff class, as a matter of policy retains information about class members' political activity that does not relate to potential unlawful or terrorist activity" in violation of the Modified Handschu Guidelines.  Declaration of Jethro M. Eisenstein verified October 3, 2011, at ¶ 2.  Class counsel based that belief upon newspaper articles, and public testimony by an NYPD Assistant Commissioner before a United States Senate Committee.  *Id*. at ¶¶ 3, 4.[2]

These two inquiries into what the NYPD was doing were not triggered by, and in no way depended upon, notice to Class Council of what the NYPD would or might do as the result of a policy change or modification.  Luck or accident played no part in either inquiry.  Both are ascribable to the sensitivity of class members, and to the laudable vigilance and energy of Class Counsel, undiminished  over the decades.  It may safely be assumed that such sensitivity and vigilance will continue unabated, and that future *Handschu* class action judges will never be entirely deprived of questions to answer and disputes to resolve.

*       *       *       *       *       *       *

---

[2]     Class Counsel and  Corporation  Counsel  are  discussing  that  particular  subject informally; it has not developed into a litigation eruption.

Given the foregoing considerations, the Court takes this opportunity to declare that when the order of injunction in *Handschu X* was made applicable to "the sort of police conduct and activity which forms the subject matter of this action and is governed by the Handschu Guidelines," the police conduct and activity in question and covered by the injunction is that "concerning the videotaping or photographing of political activity set forth in Interim Order 22." That Order and that activity constitute the "subject matter" of the discrete aspect of the underlying class action which Class Counsel initiated by their motion to enjoin police videotaping and photographing initially authorized by Interim Order 47.

On this record, it would be improvident for the Court to accept Class Counsel's interpretation, first advanced in oral argument on the motion after briefing, that the injunction should be expanded to include any future NYPD policy or order which might alter, modify or have any effect upon any police conduct that might implicate any of the Modified Handschu Guidelines, read in conjunction with the FBI/NYPD Guidelines. In rejecting Class Counsel's interpretation based on their remarks at the hearing, the Court is not critical of their interpretative effort. The Court's question during the argument presented Class Counsel with the opportunity to frame their answer, which may be regarded as inspired by the familiar maxim *nihil conari, nihil obtinere*: "nothing ventured, nothing gained." One may admire the ingenuity of the venture, but it cannot succeed in the face of established authority.

### III.  CONCLUSION

This opinion should not be construed as determinative of any future motion by Class Counsel,  in proper form and adequately supported, to expand or enlarge the NYPD's obligations to inform Class Counsel of what the NYPD is about (consistent, of course, with security

considerations).  The  opinion does no more than explain why, on this record and procedural posture, the Court REJECTS Class Counsel's interpretation of the injunction contained in *Handschu X*, and ACCEPTS the interpretation contended for by Corporation Counsel.

The Court sees no need to alter the wording of that injunction.  If any future reader is in doubt about what its language means, this opinion should furnish sufficient enlightenment.

The foregoing is SO ORDERED.

Dated:   New York, New York
            November 26, 2012

                                                    */s/Charles S. Haight, Jr.*
                                                    CHARLES S. HAIGHT, JR.
                                                    Senior United States District Judge