April 19, 2016

      Re: Comments on the Proposed *Handschu* Settlement

Dear Honorable Judge,

  I have registered to file comments regarding the *Handschu* guidelines. I am writing to you concerning the proposed *Handschu* guidelines. I thank the court for taking the time to read and accept my comments.

  As background, I have lived, worked and studied in New York City Metro area for 13 years, and as a Brooklyn resident for over three years. For seven years of this time, I have been a member of the Church of Stop Shopping, a performance company based in New York City. We create satirical theater and non-violent creative actions in various settings, including theaters, churches and public spaces. We use creative strategies and non-violent action to illustrate the perils of overconsumption and the role of financial institutions in the crisis of the earth. We produce dynamic campaigns that enact our core values - participatory democracy, vibrant community and the impact of consumption on the Earth. I have travelled with the choir group to all over Europe, New York, Chicago, California and Ferguson, MO. I am currently, as my stage name "Dragonfly," co-host of talk radio show *The Earth Wants* You on WBAI 99.5 FM.  Most recently, I began pursuit of my MA in Applied Theatre at CUNY School of Professional Studies.

  In the past year, I have been quite involved in the Black Lives Matter, Fight for $15, Net Neutrality and environmental justice movements. In Fall 2014 I began donning a red afro wig as my protest persona Miss Justice Jester at actions and demonstrations. In this activity, I have had a front row seat to much of the policing of the protest and demonstrations that have grown out of various movements, especially Black Lives Matter.

My main concern with the proposed guidelines is the low level of rationale required by the NYPD to open an investigation, and that any investigation authorizes the NYPD to use infiltrators in activist groups, and to track, monitor and report on the activities of these groups. I have once sued the City of New York for a false arrest and believe that the story of that suit is relevant to the court's consideration of the current guidelines. *See Corbin and Wilson v. City of New York, Captain Christopher McCormack, et al (12CV2305 (PAC)(RLE))*.

In the summer of 2011 I participated in a small protest that was to take place on the sidewalk in front of Lincoln Center on the Upper West Side of Manhattan. This action consisted of singing a song spoof of the popular Coca-Cola jingle,*"I Want to Teach the World to Sing"* with the words changed to reflect about the influence of money in politics.   It was meant to bring attention to the Koch Brothers' influence, and Lincoln Center was appropriate because one of the theatres had at that time just recently been renamed the Charles Koch Theatre. This action preceded Black Lives Matter by a number of years, and preceded Occupy Wall Street by a couple of months. A meeting point to rehearse the action was announced via group email, to meet at a time certain on the West Side of Central Park by 65th Street. There were approximately a dozen activists present talking about how to walk and sing on the sidewalk. We were sharing information about the disorderly conduct law, how we couldn't block a sidewalk, should always keep space between us and walking. While we were discussing this immediate plan, the Commanding Officer of the 20th Precinct came directly to our location and told us that without a permit, we had to leave the park. The location in the park was outside the boundaries of the 20th precinct.  He was clearly there specifically to find us.  Quite obviously, we were being tracked and monitored by the NYPD. In the moment, I responded by singing the First Amendment song to Captain McCormack. We all then left the park and began to rehearse our singing and marching at Columbus Circle. Captain McCormack and a lower level officer followed us there and again ordered us to leave the area. Once we were in front of Lincoln Center, we were on one of the longest and widest sidewalks on the Island of Manhattan. We marched, we sang and we were joined by some tourists who were enjoying the moment. The entire time Captain McCormack stood on

top of the stairs ordering us around, "Create more space… keep walking..." and other unnecessary verbal commands. Once we finished our action, we began to leave by using the cross walk at 63rd Street and Columbus Avenue. He came into the cross walk and grabbed me and someone thought to be the leader of the action, Ms. Corbin. We were both arrested and processed overnight. We were released after arraignment, had our charges dismissed and then filed suit.

The City settled the matter for almost $80,000 (http://nypost.com/2013/03/29/taped-cop-cost-city-78g/ ) but I subsequently learned that this poor policing had the opposite effect on the career advancement of Christopher McCormack. He was subsequently promoted to Deputy Inspector even though he had been caught on tape urging officers in his precinct to abide by the stop and frisk quotas. It is my belief that this very high ranking member of the NYPD came directly to our location because the NYPD was tracking and monitoring this group, even though we planned no unlawful activity. I don't know of any other way a police captain would suddenly appear at a meeting of a handful of activists standing under a tree in Central Park.  By his very presence, stress and anxiety were added to what should have been a fun, enjoyable and hopefully persuadable moment of activism. There are different people that seek to participate in activism, and many do not want to risk arrest by participating. This action was thought to be a very low risk (re: possible arrest) action because we were going to be a small group (less than 20 individuals), we were not going to engage in any civil disobedience, and we were going to be singing a recognizable song.   Due to the conduct of the NYPD in harassing us, individuals that were present that day stopped coming and supporting these low risk activism engagements. Their disengagement can be traced directly back to the NYPD's monitoring of our group. The NYPD conduct should not be authorized or condoned.

The very fact that this high-ranking officer was out of his own jurisdiction (Central Park precinct has jurisdiction in Central Park) and harassed, and falsely arrested individuals for singing on the sidewalk in front of Lincoln Center, should show that the NYPD cannot self-police their own conduct. When a high-ranking officer violated my

Constitutional rights, the City paid money to me and promoted the wrong-doing officer. That message should be heard and understood by this court.

I have read the guidelines as they will exist if this agreement is approved. I believe that there are numerous shortcomings of these guidelines that could result in the NYPD infiltrating peaceful activist groups, and would also authorize this very bad conduct of tracking and monitoring peaceful groups without any real reason and without threat of any real consequences, and unfair penalty to positively engaged citizens. In fact, if the high-ranking officers that engage in this misconduct are simply indemnified and promoted, why should anyone believe this conduct will end?

We were not even engaged in civil disobedience! If the new guidelines authorize tracking and monitoring of individuals and groups engaged in lawful protest, there really is no hope that NYC can be a beacon for First Amendment activity. If these guidelines are authorized, nobody can expect to be able to peacefully protest without fear of false arrest.

I would like to ask the Court to consider rejecting these guidelines and either asking the parties to review and create better wording for these guidelines with input from activists, or to have a study group created with activists, lawyers and NYPD involved to create a fair and balanced, and constitutionally appropriate set of guidelines. The updated wording should severely restrict the NYPD's ability to track and monitor peaceful groups protected by the First Amendment. Moreover, the language should not allow the NYPD to infiltrate peaceful activist or religious groups without some type of court approval. Quite obviously, my experience has taught me that the NYPD cannot be allowed to self-police themselves, especially when it involves activity protected by the First Amendment.

Respectfully submitted,

*Robin L. Wilson*

Robin Laverne Wilson