USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED :4/27/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

BARBARA HANDSCHU, et al.,

        Plaintiffs,                                    No. 71 Civ. 2203 (CSH)

    -against-

POLICE DEPARTMENT OF THE CITY OF               APRIL 27, 2016
NEW YORK, et al.,

        Defendants.

-------------------------------------------------------------------------X

## RULING ON FORM OF FURTHER PROCEEDINGS IN FAIRNESS HEARING

**HAIGHT, Senior District Judge:**

This Ruling considers the extent and nature of further proceedings to be taken during the course of a fairness hearing currently being conducted by the Court in this class action civil rights case. The fairness hearing was convened in order to inform and assist the Court in its evaluation of whether a proposed settlement of certain pending disputes is fair and reasonable.

### I. BACKGROUND

Familiarity is assumed with respect to the history of the case and the prior opinions of this Court and the Second Circuit.

For present purposes, it is sufficient to say that the action was filed in 1971. Sixteen individual plaintiffs, the first-named being Barbara Handschu, who were affiliated with certain political action groups, sued the NYPD and New York City officials for a declaratory judgment and

1

injunctive relief on a claim that various surveillance and other activities of the NYPD violated their constitutional rights. Judge Weinfeld denied the defendants' motion to dismiss the complaint, 349 F.Supp. 766 (S.D.N.Y. 1972). Discovery then ensued. I succeeded the late Judge Weinfeld as the trial judge. In 1979 this Court certified a class of plaintiffs, in terms quoted in 605 F.Supp. 1384, 1388 (S.D.N.Y. 1985). That opinion, following a fairness hearing conducted by the Court, approved as fair and reasonable a settlement proposed by Class Counsel and the City's Corporation Counsel, pursuant to which a consent decree was entered, and the "Handschu Guidelines" were promulgated to regulate and control the NYPD's surveillance activities. A number of class members, dissatisfied with the proposed settlement, objected to it during the fairness hearing. When their objections did not prevail, the objectors appealed this Court's approval of the settlement. The Second Circuit affirmed this Court's judgment. 787 F.2d 828 (2d Cir. 1986).

Following the dreadful events of September 11, 2001, the City asked the Court to modify the Handschu Guidelines in certain respects. The Court granted that motion and, over Class Counsel's objection, approved the Modified Handschu Guidelines, 273 F.Supp. 2d 327 (S.D.N.Y. 2003), and incorporated them into the Court's Judgment, 288 F.Supp.2d 411 (S.D.N.Y. 2003). No appeal was taken from the approval or entry of the Modified Handschu Guidelines.

According to the most recent submissions of Class Counsel, beginning in August 2011 articles and reports appeared in the press which described an NYPD policy of using undercover officers and confidential informants to gather information about political activity in circumstances where there was no indication of criminal activity: conduct which targeted places of worship and association within the City's Muslim communities. Class Counsel regarded these activities as violating the Modified Handschu Guidelines. They filed a motion in this action, before this Court,

for injunctive relief and the appointment of a monitor who would oversee the activities of the relevant NYPD intelligence unit. Corporation Counsel, on behalf of the city and NYPD, denied that the NYPD had violated the Modified Handschu Guidelines. Discovery ensued, as directed by orders of the Court.

At about the same time, a group of individuals filed an action against the City and NYPD in the Eastern District of New York before Judge Chen. *See Raza, et al. v. City of New York, et al.*, No.13-CV-3448 (PKC) (E.D.N.Y.). The plaintiffs in *Raza* are members of the Muslim community who claim that the NYPD's surveillance activities have violated their rights under the United States Constitution; they do not allege violations of the Modified Handschu Guidelines (which may be asserted only by Class Counsel in *Handschu*). Judge Chen directed discovery in *Raza*.

It came to pass that as discovery in these two separate but Muslim-related cases went forward, the surfacing of certain documents and other circumstances overlapped, to the extent that Class Counsel in *Handschu*, plaintiffs' counsel in *Raza*, and the Corporation Counsel, defending both cases, began to discuss, and eventually negotiated, the proposed settlement which, if approved by this Court, would resolve both cases.

It should be noted that this Court's obligation to hold a fairness hearing is derived solely from the *Handschu* case's status as a class action. If Judge Chen, sitting across the River, were presented with a stipulation of settlement in the *Raza* case standing alone, she would have no discernible responsibility to hold a fairness hearing. The *Raza* plaintiffs and their attorneys attended and spoke at the *Handschu* fairness hearing conducted by this Court principally because those plaintiffs are also members of the Handschu class, and the claims they assert against the NYPD are typical of those lying at the heart of *Handschu* since its inception in 1971.

3

The proposed settlement, if approved by the Court, would amend the Modified Handschu Guidelines in certain respects, and create a "Handschu Committee" within the NYPD, one of whose members would be a "Civilian Representative" with specified attendance privileges and oversight powers and responsibilities.

## II. THE FAIRNESS HEARING

Class Counsel and the Corporation Counsel published notice of the proposed settlement and fairness hearing in the public press. A Court order specified the form and contents of the notice, the newspapers where it would be published, the dates of publication, and the dates for the hearing. The fairness hearing was scheduled for April 19 and April 20, 2016, in the 500 Pearl Street Courthouse. Members of the public wishing to be heard at the hearing were directed to file a notice of that intention with the Clerk by April 5, together with (at the filer's option) a written statement of their comments about the settlement, pro or con.

While some criticism has been voiced about the timing and promulgation of the notice, by April 5 over 100 individuals or entities had filed statements of intent or responsive documents with the Clerk, and 33 individuals (everyone who wished to be heard) spoke during the hearing on April 19 and April 20. These statistics suggest that the notice adequately performed its desired due process function. The intelligent, articulate and often impassioned speakers at the fairness hearing came from a broad spectrum of the large and vibrant Muslim community in New York City. The Court heard from lawyers, physicians, religious leaders, social activists, leaders and members of community or faith organizations, students, and unaffiliated individuals who wished their personal views to be heard. Some speakers also submitted written statements. The Court received additional written comments from individuals or entities who did not speak at the hearing. All proceedings at

4

the hearing were transcribed by Court reporters. Some comments, oral and written, favored the proposed settlement and urged the Court to approve it. Others opposed the settlement and urged revision or rejection.

It is certainly arguable that the present record is sufficient to allow the Court to exercise its discretion at this time and approve or reject the proposed settlement. When the original Handschu Guidelines were being considered in the context of an earlier proposed settlement between the Class and the City, this Court approved that settlement, after conducting a fairness hearing and considering other evidence in the record. The Second Circuit, in affirming the judgment, stated:

> [T]he record contains a quantity of information which the district court was able to use in evaluating the proposed compromise. This included affidavits from police officials concerning political surveillance and intelligence gathering activities, police departmental guidelines for these operations, pertinent academic commentaries, and decisions in state litigation involving similar issues. The district court correctly concluded that it would be inconsistent with the salutary purposes of settlement to conduct a full trial in order to avoid one.

*Handschu v. Special Servs. Div.*, 787 F.2d 828, 834 (2d Cir. 1986) (citation omitted). This analysis mirrors the present situation, in which the record generated by the fairness hearing is supplemented by the parties' affidavits, the briefs of counsel, documentary evidence of NYPD practices concerning the Muslim community, and evidence of police activities elicited during the discovery procedures that preceded and led to the present proposed settlement.

Nonetheless, a number of individuals who participated in the fairness hearing, by written or oral statements, expressed the view that the importance and complexity of the issues require that more time be given before the Court rules on whether the proposed settlement and amendments to the Modified Handschu Guidelines are fair and reasonable, that being the governing test. *See*

*Handschu*, 787 F.2d at 833 ("Appellants next contest the district court's determination that the settlement agreement was fair and reasonable, a determination that may be reversed only for an abuse of discretion."). The contention is made that more time is needed for Muslim community leaders and attorneys to explain the meaning and consequences of the settlement and Guidelines amendments to the community, in furtherance of individuals' ability to address meaningful comments to the Court.

Class Counsel and Corporation Counsel, the principal proponents of the settlement, accept in principle the allowance of an extended time for education and comment. The issue is how long that extension should be in practice. Class Counsel and Corporation Counsel argue for 30 days. They are joined by counsel for the *Raza* plaintiffs (who would prefer no delay). On the other hand, respected attorneys for an umbrella group of Muslim faith organizations say that the greater Muslim community cannot be fully and sufficiently advised and counseled before late August, at which time there should be additional written submissions and a renewed fairness hearing. Other individuals have expressed comparable views.

I agree that a reasonable extension of time is desirable. The fully informed opinions of members of the Muslim community are important elements in a judicial evaluation of whether the proposed settlement is fair and reasonable for everyone living in or coming to the City, and for those whose duty it is to protect them. However, I cannot accept a delay for instruction and comment that would consume the entire summer and put off this Court's decision until the fall (to be followed, perchance, by another appeal). There is a powerful public interest, for many reasons, in promptly resolving the issues arising from the NYPD's apparent intelligence and surveillance activities directed at the Muslim community.

Moreover, the explications required by the proposed amendments to the Modified Handschu Guidelines are relatively limited. It is useful to observe that while some comments during the fairness hearing just concluded seemed to question the validity or legality of *any* NYPD investigations involving political activity, the reality is that first the Handschu Guidelines, and then the Modified Handschu Guidelines, were promulgated pursuant to orders and judgments of this Court (the former affirmed by the Court of Appeals). Consequently, the legality of those two sets of Guidelines is established. The present inquiry is limited to whether the proposed amendments to the Modified Handschu Guidelines are fair and reasonable. The principal amendments concern the conduct of Preliminary and Full Investigations (Section V) and the creation of the Handschu Committee, with its Civilian Representative (Section VI).

The effect and advisability of these particular amendments to the Modified Handschu Guidelines do not depend upon contested issues of fact. What is required is sufficient time to study the amendments, in the light of presently prevailing circumstances, and then comment upon them. In point of fact, the settlement and Guidelines amendments have already been commented upon by a number of individuals, in writing or orally at the hearing held last week. However, the Court agrees with those who say that the fairness of the hearing will be enhanced by additional time for study and comment, leading up to a final hearing day. For the reasons stated, these steps must be accomplished with reasonable dispatch, and in any event before the month of Ramadan begins on June 6.

Having considered these several factors, the Court directs that additional comments concerning the proposed settlement, pro or con, may be filed with the Clerk of the Court on any date **prior to and including May 26, 2016.** The Court will conduct a further fairness hearing **on June**

**1, 2016, at 10:00 a.m.** in the United States Courthouse, 500 Pearl Street. Individuals wishing to be heard should file a notice to that effect with the Clerk not later than May 26. These dates are peremptory and cannot be extended. The case will then be regarded as ripe for decision.

It is SO ORDERED.

Dated: New Haven, Connecticut
April 27, 2016

CHARLES S. HAIGHT, JR.
Senior United States District Judge