USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------

BARBARA HANDSCHU, RALPH DiGIA, ALEX
McKEIVER, SHABA OM, CURTIS M. POWELL,
ABBIE HOFFMAN, MARK A. SEGAL, MICHAEL
ZUMOFF, KENNETH THOMAS, ROBERT RUSCH,    71 Civ. 2203 (CSH)
ANNETTE T. RUBENSTEIN, MICKEY SHERIDAN,
JOE SUCHER, STEVEN FISCHLER, HOWARD
BLATT, ELLIE BENZONI, on behalf of    DECLARATION OF
themselves and all others similarly    JETHRO M.
situated,    EISENSTEIN

       Plaintiffs,

    -against-

SPECIAL SERVICES DIVISION, a/k/a
Bureau of Special Services; WILLIAM
H.T. SMITH; ARTHUR GRUBERT; MICHAEL
WILLIS; WILLIAM KNAPP; PATRICK
MURPHY; POLICE DEPARTMENT OF THE
CITY OF NEW YORK; JOHN V. LINDSAY;
and various unknown employees of the
Police Department acting as
undercover operators and informers,

       Defendants.

--------------------------------------------

    JETHRO M. EISENSTEIN, for his declaration pursuant to

28 U.S.C. 1746, states as follows:

    1.  I am one of the attorneys for the plaintiff class

in the above-captioned action.  I make this declaration to

notify the Court that the parties have reached agreement on

additional revisions to the Proposed Revised Handschu

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

Guidelines[1] that were submitted to the Court on January 7,

2016 and to summarize those additional revisions.

2.   In the Ruling on Proposed Settlement Agreement

dated October 28, 2016, the Court stated that the parties

should give consideration to agreeing upon certain points.

The Court further stated that if the parties were willing

to settle the motion of the Plaintiff Class on terms that

included those considerations, in words or substance, the

Court would approve such an agreement as fair and

reasonable.

3.   The parties have reached agreement to settle the

Plaintiff Class motion on terms that include those

considerations in substance. The text of the proposed terms

is submitted herewith.  Attached at Tab A is a blackline of

the Revised Handschu Guidelines showing the changes now

proposed compared to the 2016 proposal.  Attached at Tab B

is a blackline of the Revised Handschu Guidelines comparing

all the changes--those proposed in 2016 and now--with the

Modified Guidelines as adopted in 2003.  Attached hereto at

---

[1] For clarity, we adopt the terminology used by the Court.
Thus the Guidelines adopted in 2003 are referred to as the
"Modified Handschu Guidelines", 2016 WL 7048839, *1, and
the proposed Guidelines submitted to the Court on January
7, 2016 are referred to as the "Revised Handschu
Guidelines", 2016 WL 7048839, *6.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

Tab C is a clean copy of the Revised Handschu Guidelines with all the changes the parties propose.

4.    In this declaration, we quote, in bold face type below, the considerations as they were articulated by the Court at 2016 WL 7048839, *19, and we identify the provisions in the 2017 proposed Revised Handschu Guidelines that address them.

**"Specific provision would be made for the review and monitoring of the NYPD's compliance with all of the Handschu Guidelines for investigations involving political activity. The Handschu Committee would seem to be an appropriate body to perform that function. The Civilian Representative would participate in that process."**

5.    The Guidelines presented to the Court in January, 2016 formalized the Handschu Committee as the body charged with advising the Deputy Commissioner for Intelligence concerning the opening, extension or closure of investigations. As proposed to be amended, Section VI(1) expands the scope of the monthly meetings of the Handschu Committee to cover requests to use or extend the use of undercover officers or confidential informants. Section VI(2) provides that any member of the Handschu Committee, including the Civilian Representative, may inquire into the status of any investigation presented and that a member of the Intelligence Bureau with detailed knowledge of

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

operational steps taken must be present to address questions that arise.

6. In addition, Section VI(4) provides for the Special Counsel for Intelligence Affairs to lead a quarterly discussion for the Handschu Committee, including the Civilian Representative, concerning compliance with the Revised Handschu Guidelines. This quarterly discussion will specifically cover compliance in obtaining timely approvals for investigative activities and in conducting the required periodic reviews of ongoing investigations. This provision specifies that the discussion may include any questions or concerns about compliance with the Guidelines, and that the substance of these quarterly discussions will be recorded in the Handschu Committee minutes.

**"In addition to the powers conferred by the present provisions of the Revised Handschu Guidelines, the Civilian Representative may at any time communicate to the Court comments or concerns arising out of his or her functioning in that position."**

7. As proposed to be amended, Section VI(5)(g) provides that the Civilian Representative may communicate his or her concerns about the NYPD's compliance with the Revised Handschu Guidelines at any time, after giving the Police Commissioner seven days to provide a satisfactory

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

response to the concerns expressed. The scope of the oversight and reporting authority of the Civilian Representative has been broadened to include concerns about the manner in which an investigation is being conducted. See proposed Sections VI(5)(e) and (f).

**"Moreover the CR must file quarterly reports with the Court, which describe in some detail the CR's actions and observations during that period."**

8.   The Civilian Representative will be empowered to report to the Court at any time (Section VI(5)(g)), will be required to report to the Court if there are systematic violations (Section VI(5)(h)) and will be required to report to the Court on an annual basis (Section VI(5)(i)). The annual report will include the Civilian Representative's actions and observations during the year as well as a summary of the Civilian Representative's communications with the Court during that period. Taken together, we believe these reporting powers and requirements are responsive to the Court's proposal for quarterly reports. Reporting quarterly would be administratively burdensome, and could detract from the ability of the Civilian Representative to devote the necessary time, resources, and attention to monitoring

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

compliance with the proposed revised Handschu guidelines and to report to the Court at any time.

**"Copies of those communications and reports must be given to Corporation Counsel and Class Counsel. The Court will place them under seal. Counsel must treat them as confidential."**

9.   Under United States v. Erie County, 763 F.3d 235 (2d Cir., 2014), the Civilian Representative's communications and report to the Court are judicial documents, and they must be treated as such. The NYPD may have legitimate security concerns about the content of the Civilian Representative's communications and reports, and plaintiff class counsel do not feel we can be permanently in possession of information that we cannot disclose to members of the class. To address these concerns, we are proposing a procedure, set forth in Section VI(5)(k), under which a notation will be made in the public docket of the Court of the fact that the Court has received a communication or report from the Civilian Representative. The NYPD will then have 21 days to raise issues of privilege or other specified bases for redaction or sealing. The Court will adjudicate the claim and determine whether it can be resolved by redaction of the report or communication. Based on the determination of the Court, the

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

report or communication will be released and docketed,

released in redacted form and docketed, or maintained under

seal.

**"The Mayor appoints the Civilian Representative, who will act in that position for five years, subject to removal by the Mayor for good cause, on notice to Class Counsel and the Court. The Civilian Representative will continue in that position after five years, provided, however that thereafter the Mayor, if so advised, may apply to the Court for an amendment to the Guidelines to do away with the position."**

10. As proposed to be amended, Section VI(5) provides

that the position of Civilian Representative will continue

after the initial five year period unless the Mayor applies

to the Court for an amendment to the Revised Handschu

Guidelines abolishing the position, upon 30 days advance

notice to Class Counsel prior to such application:

> "The amendment to the Revised
> Handschu Guidelines abolishing the
> position shall be granted by the Court
> if the Court finds there have not been
> systematic and repeated violations of
> the Guidelines to a degree sufficient
> to show an NYPD policy to act in such a
> fashion for a period of three years
> immediately prior to the application,
> as shown in the reports submitted to
> the Court by the Civilian
> Representative."

11. As the Court will recall, "systematic and

repeated violations of the Guidelines to a degree

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

sufficient to show an NYPD policy to act in such a fashion"
is the threshold for invocation of the Court's equitable
power by Plaintiff class counsel.[2]

12.  With the addition of these additional revisions
to the proposed revised guidelines that were submitted in
January 2016, we respectfully request that the Court
approve the settlement as fair and reasonable. If the Court
has any questions or concerns about these proposals, we ask
for an opportunity to be heard with respect to them.


_____
     JETHRO M. EISENSTEIN


     I declare under penalty of perjury that the foregoing
is true and correct.  Executed on March 6, 2017.


_____

[2]     "To trigger the Court's equitable powers, Class Counsel
would   have   to   demonstrate   that   the   NYPD   .   .   .
systematically   and   repeatedly   disregarded   the   NYPD
Guidelines, to a degree sufficient to show a NYPD policy to
act in such a fashion."
2007 WL 1711775, *20

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

# TAB  A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

# GUIDELINES FOR INVESTIGATIONS INVOLVING POLITICAL ACTIVITY

**PREAMBLE**

Subsequent to the terrorist attacks on the City of New York on September 11, 2001 which resulted in the loss of thousands of lives and the total destruction of the World Trade Center complex, it became apparent that the City faces unprecedented threats to its continued safety and security. In the view of federal, state and local law enforcement agencies, the prevention of future attacks requires the development of intelligence and the investigation of potential terrorist activity before an unlawful act occurs.

As a result of a federal court order entered in 1985, the New York City Police Department was bound by guidelines, known as the Handschu Guidelines, which governed the investigation of political activity. The Handschu Guidelines (i) limited the investigation of political activity to those circumstances when there was specific information of criminal activity and (ii) established the Handschu Authority to oversee compliance. After evaluating the impact of the Handschu Guidelines on the need to investigate terrorism in a changed world, the City made an application to modify the order so as to eliminate the restrictions contained in the Handschu Guidelines and the oversight of the Handschu Authority with respect to those restrictions. The City did not seek to eliminate the Handschu Authority's role to investigate an individual's complaint that the NYPD had engaged in unconstitutional conduct in the investigation of political activity.

The Court granted the City's application to modify the decree provided the City adopt the internal guidelines set forth below and distribute the guidelines to supervisory personnel who, in turn, were to make them known to those under their command. These guidelines were subsequently incorporated into an order of the Court in 288 F.Supp.2d 411, 420 (S.D.N.Y. 2003) and are enforceable as set out in 679 F.Supp.2d 488, 497 (S.D.N.Y. 2010).  They shall remain in effect unless otherwise ordered by the Court. These guidelines are binding on all members of the service who are engaged in the investigation of political activity. It is the purpose of these guidelines to enable officers to perform their duties with greater certainty, confidence and effectiveness while at the same time protecting the guarantees of the Constitution.

## I.   STATEMENT OF POLICY

It is the policy of the New York City Police Department that investigations involving political activity conform to the guarantees of the Constitution, including the guarantee of equal protection.  It is the policy of the New York City Police Department that care be exercised in the conduct of those investigations so as to protect constitutional rights, including the right to be free from investigation in which race, religion, or ethnicity is a substantial or motivating factor.  It is the policy of the New York City Police Department that matters investigated be confined to those supported by a legitimate law enforcement purpose.

## II. GENERAL PRINCIPLES

(1) In its effort to anticipate or prevent unlawful activity, including terrorist acts, the NYPD must, at times, initiate investigations in advance of unlawful conduct. It is important that such investigations not be based solely on activities protected by the First Amendment.  It is also important that investigations not intrude upon rights of expression or association in a manner that discriminates on the basis of race, religion or ethnicity, where such

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

discrimination is a substantial or motivating factor for the investigation. When, however, statements advocate unlawful activity, or indicate an apparent intent to engage in unlawful conduct, particularly acts of violence, an investigation under these guidelines may be warranted, unless it is apparent, from the circumstances or the context in which the statements are made, that there is no prospect of harm.

(2) Based upon the circumstances of a given case, investigative action may be required under exigent circumstances. Exigent circumstances are circumstances requiring action before authorization otherwise necessary under these guidelines can reasonably be obtained, in order to protect life or substantial property interests; to apprehend or identify a fleeing offender; to prevent the hiding, destruction or alteration of evidence; or to avoid other serious impairment or hindrance of an investigation.

When any investigative action, taken under exigent circumstances, would require an approval under ordinary conditions, such approval shall be obtained as soon as practicable in accordance with the provisions of these guidelines. Where a regular approval or request is required to be in writing, the approval or request following exigent circumstances shall also be in writing.

(3) Investigations shall be terminated when all logical leads have been exhausted and no legitimate law enforcement purpose justifies their continuance.

## III. APPLICABILITY

These guidelines apply only to investigations which involve political activity. They do not apply to, or limit, other activities of the NYPD in the investigation or detection of unlawful conduct, the preservation of the peace and public safety or other legitimate law enforcement activities which do not involve political activity.

## IV. ROLE OF THE INTELLIGENCE BUREAU

(1) Investigation of political activity shall be initiated by, and conducted under the supervision of the Intelligence Bureau. Nothing in this paragraph, however, is intended to prevent any member of the service from reporting his or her observations of suspicious conduct which involves political activity to his or her commanding officer or to the Intelligence Bureau.

(2) The Deputy Commissioner of Intelligence shall periodically inform and advise the Police Commissioner concerning the status of any investigations conducted pursuant to these guidelines.

## V. LEVELS OF INVESTIGATION

These guidelines provide for three levels of investigative activity. They are intended to provide the NYPD with the necessary flexibility to act well in advance of the commission of planned terrorist acts or other unlawful activity. However, if the available information shows at the outset that the threshold standard for a Preliminary Inquiry or Full Investigation is satisfied, then the appropriate investigative activity may be initiated immediately, without progressing through more limited investigative stages.

### A. Checking of Leads

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# ..
DATE FILED 3/9/2107

The lowest level of investigative activity is the "prompt and extremely limited checking out of initial leads," which should be undertaken whenever information is received of such a nature that some follow-up as to the possibility of unlawful activity is warranted. This limited activity should be conducted with an eye toward promptly determining whether further investigation (either a Preliminary Inquiry or a Full Investigation) should be conducted.

*Example: If the NYPD receives an allegation that an individual or group has advocated the commission of violence, and no other facts are available, an appropriate first step would be Checking of Leads to determine whether the individual, group, or members of the audience have the apparent ability or intent to carry out the advocated unlawful act.*

## B. Preliminary Inquiries

(1) In cases where the NYPD receives information or an allegation not warranting a Full Investigation - because there is not yet a "reasonable indication" of unlawful activity - but whose responsible handling requires some further scrutiny beyond the prompt and extremely limited checking out of initial leads, the NYPD may initiate an "inquiry" in response to the allegation or information indicating the possibility of unlawful activity. The possibility of unlawful activity to initiate a Preliminary Inquiry requires an allegation or information that is articulable and factual. However, such allegation or information need not have been verified as true or accurate. Whether it is appropriate to open a Preliminary Inquiry immediately, or instead to engage first in a limited Checking of Leads, depends on the circumstances presented.

(2) The authority to conduct inquiries short of a Full Investigation allows the NYPD to respond in a measured way to ambiguous or incomplete information, with as little intrusion as the needs of the situation permit. This is especially important in such areas as where there is no complainant involved or when an allegation or information is received from a source of unknown reliability. Such inquiries are subject to the limitations on duration under paragraph (4) below and are carried out to obtain the information necessary to make an informed judgment as to whether a Full Investigation is warranted.

*Example: Officers are not required to possess information relating to an Individual's intended unlawful use of dangerous biological agents or toxins prior to initiating investigative activity. If an individual or group has attempted to obtain such materials, or has indicated a desire to acquire them, and the reason is not apparent, investigative action, such as conducting a Checking of Leads or initiating a Preliminary Inquiry, may be appropriate to determine whether there is a legitimate purpose for the possession of the materials by the individual or group. A Preliminary Inquiry is not a required step when facts or circumstances reasonably indicating unlawful activity are already available. In such cases, a Full Investigation can be immediately opened.*

(3) A Preliminary Inquiry may be authorized by the Chief of Intelligence or Executive Officer of the Intelligence Bureau, or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials"). The Authorizing Official must

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED 3/9/2107,

assure that the allegation or other information which warranted the inquiry has been recorded in writing. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence.

(4) Inquiries shall be completed within 180 days after initiation of the first investigative step. The date of the first investigative step is not necessarily the same date as the date on which the first incoming information or allegation was received. An extension of time in an inquiry for succeeding 90 day periods may be granted by the Deputy Commissioner of Intelligence. Any such request for extension shall be in writing and shall include a statement of the reasons why further investigative steps are warranted when there is no reasonable indication of unlawful activity. The action taken on any such request for extension shall also be recorded in writing.

(5) A Preliminary Inquiry shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Preliminary Inquiry, including, what operational steps should be taken.

(6) A Preliminary Inquiry shall be presumptively limited to a total duration of 18 months. This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where the allegations or information continue to indicate the possibility of unlawful activity and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further. When the presumptive period of duration is exceeded all other provisions regarding a Preliminary Inquiry continue to apply.

(7) All lawful investigative techniques, including the use of undercover operations and the development of sources and informants may be used in a Preliminary Inquiry except:

(a) Mail openings; and,

(b) Eavesdropping and Video Surveillance as those terms are defined in Article 700 of the New York State Criminal Procedure Law.

(8) The following investigative techniques may be used in a Preliminary Inquiry without any prior authorization from a supervisor:

(a) Examination of NYPD indices and files;

(b) Examination of records available to the public and other public sources of information;

(c) Examination of available federal, state and local government records;

(d) Interview of complainant, previously established informants, and other sources of information;

(e) Interview of the potential subject;

(f) Interview of persons who should readily be able to corroborate or deny the truth of the allegation, except this does not include pretext interviews or interviews of a

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED 3/9/2107_____

potential subject's employer or coworkers unless the interviewer was the complainant; and

(g) Physical, photographic or video surveillance of any person, provided that such surveillance does not require a warrant.

The use of any other lawful investigative technique that is permitted in a Preliminary Inquiry shall meet the requirements and limitations of Part VII and, except in exigent circumstances, requires prior approval by a supervisor.

(9) Where a Preliminary Inquiry fails to disclose sufficient information to justify an investigation, the NYPD shall terminate the inquiry and make a record of the closing.

(10) All requirements regarding inquiries shall apply to reopened inquiries.


## C. Full Investigation

A Full Investigation may be initiated when facts or circumstances reasonably indicate that an unlawful act has been, is being, or will be committed. A Full Investigation may be conducted to prevent, solve or prosecute such unlawful activity.

(1) The standard of "reasonable indication" is substantially lower than probable cause. In determining whether there is reasonable indication of an unlawful act an investigator may take into account any facts or circumstances that a prudent investigator would consider. However, the standard does require specific facts or circumstances indicating a past, current, or future violation of law. There must be an objective, factual basis for initiating the investigation; a mere hunch is insufficient.

(2) Where an unlawful act may be committed in the future, preparation for that act can be a current violation of the conspiracy or attempt provisions of state law. The standard for opening an investigation is satisfied where there is not yet a current substantive or preparatory unlawful act, but facts or circumstances reasonably indicate that such unlawful conduct will occur in the future.

(3) Any lawful investigative technique may be used in a Full Investigation, subject to the requirements and limitations of Part VI hereof.

(4) Authorization and Renewal

   a. A Full Investigation may be authorized by the Chief of Intelligence or Executive Officer of the Intelligence Bureau or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials") upon a written recommendation setting forth the facts or circumstances reasonably indicating that an unlawful act has been, is being or will be committed. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence.

   b. A Full Investigation may be initially authorized for a period of up to a year. An investigation may be continued upon renewed authorization for additional periods each not to exceed a year. Renewal authorization shall be obtained from the Deputy Commissioner of Intelligence. All requests for renewal authorization, and action thereon, shall be in writing.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

    c.  Authorizations shall be reviewed by an Authorizing Official before the expiration of the period for which the investigation and each renewal thereof is authorized.

    d.  A Full Investigation shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Full Investigation, including, what operational steps should be taken.

    e.  A Full Investigation shall be presumptively limited to a total duration of 3 years. This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where facts and circumstances continue to reasonably indicate that an unlawful act has been, is being, or will be committed and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further.  When the presumptive period of duration is exceeded all other provisions regarding a Full Investigation continue to apply.

(5) An investigation which has been terminated may be reopened upon a showing of the same standard and pursuant to the same procedures as required for initiation of an investigation.  All requirements regarding investigations shall apply to reopened investigations.

## D. Terrorism Enterprise Investigation

A Terrorism Enterprise Investigation is a Full Investigation but differs from a general investigation of unlawful conduct in several important respects. As a general rule, an investigation of a completed unlawful act is normally confined to determining who committed that act and securing evidence to establish the elements of the particular offense. It is, in this respect, self-defining. A Terrorism Enterprise Investigation must determine the identity and nature of the individual, group, or organization involved, its geographic dimensions, its past acts and intended goals, including unlawful goals, and its capacity for harm, among other factors. While a standard investigation of unlawful conduct terminates with the decision to prosecute or not to prosecute, a Terrorism Enterprise Investigation does not necessarily end, even though one or more of the participants may have been prosecuted. In addition, groups and organizations exhibit a life and continuity of operation not normally found in other types of unlawful activity. As a consequence, these investigations may continue for several years. Furthermore, the focus of such investigations may be less precise than that directed against more conventional types of unlawful conduct. Unlike the usual case involving unlawful conduct, there may be no completed offense to provide a framework for the investigation. A Terrorism Enterprise Investigation often requires the fitting together of bits and pieces of information, many meaningless by themselves, to determine whether a pattern of unlawful activity exists. For this reason, such investigations are broader and less discriminate than usual, involving the interrelation of various sources and types of information. This section focuses on investigations of enterprises that seek to further political or social goals through activities that involve force or violence, or that otherwise aim to engage in terrorism or terrorism-related crimes. It authorizes investigations to determine the structure and scope of the enterprise as well as the relationship of the members.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

**1. General Authority**

a. A Terrorism Enterprise Investigation may be initiated when facts or circumstances reasonably indicate that two or more persons are engaged in an enterprise for the purpose of:

    (i)  furthering political or social goals wholly or in part through activities that involve force, violence or other unlawful acts;

    (ii)  engaging in terrorism as defined in N.Y. Penal Law § 490.05, or

    (iii)  committing any offense described in N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, or 490.35, or other related statutes currently in effect or subsequently enacted.

The standard of "reasonable indication" is identical to that governing Full Investigations generally. In determining whether an investigation should be conducted, the NYPD shall consider all of the circumstances including:

    (i)  the magnitude of the threatened harm;

    (ii)  the likelihood that it will occur;

    (iii)  the immediacy of the threat; and

    (iv)  any danger to privacy or free expression posed by an investigation.

In practical terms, the "reasonable indication" standard for opening a Terrorism Enterprise Investigation could be satisfied in a number of ways.

*Example: Direct information about statements made in furtherance of an enterprise's objectives which show a purpose of committing crimes described in N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35 or other related statutes currently in effect or subsequently enacted, would satisfy the threshold.*

*Example: Activities such as attempting to obtain dangerous biological agents, toxic chemicals, or nuclear materials, or stockpiling explosives or weapons, with no discernible lawful purpose, may be sufficient to reasonably indicate that an enterprise aims to engage in terrorism.*

b. While no particular factor or combination of factors is required, considerations that will generally be relevant to the determination as to whether the threshold standard for a Terrorism Enterprise Investigation is satisfied include, as noted, a group's statements, its activities, and the nature of potential unlawful acts suggested by the statements or activities. Thus, where there are grounds for inquiry concerning a group, it may be helpful to gather information about these matters, and then to  consider whether these factors, either individually or in combination, reasonably indicate that the group is pursuing terrorist activities or objectives as defined in the threshold standard. Findings that would weigh in favor of such a conclusion include, for example, the following:

    (1) Threats or advocacy of violence or other covered unlawful acts. Statements are made in relation to or in furtherance of an enterprise's political or social

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

objectives that threaten or advocate the use of force or violence, or statements are made in furtherance of an enterprise that otherwise threaten or advocate unlawful conduct within the scope of N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35, or other related statutes currently in effect or subsequently enacted which may concern such matters as , for example:

    (i)   engaging in attacks involving or threatening massive loss of life or injury, mass destruction, or endangerment of the national security;

    (ii)  killing or injuring public officials, or destroying public facilities, or defying lawful authority;

    (iii) killing, injuring or intimidating individuals because of their status as United States nationals or persons, or because of their national origin, race, color, religion or sex; or

    (iv) depriving individuals of any rights secured by the Constitution or laws of the United States or the State of New York.

(2) Apparent ability or intent to carry out violence or other covered activities. The enterprise manifests an apparent ability or intent to carry out violence or other activities within the scope of N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35 or other related statutes currently in effect or subsequently enacted, for example:

    (i)   by acquiring or taking steps towards acquiring, biological agents or toxins, toxic chemicals or their precursors, radiological or nuclear materials, explosives or other destructive or dangerous material (or plans or formulas for such materials), or weapons, under circumstances where, by reason of the quantity or character of the items, the lawful purpose of the acquisition is not apparent;

    (ii)  by the creation, maintenance, or support of an armed paramilitary organization;

    (iii) by paramilitary training; or

    (iv) by other conduct demonstrating an apparent ability or intent to injure or intimidate individuals, or to interfere with the exercise of their constitutional or statutory rights.

(3) Potential Unlawful Act. The group's statements or activities suggest potential unlawful acts that may be relevant in applying the standard for initiating a Terrorism Enterprise Investigation - such as crimes under the provisions of the N.Y. Penal Law that set forth specially defined terrorism or support of terrorism offenses, or that relate to such matters as aircraft hijacking or destruction, attacks on transportation, communications, or energy facilities or systems, biological or chemical weapons, nuclear or radiological materials, assassinations or other violence against public officials or facilities, or explosives.

c.  Mere speculation that force or violence might occur during the course of an otherwise peaceable demonstration is not sufficient grounds for initiation of an

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

investigation under this subpart. But where facts or circumstances reasonably indicate that an individual or group has engaged or aims to engage in conduct described in paragraph 1.a. above in a demonstration, an investigation may be initiated in conformity with the standards of that paragraph. This does not limit the collection of information about public demonstrations by individuals or groups that are under active investigation pursuant to paragraph 1.a. above or any other provisions of these guidelines.

## 2. Purpose

The immediate purpose of a Terrorism Enterprise Investigation is to obtain information concerning the nature and structure of the enterprise as specifically delineated in paragraph (3) below, with a view to the longer range objectives of detection, prevention, and prosecution of the unlawful activities of the enterprise.

## 3. Scope

a. A Terrorism Enterprise Investigation initiated under these guidelines may collect such information as:

(i) the identity and nature of an individual or group and its members, their associates, and other persons likely to be acting in furtherance of its unlawful objectives, provided that the information concerns such persons' activities on behalf of or in furtherance of the suspected unlawful activity of the individual, group, or organization;

(ii) the finances of the individual, group, or organization;

(iii) the geographical dimensions of the individual, group, or organization; and

(iv) past and future activities and goals of the individual, group, or organization.

b. In obtaining the foregoing information, any lawful investigative technique may be used in accordance with the requirements of these guidelines.

## 4. Authorization and Renewal

a. A Terrorism Enterprise Investigation may be authorized by the Chief of Intelligence or Executive Officer of the Intelligence Bureau or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials"), upon a written recommendation setting forth the facts or circumstances reasonably indicating the existence of an enterprise as described in paragraph 1.a. above. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence. When exigent circumstances exist, as described in these guidelines, a Terrorism Enterprise Investigation may be commenced upon the verbal authorization of an Authorizing Official. However, in such cases, the required written recommendation must be submitted as soon as practicable.

b. A Terrorism Enterprise Investigation may be initially authorized for a period of up to a year. An investigation may be continued upon renewed authorization for additional periods each not to exceed a year. Renewal

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

authorization shall be obtained from the Deputy Commissioner of Intelligence. The request for renewal and action thereon shall be in writing.

c. Authorizations shall be reviewed by an Authorizing Official before the expiration of the period for which the investigation and each renewal thereof is authorized. In some cases, the enterprise may meet the threshold standard but be temporarily inactive in the sense that it has not engaged in recent acts of violence or other unlawful activities as described in 1.a., nor is there any immediate threat of harm - yet the composition, goals and prior history of the group suggest the need for continuing law enforcement interest. The investigation may be continued in such cases with whatever scope is warranted in light of these considerations.

d. All Terrorism Enterprise Investigations shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Terrorism Enterprise Investigation, including, what operational steps should be taken.

e. A Terrorism Enterprise Investigation shall be presumptively limited to a total duration of 5 years, except where the subject of a Terrorism Enterprise Investigation is a designated foreign terrorist organization. This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where facts and circumstances continue to reasonably indicate that two or more persons are engaged in an enterprise for the purposes stated above and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further. When the presumptive period of duration is exceeded all other provisions regarding a Terrorism Enterprise Investigation continue to apply.

f. An investigation which has been terminated may be reopened upon a showing of the same standard and pursuant to the same procedures as required for initiation of an investigation.

## VI.    HANDSCHU COMMITTEE

(1) There is hereby established a committee (the "Handschu Committee") whose members mayare expected and authorized to attend and participate in monthly meetings at which investigations are presented for opening, extension or closure by the Deputy Commissioner for Intelligence. For each monthly meeting, all attending members will be provided with the investigative statement pertaining to each proposed opening, extension or closing for the monthly meeting. At the and any corresponding requests to use or extend the use of undercover officers or confidential informants. At the monthly meeting, any member of the Handschu Committee may ask questions and offer opinions regarding the opening, extension or closure of an investigation presented.

(2) Any member of the Handschu Committee may further inquire into the status and conduct of any investigation presented at the meeting, including the use of undercover operations pursuant

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

to section VII herein, provided however that information pertaining to the identity of participants in undercover operations, including confidential informants, shall not be disclosed.  A member of the Intelligence Bureau with detailed knowledge of operational steps taken in each investigation presented shall be present at the meeting to help address any questions that arise.

(3)  Members of the Handschu Committee from the NYPD will include the Deputy Commissioner of Intelligence, the Chief of Intelligence, the Executive Officer of the Intelligence Bureau, the Commanding Officer of IOAS (Intelligence Operations and Analysis Section), the Executive Officer of IOAS, the Commanding Officer (or the Executive Officer) of the Criminal Intelligence Section, the Director ofAssistant Commissioner for Intelligence Analysis, the Deputy Commissioner of Legal Matters, Assistant Deputy Commissioner of Legal Matters, Assistant Commissioner of Legal Matters for Intelligence Affairs, Special Counsel for Intelligence Affairs, and/or their successors or persons who occupy similar positions of authority or                                                                                                                                              expertise.

(4) The Special Counsel for Intelligence Affairs shall lead a quarterly discussion for the Handschu Committee related to the NYPD's compliance during that period in (i) obtaining timely approval in extending or closing investigations, (ii) obtaining timely approval of human source authorizations, and (iii) conducting reviews of Preliminary Inquiries, Full Investigations, and Terrorism Enterprise Investigations every 6 months, as provided in sections V(B)(5), V(C)(4)(d) and V(D)(4)(d) hereof.  As part of this quarterly discussion, any member of the Handschu Committee may raise concerns regarding any other aspect of compliance with the Handschu Guidelines. The substance of these quarterly discussions shall be recorded in the minutes           of           the           Handschu           Committee           meeting.

(5) There shall also be a Civilian Representative on the Handschu Committee who mayshall, unless unable to do so for good cause, attend and participate in all of the monthly meetings for opening, extension, or closure of investigations and in all of the quarterly discussions led by the Special Counsel for Intelligence Affairs on the same terms and conditions as set forth in paragraphparagraphs (1), (2) and (4) above. The Civilian Representative shall be a lawyer who has never previously been an employee of the NYPD.  The Civilian Representative shall be appointed by the Mayor upon consultation with the Police Commissioner.   The Civilian Representative may be replaced by the Mayor for good cause, with 14 days' advance notice to Class Counsel prior to such replacement.   In the event that the Civilian Representative resigns, the Mayor in consultation with the Police Commissioner will appoint a replacement.   The position of Civilian Representative will exist for a minimum of five years from the appointment of the first person to fill that role.   After that initial five year period, the position of Civilian Representative will continue unless abolished or modified by the Mayor, upon which Class Counsel will receive 90 days' notice in advance of such abolition or modification.

the Mayor applies to the Court for an amendment to the Revised Handschu Guidelines abolishing the position, upon 30 days' advance notice to Class Counsel prior to such application.  The amendment to the Revised Handschu Guidelines abolishing the position shall be granted by the Court if the Court finds there have not been systematic and repeated violations of the Guidelines to a degree sufficient to show an NYPD policy to act in such a fashion for a period of three years immediately prior to the application, as shown in the reports submitted to the Court by the Civilian Representative.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107 ____

(a) The Civilian Representative shall submit to a background investigation conducted by the Department of Investigation.

(b) The NYPD will facilitate an application for a federal security clearance for the Civilian Representative.

(c) The Civilian Representative shall execute a Non-Disclosure Agreement with the NYPD setting forth his or her undertaking that the proceedings of the Handschu Committee, as well as all materials reviewed by the Civilian Representative for or at the meetings of the Committee, shall be kept confidential and shall not be disclosed to any person except as set forth therein.

(d) The Civilian Representative shall be required to familiarize himself or herself with the Revised Handschu Guidelines governing the investigation of political activity by the NYPD.

(e) If the Civilian Representative concludes that an investigation is being opened or, extended, or conducted in violation of the Revised Handschu Guidelines, or that the NYPD is otherwise violating the Revised Handschu Guidelines, the Civilian Representative shall record his or her concerns regarding the purported violation and/or his or her objection to the investigation and the grounds for the objection in the minutes of the Handschu Committee meeting.

(f) If the Civilian Representative concludes that an investigation is being opened or, extended, or conducted in violation of the Revised Handschu Guidelines, the Civilian Representative shall bring such investigation to the attention of the Police Commissioner. The Civilian Representative shall be provided with means to contact present his or her conclusion to the Police Commissioner directly. (hereafter, "a VI(5)(f) communication"). The Police Commissioner shall inquire into the investigation and report the findings of the inquiry to the Civilian Representative. within seven (7) days after receipt of the VI(5)(f) communication.

(g) If the Civilian Representative has concerns about the NYPD's compliance with the Revised Handschu Guidelines, and the Police Commissioner has not provided a timely response to the Civilian Representative's VI(5)(f) communication regarding such concerns, or the Civilian Representative is not satisfied with the Police Commissioner's response, the Civilian Representative may communicate those concerns to the Judge assigned to the Handschu case in the Southern District of New York at any time. In the event the Civilian Representative decides to communicate such concerns to the Court, a copy of the communication shall first be served confidentially upon the Police Commissioner, the Deputy Commissioner of Intelligence, and the Deputy Commissioner of Legal Matters seven (7) days prior to its submission to the Court. The Civilian Representative shall retain final authority over and responsibility for the content of the communication. Submission to the Court shall be effectuated in compliance with Section VI(5)(k) below.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

(h) After complying with provision VI(5)(f) hereof, if the Civilian Representative concludes at any time that the NYPD is systematically and repeatedly violating the Revised Handschu Guidelines to a degree sufficient to show a NYPD policy to act in such a fashion, the Civilian Representative shall report the alleged systematic violation to the Judge assigned to the Handschu case in the Southern District of New York.  In the event the Civilian Representative decides to make a report communicate such concerns to the Court based upon a perceived policy by the NYPD to violate the Guidelines, a , a copy of the report communication shall first be served confidentially upon the Police Commissioner, the Deputy Commissioner of Intelligence, and the Deputy Commissioner of IntelligenceLegal Matters seven (7) days prior to its submission to the Court. The report shall be submitted directly to the Judge in a confidential manner, shall be kept confidential, and shall be filed under seal.  Class Counsel in the Handschu case shall be given notice that a report was submitted by the , provided that the Civilian Representative to the Court.  The parties will then agree to a confidentiality order governing disclosure of the contentsshall retain final authority over and responsibility for the content of the report to Class Counsel or, in the event that the NYPD believes the report in whole or in part should not be disclosed to Class Counsel, the NYPD shall be provided communication.  Submission to the Court shall be effectuated in compliance with Section VI(5)(k) below.

(i) In addition, the Civilian Representative shall file an opportunity to informannual report with the Court related to his or her actions and observations as to the a member of the Handschu Committee.  The annual report will (A) indicate whether the Civilian Representative has objected to any investigations over that period and the basis for objectingthat objection; (B) state whether the NYPD has (i) substantially obtained timely approval for extending and closing investigations, (ii) substantially obtained timely approval for the use of human sources, and (iii) substantially fulfilled its obligation to review Preliminary Inquiries, Full Investigations, and Terrorism Enterprise Investigations every 6 months, as provided in sections V(B)(5), V(C)(4)(d) and V(D)(4)(d) hereof; and (C) address any communication during the annual period by the Civilian Representative to the Court under VI(5)(g) or (h).  Prior to submission of the annual report to the Court, the Civilian Representative shall first serve copies confidentially to the Police Commissioner, Deputy Commissioner of Intelligence, and Deputy Commissioner of Legal Matters 21 days prior to submission to the Court, provided that the Civilian Representative shall retain final authority over and responsibility for the content of the report.

(j) The report and communications permitted under VI(5)(g), (h) and (i) will not include the number of investigations reviewed over the term, information deemed classified by the federal government, information obtained from other law enforcement or government agencies, information that reveals the identity of an individual or organization, information subject to the law enforcement privilege or other applicable privileges, or information that is otherwise protected by state or federal law.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 3/9/2107

(k)  At the time that the Civilian Representative submits a communication or report to the Court pursuant to VI(5)(g), (h) or (i), notice of the Court's receipt of a communication or report from the Civilian Representative shall be entered on the Court's docket.  The content of the communication or report to the Court shall, in the first instance, be maintained by the Court confidentially and under seal.  The NYPD shall have 21 days from the filing of the communication or report to notify the Court (i) whether it contains privileged information or information that is prohibited from disclosure as set forth in VI(5)(j); (ii) if it believes such information can be protected through redaction of the document; or (iii) if it asserts the need to maintain the entire document confidentially and under seal.  The Court shall adjudicate the propriety and scope of any such invocation.  If the NYPD does not assert any such concerns about the information contained in the document, or if the Court determines that the document should be made public without redactions despite such objections by the NYPD, a copy of the report or communication shall be filed in the public docket and served on class counsel.  If the Court determines that redactions can cure the need for the sealing of the entire document, a copy of the report or communication with the redactions shall be filed in the public docket and served on Class Counsel while the original submission by the Civilian Representative shall be maintained under seal.  If the Court determines that the communication or report contains privileged information or information that is prohibited from disclosure ~~in whole or in part to Class Counsel.~~ as set forth in VI(5)(j) and that redaction cannot cure the need for the sealing of the entire document, the communication or report shall be maintained under seal and there shall be an entry on the Court's docket that the communication or report is being maintained under seal.

(6) Nothing herein shall effect, limit, or diminish the authorization and approval provisions for investigations, which grant exclusive approval authority to the Authorizing Officials or the Deputy Commissioner of Intelligence.


## VII.  INVESTIGATIVE TECHNIQUES

(1) When conducting investigations under these guidelines, the NYPD may use any lawful investigative technique permitted by these guidelines. The choice of investigative techniques is a matter of judgment, which should take account of:

  (i)  the objectives of the investigation and available investigative resources;

  (ii) the intrusiveness of a technique, considering such factors as the effect on the privacy of individuals and potential damage to reputation;

  (iii) the potential effect on the political or religious activity of individuals, groups or organizations and the potential effect on persons who, although not a target of the investigation are affected by or subject to the technique;

  (iv)  the seriousness of the unlawful act; and

  (v) the strength of the information indicating its existence or future commission of the unlawful act.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

(2) Where the conduct of an investigation presents a choice between the use of more or less intrusive methods, the NYPD should consider whether the information could be obtained in a timely and effective way by the less intrusive means. The NYPD should not hesitate to use any lawful techniques consistent with these guidelines in an investigation, even if intrusive, where the intrusiveness is warranted in light of the seriousness of the crime or the strength of the information indicating its existence or future commission. This point is to be particularly observed in investigations relating to terrorist activities.

(3) Authorized methods in investigations include, among others, use of confidential informants, undercover activities and operations, eavesdropping and video surveillance (as defined in Article 700 of the NY Criminal Procedure Law), pen registers and trap and trace devices, consensual electronic monitoring, and searches and seizures.

a. Undercover Operations

(i) Undercover operations, including confidential informants, may be used when taking into account all the circumstances of the investigation, including the need for the information and the seriousness of the threat, it has been determined that the information sought in the investigation could not be reasonably obtained in a timely and effective way by a less intrusive means. The use of undercovers and confidential informants must be authorized by the Deputy Commissioner of the Intelligence Bureau prior to commencement of the undercover operation. The request to use undercovers or confidential informants and action taken on the request must be in writing and must include a description of the facts on which the investigation is based and the role of the undercover.

(ii) The use of an undercover or confidential informant will be approved for a period of 90 days and may be extended for additional periods of 90 days with the approval of the Deputy Commissioner of the Intelligence Bureau. Such extensions may be approved for as long as the investigation continues when it has been determined that the information sought in the investigation could not reasonably be obtained in a timely and effective manner by less intrusive means. The request to extend the use of undercovers and action taken on the request must be in writing and must include the reason for the extension.

(iii) Undercovers are strictly prohibited from engaging in any conduct the sole purpose of which is to disrupt the lawful exercise of political activity, from instigating unlawful acts or engaging in unlawful or unauthorized investigative activities.

b. Eavesdropping and Video Surveillance (as defined in Article 700 of the NY Criminal Procedure Law), Pen Registers and Trap and Trace Devices, and Consensual Electronic Monitoring

(i) All requirements for the use of such methods under the Constitution, applicable statutes, and NYPD regulations or policies must be observed.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

(4) Whenever an individual is known to be represented by counsel in a particular matter, the NYPD shall follow applicable law and Department procedure concerning contact with represented individuals in the absence of prior notice to their counsel.

## VIII. DISSEMINATION AND MAINTENANCE OF INFORMATION

A. Dissemination

The NYPD may disseminate information obtained during the Checking of Leads, Preliminary Inquiries and investigations conducted pursuant to these guidelines to federal, state or local law enforcement agencies, or local criminal justice agencies when such information:

(i)   falls within the investigative or protective jurisdiction or litigative responsibility of the agency;

(ii)  may assist in preventing an unlawful act or the use of violence or any other conduct dangerous to human life;

(iii) is required to be disseminated by interagency agreement, statute, or other law.

B. Maintenance

All documentation required under these Guidelines shall be maintained by the Intelligence Bureau in accordance with general police department practice and applicable municipal record retention and destruction rules, regulations and procedures. Under these rules and practices documents are retained for no less than five years.

## IX. COUNTERTERRORISM ACTIVITIES AND OTHER AUTHORIZATIONS

In order to carry out its mission of preventing the commission of terrorist acts in or affecting the City of New York and the United States and its people, the NYPD must proactively draw on available sources of information to identify terrorist threats and activities. It cannot be content to wait for leads to come in through the actions of others, but rather must be vigilant in detecting terrorist activities to the full extent permitted by law, with an eye towards early intervention and prevention of acts of terrorism before they occur. This Part accordingly identifies a number of authorized activities which further this end, and which can be carried out even in the absence of a checking of leads, Preliminary Inquiry, or Full Investigation as described in these guidelines. The authorizations include both activities that are specifically focused on terrorism and activities that are useful for law enforcement purposes in both terrorism and non-terrorism contexts. The authorized law enforcement activities of the NYPD include carrying out and retaining information resulting from the following activities.

## A. COUNTERTERRORISM ACTIVITIES

1. Information Systems

The NYPD is authorized to operate and participate in identification, tracking, and information systems for the purpose of identifying and locating potential terrorists and supporters of terrorist activity, assessing and responding to terrorist risks and threats, or otherwise detecting, prosecuting, or preventing terrorist activities. Systems within the scope of this paragraph may draw on and retain pertinent information from any

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

source permitted by law, including information derived from past or ongoing investigative activities; other information collected or provided by governmental entities, such as foreign intelligence information and lookout list information; publicly available information, whether obtained directly or through services or resources (whether nonprofit or commercial) that compile or analyze such information; and information voluntarily provided by private entities. Any such system operated by the NYPD shall be reviewed periodically for compliance with all applicable statutory provisions and Department regulations and policies.

2. Visiting Public Places and Events
For the purpose of detecting or preventing terrorist activities, the NYPD is authorized to visit any place and attend any event that is open to the public, on the same terms and conditions as members of the public generally. No information obtained from such visits shall be retained unless it relates to potential unlawful or terrorist activity.

## B. OTHER AUTHORIZATIONS
1. General Topical Research
The NYPD is authorized to carry out general topical research, including conducting online searches and accessing online sites and forums as part of such research on the same terms and conditions as members of the public generally. "General topical research" under this paragraph means research concerning subject areas that are relevant for the purpose of facilitating or supporting the discharge of investigative responsibilities. It does not include online searches for information by individuals' names or other individual identifiers, except where such searches are incidental to topical research, such as searching to locate writings on a topic by searching under the names of authors who write on the topic, or searching by the name of a party to a case in conducting legal research.

2. Use of Online Resources Generally
For the purpose of developing intelligence information to detect or prevent terrorism or other unlawful activities, the NYPD is authorized to conduct online search activity and to access online sites and forums on the same terms and conditions as members of the public generally.

3. Reports and Assessments
The NYPD is authorized to prepare general reports and assessments concerning terrorism or other unlawful activities for purposes of strategic or operational planning or in support of other legitimate law enforcement activities.

## X. PROTECTION OF PRIVACY AND OTHER LIMITATIONS
A. General Limitations
The law enforcement activities authorized by this Part do not include maintaining files on individuals solely for the purpose of monitoring activities protected by the First Amendment or the lawful exercise of any other rights secured by the Constitution or laws of the United States. Rather, all such law enforcement activities must have a valid law

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

enforcement purpose and must be carried out in conformity with all applicable statutes and Department regulations and policies.

B. Construction of Part

This Part does not limit any activities authorized by or carried out under other Parts of these guidelines. The specification of authorized law enforcement activities under this Part is not exhaustive, and does not limit other authorized law enforcement activities of the NYPD.

## XI.    RESERVATION

Nothing in these guidelines shall limit the general reviews or audits of papers, files, contracts, or other records in the possession of the NYPD or City of New York, or the performance of similar services at the specific request of another government agency. Such reviews, audits, or similar services must be for the purpose of detecting or preventing violations of law which are within the investigative responsibility of the NYPD.

Nothing in these guidelines is intended to limit the NYPD's responsibilities to investigate certain applicants and employees, or to pursue efforts to satisfy any other of its legal rights, privileges, or obligations. These guidelines are set forth solely for the purpose of internal NYPD guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural; enforceable at law by any party in any matter, civil or criminal, nor do they place any limitation on otherwise lawful investigative and litigative prerogatives of the NYPD or City of New York.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

# TAB  B

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

# GUIDELINES FOR INVESTIGATIONS INVOLVING POLITICAL ACTIVITY

## PREAMBLE

Subsequent to the terrorist attacks on the City of New York on September 11, 2001 which resulted in the loss of thousands of lives and the total destruction of the World Trade Center complex, it became apparent that the City faces unprecedented threats to its continued safety and security. In the view of federal, state and local law enforcement agencies, the prevention of future attacks requires the development of intelligence and the investigation of potential terrorist activity before an unlawful act occurs.

As a result of a federal court order entered in 1985, the New York City Police Department was bound by guidelines, known as the Handschu Guidelines, which governed the investigation of political activity. The Handschu Guidelines (i) limited the investigation of political activity to those circumstances when there was specific information of criminal activity and (ii) established the Handschu Authority to oversee compliance. After evaluating the impact of the Handschu Guidelines on the need to investigate terrorism in a changed world, the City made an application to modify the order so as to eliminate the restrictions contained in the Handschu Guidelines and the oversight of the Handschu Authority with respect to those restrictions. The City did not seek to eliminate the Handschu Authority's role to investigate an individual's complaint that the NYPD had engaged in unconstitutional conduct in the investigation of political activity.

The Court granted the City's application to modify the decree provided the City adopt the internal guidelines set forth below and distribute the guidelines to supervisory personnel who, in turn, were to make them known to those under their command. These guidelinesThese guidelines were subsequently incorporated into an order of the Court in 288 F.Supp.2d 411, 420 (S.D.N.Y. 2003) and are enforceable as set out in 679 F.Supp.2d 488, 497 (S.D.N.Y. 2010). They shall remain in effect unless otherwise ordered by the Court. These guidelines are binding on all members of the service who are engaged in the investigation of political activity. It is the purpose of these guidelines to enable officers to perform their duties with greater certainty, confidence and effectiveness while at the same time protecting the guarantees of the Constitution.

## I. STATEMENT OF POLICY

It is the policy of the New York City Police Department that investigations involving political activity conform to the guarantees of the Constitution, including the guarantee of equal protection. It is the policy of the New York City Police Department that care be exercised in the conduct of those investigations so as to protect constitutional rights, andincluding the right to be free from investigation in which race, religion, or ethnicity is a substantial or motivating factor. It is the policy of the New York City Police Department that matters investigated be confined to those supported by a legitimate law enforcement purpose.

## II. GENERAL PRINCIPLES

(1) In its effort to anticipate or prevent unlawful activity, including terrorist acts, the NYPD must, at times, initiate investigations in advance of unlawful conduct. It is important that such investigations not be based solely on activities protected by the First Amendment. It is also important that investigations not intrude upon rights of expression or association

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# .
DATE FILED 3/9/2107

in a manner that discriminates on the basis of race, religion or ethnicity, where such discrimination is a substantial or motivating factor for the investigation. When, however, statements advocate unlawful activity, or indicate an apparent intent to engage in unlawful conduct, particularly acts of violence, an investigation under these guidelines may be warranted, unless it is apparent, from the circumstances or the context in which the statements are made, that there is no prospect of harm.

(2) Based upon the circumstances of a given case, investigative action may be required under exigent circumstances. Exigent circumstances are circumstances requiring action before authorization otherwise necessary under these guidelines can reasonably be obtained, in order to protect life or substantial property interests; to apprehend or identify a fleeing offender; to prevent the hiding, destruction or alteration of evidence; or to avoid other serious impairment or hindrance of an investigation.

When any investigative action, taken under exigent circumstances, would require an approval under ordinary conditions, such approval shall be obtained as soon as practicable in accordance with the provisions of these guidelines. Where a regular approval or request is required to be in writing, the approval or request following exigent circumstances shall also be in writing.

(3) Investigations shall be terminated when all logical leads have been exhausted and no legitimate law enforcement purpose justifies their continuance.

## III. APPLICABILITY

These guidelines apply only to investigations which involve political activity. They do not apply to, or limit, other activities of the NYPD in the investigation or detection of unlawful conduct, the preservation of the peace and public safety or other legitimate law enforcement activities which do not involve political activity.

## IV. ROLE OF THE INTELLIGENCE ~~DIVISION~~BUREAU

(1) Investigation of political activity shall be initiated by, and conducted under the supervision of the Intelligence ~~Division~~Bureau. Nothing in this paragraph, however, is intended to prevent any member of the service from reporting his or her observations of suspicious conduct which involves political activity to his or her commanding officer or to the Intelligence ~~Division~~Bureau.

(2) The Deputy Commissioner of Intelligence shall periodically inform and advise the Police Commissioner concerning the status of any investigations conducted pursuant to these guidelines.

## V. LEVELS OF INVESTIGATION

These guidelines provide for three levels of investigative activity. They are intended to provide the NYPD with the necessary flexibility to act well in advance of the commission of planned terrorist acts or other unlawful activity. However, if the available information shows at the outset that the threshold standard for a Preliminary Inquiry or Full Investigation is satisfied, then the appropriate investigative activity may be initiated immediately, without progressing through more limited investigative stages.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107

**A. Checking of Leads**

The lowest level of investigative activity is the "prompt and extremely limited checking out of initial leads," which should be undertaken whenever information is received of such a nature that some follow-up as to the possibility of unlawful activity is warranted. This limited activity should be conducted with an eye toward promptly determining whether further investigation (either a Preliminary Inquiry or a Full Investigation) should be conducted.

> *Example: If the NYPD receives an allegation that an individual or group has advocated the commission of violence, and no other facts are available, an appropriate first step would be Checking of Leads to determine whether the individual, group, or members of the audience have the apparent ability or intent to carry out the advocated unlawful act.*

**B. Preliminary Inquiries**

(1) In cases where the NYPD receives information or an allegation not warranting ~~an~~a Full Investigation - because there is not yet a "reasonable indication" of unlawful activity - but whose responsible handling requires some further scrutiny beyond the prompt and extremely limited checking out of initial leads, the NYPD may initiate an "inquiry" in response to the allegation or information indicating the possibility of unlawful activity.  The possibility of unlawful activity to initiate a Preliminary Inquiry requires an allegation or information that is articulable and factual.  However, such allegation or information need not have been verified as true or accurate. Whether it is appropriate to open a Preliminary Inquiry immediately, or instead to engage first in a limited Checking of Leads, depends on the circumstances presented.

> *~~Example: If the NYPD receives an allegation that an individual or group has advocated the commission of violence, and no other facts are available, an appropriate first step would be Checking of Leads to determine whether the individual, group, or members of the audience have the apparent ability or intent to carry out the advocated unlawful act.~~*

(2) The authority to conduct inquiries short of a Full Investigation allows the NYPD to respond in a measured way to ambiguous or incomplete information, with as little intrusion as the needs of the situation permit. This is especially important in such areas as where there is no complainant involved or when an allegation or information is received from a source of unknown reliability. Such inquiries are subject to the limitations on duration under paragraph ~~four~~(4) below and are carried out to obtain the information necessary to make an informed judgment as to whether a Full Investigation is warranted.

> *Example: Officers are not required to possess information relating to an Individual's intended unlawful use of dangerous biological agents or toxins prior to initiating investigative activity. If an individual or group has attempted to obtain such materials, or has indicated a desire to acquire them, and the reason is not apparent, investigative action, such as conducting a Checking of Leads or initiating a Preliminary Inquiry, may be appropriate to determine whether there is a legitimate purpose for the possession of the materials by the individual or group. A Preliminary*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

*Inquiry is not a required step when facts or circumstances reasonably indicating unlawful activity are already available. In such cases, a Full Investigation can be immediately opened.*

(3) A Preliminary Inquiry may be authorized by the ~~Commanding Officer~~ Chief of Intelligence or Executive Officer of the Intelligence ~~Division~~Bureau, or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials"). The Authorizing Official must assure that the allegation or other information which warranted the inquiry has been recorded in writing. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence.

(4) Inquiries shall be completed within 180 days after initiation of the first investigative step. The date of the first investigative step is not necessarily the same date as the date on which the first incoming information or allegation was received. An extension of time in an inquiry for succeeding 90 day periods may be granted by the Deputy Commissioner of Intelligence. Any such request for extension shall be in writing and shall include a statement of the reasons why further investigative steps are warranted when there is no reasonable indication of unlawful activity. The action taken on any such request for extension shall also be recorded in writing.

(~~5~~(5)  A Preliminary Inquiry shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Preliminary Inquiry, including, what operational steps should be taken.

(6)  A Preliminary Inquiry shall be presumptively limited to a total duration of 18 months.  This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where the allegations or information continue to indicate the possibility of unlawful activity and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further.  When the presumptive period of duration is exceeded all other provisions regarding a Preliminary Inquiry continue to apply.

(7) All lawful investigative techniques, including the use of undercover operations and the development of sources and informants may be used in ~~an~~a Preliminary Inquiry except:

(a) Mail openings; and,

(b) Eavesdropping and Video Surveillance as those terms are defined in Article 700 of the New York State Criminal Procedure Law.

(~~6~~8) The following investigative techniques may be used in a Preliminary Inquiry without any prior authorization from a supervisor:

(a) Examination of NYPD indices and files;

(b) Examination of records available to the public and other public sources of information;

(c) Examination of available federal, state and local government records;

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

(d) Interview of complainant, previously established informants, and other sources of information;

(e) Interview of the potential subject;

(f) Interview of persons who should readily be able to corroborate or deny the truth of the allegation, except this does not include pretext interviews or interviews of a potential subject's employer or coworkers unless the interviewee was the complainant; and

(g) Physical, photographic or video surveillance of any person, provided that such surveillance does not require a warrant.

The use of any other lawful investigative technique that is permitted in a Preliminary Inquiry shall meet the requirements and limitations of Part ~~VI~~VII and, except in exigent circumstances, requires prior approval by a supervisor.

(~~7~~9) Where a Preliminary Inquiry fails to disclose sufficient information to justify an investigation, the NYPD shall terminate the inquiry and make a record of the closing.

(~~8~~10) All requirements regarding inquiries shall apply to reopened inquiries.

## C. Full Investigation

A Full Investigation may be initiated when facts or circumstances reasonably indicate that an unlawful act has been, is being, or will be committed. A Full Investigation may be conducted to prevent, solve or prosecute such unlawful activity.

(1) The standard of "reasonable indication" is substantially lower than probable cause. In determining whether there is reasonable indication of an unlawful act an investigator may take into account any facts or circumstances that a prudent investigator would consider. However, the standard does require specific facts or circumstances indicating a past, current, or future violation of law. There must be an objective, factual basis for initiating the investigation; a mere hunch is insufficient.

(2) Where an unlawful act may be committed in the future, preparation for that act can be a current violation of the conspiracy or attempt provisions of state law. The standard for opening an investigation is satisfied where there is not yet a current substantive or preparatory unlawful act, but facts or circumstances reasonably indicate that such unlawful conduct will occur in the future.

(3) Any lawful investigative technique may be used in a Full Investigation, subject to the requirements and limitations of Part VI hereof.

(4) Authorization and Renewal

a. A Full Investigation may be authorized by the ~~Commanding Officer~~ Chief of Intelligence or Executive Officer of the Intelligence ~~Division~~Bureau or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials") upon a written recommendation setting forth the facts or circumstances reasonably indicating that an unlawful act has been, is being or will be committed. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

b.  A Full Investigation may be initially authorized for a period of up to a year. An investigation may be continued upon renewed authorization for additional periods each not to exceed a year. Renewal authorization shall be obtained from the Deputy Commissioner of Intelligence. All requests for renewal authorization, and action thereon, shall be in writing.

c.  Authorizations shall be reviewed by an Authorizing Official before the expiration of the period for which the investigation and each renewal thereof is authorized.

d.  A Full Investigation shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Full Investigation, including, what operational steps should be taken.

e.  A Full Investigation shall be presumptively limited to a total duration of 3 years. This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where facts and circumstances continue to reasonably indicate that an unlawful act has been, is being, or will be committed and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further.  When the presumptive period of duration is exceeded all other provisions regarding a Full Investigation continue to apply.

(5) An investigation which has been terminated may be reopened upon a showing of the same standard and pursuant to the same procedures as required for initiation of an investigation. All requirements regarding investigations shall apply to reopened investigations.

## D. Terrorism Enterprise Investigation

A Terrorism Enterprise Investigation is a Full Investigation but differs from a general investigation of unlawful conduct in several important respects. As a general rule, an investigation of a completed unlawful act is normally confined to determining who committed that act and securing evidence to establish the elements of the particular offense. It is, in this respect, self-defining. A Terrorism Enterprise Investigation must determine the identity and nature of the individual, group, or organization involved, its geographic dimensions, its past acts and intended goals, including unlawful goals, and its capacity for harm, among other factors. While a standard investigation of unlawful conduct terminates with the decision to prosecute or not to prosecute, a Terrorism Enterprise Investigation does not necessarily end, even though one or more of the participants may have been prosecuted. In addition, groups and organizations provideexhibit a life and continuity of operation not normally found in other types of unlawful activity. As a consequence, these investigations may continue for several years. Furthermore, the focus of such investigations may be less precise than that directed against more conventional types of unlawful conduct. Unlike the usual case involving unlawful conduct, there may be no completed offense to provide a framework for the investigation. It A Terrorism Enterprise Investigation often requires the fitting together of bits and pieces of information, many meaningless by themselves, to determine whether a pattern of unlawful activity exists. For this reason, such investigations are broader and

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

less discriminate than usual, involving the interrelation of various sources and types of information. This section focuses on investigations of enterprises that seek to further political or social goals through activities that involve force or violence, or that otherwise aim to engage in terrorism or terrorism-related crimes. It authorizes investigations to determine the structure and scope of the enterprise as well as the relationship of the members.

### 1. General Authority

a. A Terrorism Enterprise Investigation may be initiated when facts or circumstances reasonably indicate that two or more persons are engaged in an enterprise for the purpose of:

    (i)   furthering political or social goals wholly or in part through activities that involve force, violence or other unlawful acts;

    (ii)   engaging in terrorism as defined in N.Y. Penal Law § 490.05, or

    (iii)   committing any offense described in N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, or 490.35, or other related statutes currently in effect or subsequently enacted.

The standard of "reasonable indication" is identical to that governing Full Investigations generally. In determining whether an investigation should be conducted, the NYPD shall consider all of the circumstances including:

    (i)   the magnitude of the threatened harm;

    (ii)   the likelihood that it will occur;

    (iii)   the immediacy of the threat; and

    (iv)   any danger to privacy or free expression posed by an investigation.

In practical terms, the "reasonable indication" standard for opening a Terrorism Enterprise Investigation could be satisfied in a number of ways.

*Example: Direct information about statements made in furtherance of an enterprise's objectives which show a purpose of committing crimes described in N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35 or other related statutes currently in effect or subsequently enacted, would satisfy the threshold.*

*Example: Activities such as attempting to obtain dangerous biological agents, toxic chemicals, or nuclear materials, or stockpiling explosives or weapons, with no discernible lawful purpose, may be sufficient to reasonably indicate that an enterprise aims to engage in terrorism.*

b. While no particular factor or combination of factors is required, considerations that will generally be relevant to the determination as to whether the threshold standard for a Terrorism Enterprise Investigation is satisfied include, as noted, a group's statements, its activities, and the nature of potential unlawful acts suggested by the statements or activities. Thus, where there are grounds for inquiry concerning a group, it may be helpful to gather information about these

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

matters, and then to consider whether these factors, either individually or in combination, reasonably indicate that the group is pursuing terrorist activities or objectives as defined in the threshold standard. Findings that would weigh in favor of such a conclusion include, for example, the following:

(1) Threats or advocacy of violence or other covered unlawful acts. Statements are made in relation to or in furtherance of an enterprise's political or social objectives that threaten or advocate the use of force or violence, or statements are made in furtherance of an enterprise that otherwise threaten or advocate unlawful conduct within the scope of N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35, or other related statutes currently in effect or subsequently enacted which may concern such matters as (e.g.):, for example:

   (i) engaging in attacks involving or threatening massive loss of life or injury, mass destruction, or endangerment of the national security;

   (ii) killing or injuring public officials, or destroying public facilities, or defying lawful authority;

   (iii) killing, injuring or intimidating individuals because of their status as United States nationals or persons, or because of their national origin, race, color, religion or sex; or

   (iv) depriving individuals of any rights secured by the Constitution or laws of the United States or the State of New York.

(2) Apparent ability or intent to carry out violence or other covered activities. The enterprise manifests an apparent ability or intent to carry out violence or other activities within the scope of N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35 or other related statutes currently in effect or subsequently enacted, e.g.:for example:

   (i) by acquiring or taking steps towards acquiring, biological agents or toxins, toxic chemicals or their precursors, radiological or nuclear materials, explosives or other destructive or dangerous material (or plans or formulas for such materials), or weapons, under circumstances where, by reason of the quantity or character of the items, the lawful purpose of the acquisition is not apparent;

   (ii) by the creation, maintenance, or support of an armed paramilitary organization;

   (iii) by paramilitary training; or

   (iv) by other conduct demonstrating an apparent ability or intent to injure or intimidate individuals, or to interfere with the exercise of their constitutional or statutory rights.

(3) Potential Unlawful Act. The group's statements or activities suggest potential unlawful acts that may be relevant in applying the standard for initiating a Terrorism Enterprise Investigation - such as crimes under the provisions of the N.Y. Penal Law that set forth specially defined terrorism or support of terrorism offenses, or that relate to such matters as aircraft hijacking or

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

destruction, attacks on transportation, communications, or energy facilities or systems, biological or chemical weapons, nuclear or radiological materials, assassinations or other violence against public officials or facilities, or explosives.

c. Mere speculation that force or violence might occur during the course of an otherwise peaceable demonstration is not sufficient grounds for initiation of an investigation under this subpart. But where facts or circumstances reasonably indicate that an individual or group has engaged or aims to engage in conduct described in paragraph 1.a. above in a demonstration, an investigation may be initiated in conformity with the standards of that paragraph. This does not limit the collection of information about public demonstrations by individuals or groups that are under active investigation pursuant to paragraph 1.a. above or any other provisions of these guidelines.

## 2. Purpose

The immediate purpose of a Terrorism Enterprise Investigation is to obtain information concerning the nature and structure of the enterprise as specifically delineated in paragraph (3) below, with a view to the longer range objectives of detection, prevention, and prosecution of the unlawful activities of the enterprise.

## 3. Scope

a. A Terrorism Enterprise Investigation initiated under these guidelines may collect such information as:

(i) the identity and nature of an individual or group and its members, their associates, and other persons likely to be acting in furtherance of its unlawful objectives, provided that the information concerns such persons' activities on behalf of or in furtherance of the suspected unlawful activity of the individual, group, or organization;

(ii) the finances of the individual, group, or organization;

(iii) the geographical dimensions of the individual, group, or organization; and

(iv) past and future activities and goals of the individual, group, or organization.

b. In obtaining the foregoing information, any lawful investigative technique may be used in accordance with the requirements of these guidelines.

## 4. Authorization and Renewal

a. A Terrorism Enterprise Investigation may be authorized by the ~~Commanding Officer~~ Chief of Intelligence or Executive Officer of the Intelligence ~~Division~~Bureau or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials"), upon a written recommendation setting forth the facts or circumstances reasonably indicating the existence of an enterprise as described in paragraph 1.a. above. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence. When exigent circumstances exist, as described in these

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

guidelines, a Terrorism Enterprise Investigation may be commenced upon the verbal authorization of an Authorizing Official. However, in such cases, the required written recommendation must be submitted as soon as practicable.

b.  A Terrorism Enterprise Investigation may be initially authorized for a period of up to a year. An investigation may be continued upon renewed authorization for additional periods each not to exceed a year. Renewal authorization shall be obtained from the Deputy Commissioner of Intelligence. The request for renewal and action thereon shall be in writing.

c.  Authorizations shall be reviewed by an Authorizing Official before the expiration of the period for which the investigation and each renewal thereof is authorized. In some cases, the enterprise may meet the threshold standard but be temporarily inactive in the sense that it has not engaged in recent acts of violence or other unlawful activities as described in 1.a., nor is there any immediate threat of harm - yet the composition, goals and prior history of the group suggest the need for continuing law enforcement interest. The investigation may be continued in such cases with whatever scope is warranted in light of these considerations.

d. d.   All Terrorism Enterprise Investigations shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Terrorism Enterprise Investigation, including, what operational steps should be taken.

e.  A Terrorism Enterprise Investigation shall be presumptively limited to a total duration of 5 years, except where the subject of a Terrorism Enterprise Investigation is a designated foreign terrorist organization.  This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where facts and circumstances continue to reasonably indicate that two or more persons are engaged in an enterprise for the purposes stated above and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further.  When the presumptive period of duration is exceeded all other provisions regarding a Terrorism Enterprise Investigation continue to apply.

f.  An investigation which has been terminated may be reopened upon a showing of the same standard and pursuant to the same procedures as required for initiation of an investigation.

**VI.     INVESTIGATIVE TECHNIQUESVI.     HANDSCHU COMMITTEE**

(1) There is hereby established a committee (the "Handschu Committee") whose members are expected and authorized to attend and participate in monthly meetings at which investigations are presented for opening, extension or closure by the Deputy Commissioner for Intelligence. For each monthly meeting, all attending members will be provided with the investigative statement pertaining to each proposed opening, extension or closing and any corresponding

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

requests to use or extend the use of undercover officers or confidential informants. At the monthly meeting, any member of the Handschu Committee may ask questions and offer opinions regarding the opening, extension or closure of an investigation presented.

(2) Any member of the Handschu Committee may further inquire into the status and conduct of any investigation presented at the meeting, including the use of undercover operations pursuant to section VII herein, provided however that information pertaining to the identity of participants in undercover operations, including confidential informants, shall not be disclosed. A member of the Intelligence Bureau with detailed knowledge of operational steps taken in each investigation presented shall be present at the meeting to help address any questions that arise.

(3) Members of the Handschu Committee from the NYPD will include the Deputy Commissioner of Intelligence, the Chief of Intelligence, the Executive Officer of the Intelligence Bureau, the Commanding Officer of IOAS (Intelligence Operations and Analysis Section), the Executive Officer of IOAS, the Commanding Officer (or the Executive Officer) of the Criminal Intelligence Section, the Assistant Commissioner for Intelligence Analysis, the Deputy Commissioner of Legal Matters, Assistant Deputy Commissioner of Legal Matters, Special Counsel for Intelligence Affairs, and/or their successors or persons who occupy similar positions of authority or expertise.

(4) The Special Counsel for Intelligence Affairs shall lead a quarterly discussion for the Handschu Committee related to the NYPD's compliance during that period in (i) obtaining timely approval in extending or closing investigations, (ii) obtaining timely approval of human source authorizations, and (iii) conducting reviews of Preliminary Inquiries, Full Investigations, and Terrorism Enterprise Investigations every 6 months, as provided in sections V(B)(5), V(C)(4)(d) and V(D)(4)(d) hereof. As part of this quarterly discussion, any member of the Handschu Committee may raise concerns regarding any other aspect of compliance with the Handschu Guidelines. The substance of these quarterly discussions shall be recorded in the minutes of the Handschu Committee meeting.

(5) There shall also be a Civilian Representative on the Handschu Committee who shall, unless unable to do so for good cause, attend and participate in all of the monthly meetings for opening, extension, or closure of investigations and in all of the quarterly discussions led by the Special Counsel for Intelligence Affairs on the same terms and conditions as set forth in paragraphs (1), (2) and (4) above. The Civilian Representative shall be a lawyer who has never previously been an employee of the NYPD. The Civilian Representative shall be appointed by the Mayor upon consultation with the Police Commissioner. The Civilian Representative may be replaced by the Mayor for good cause, with 14 days' advance notice to Class Counsel prior to such replacement. In the event that the Civilian Representative resigns, the Mayor in consultation with the Police Commissioner will appoint a replacement. The position of Civilian Representative will exist for a minimum of five years from the appointment of the first person to fill that role. After that initial five year period, the position of Civilian Representative will continue unless the Mayor applies to the Court for an amendment to the Revised Handschu Guidelines abolishing the position, upon 30 days' advance notice to Class Counsel prior to such application. The amendment to the Revised Handschu Guidelines abolishing the position shall be granted by the Court if the Court finds there have not been systematic and repeated violations of the Guidelines

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

to a degree sufficient to show an NYPD policy to act in such a fashion for a period of three years immediately prior to the application, as shown in the reports submitted to the Court by the Civilian Representative.

(a) The Civilian Representative shall submit to a background investigation conducted by the Department of Investigation.

(b) The NYPD will facilitate an application for a federal security clearance for the Civilian Representative.

(c) The Civilian Representative shall execute a Non-Disclosure Agreement with the NYPD setting forth his or her undertaking that the proceedings of the Handschu Committee, as well as all materials reviewed by the Civilian Representative for or at the meetings of the Committee, shall be kept confidential and shall not be disclosed to any person except as set forth therein.

(d) The Civilian Representative shall be required to familiarize himself or herself with the Revised Handschu Guidelines governing the investigation of political activity by the NYPD.

(e) If the Civilian Representative concludes that an investigation is being opened, extended, or conducted in violation of the Revised Handschu Guidelines, or that the NYPD is otherwise violating the Revised Handschu Guidelines, the Civilian Representative shall record his or her concerns regarding the purported violation and/or his or her objection to the investigation and the grounds for the objection in the minutes of the Handschu Committee meeting.

(f) If the Civilian Representative concludes that an investigation is being opened, extended, or conducted in violation of the Revised Handschu Guidelines, the Civilian Representative shall bring such investigation to the attention of the Police Commissioner. The Civilian Representative shall be provided with means to present his or her conclusion to the Police Commissioner directly (hereafter, "a VI(5)(f) communication"). The Police Commissioner shall inquire into the investigation and report the findings of the inquiry to the Civilian Representative within seven (7) days after receipt of the VI(5)(f) communication.

(g) If the Civilian Representative has concerns about the NYPD's compliance with the Revised Handschu Guidelines, and the Police Commissioner has not provided a timely response to the Civilian Representative's VI(5)(f) communication regarding such concerns, or the Civilian Representative is not satisfied with the Police Commissioner's response, the Civilian Representative may communicate those concerns to the Judge assigned to the Handschu case in the Southern District of New York at any time. In the event the Civilian Representative decides to communicate such concerns to the Court, a copy of the communication shall first be served confidentially upon the Police Commissioner, the Deputy Commissioner of Intelligence, and the Deputy Commissioner of Legal Matters seven (7) days prior to its submission to the Court. The Civilian

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

Representative shall retain final authority over and responsibility for the content of the communication.  Submission to the Court shall be effectuated in compliance with Section VI(5)(k) below.

(h) After complying with provision VI(5)(f) hereof, if the Civilian Representative concludes at any time that the NYPD is systematically and repeatedly violating the Revised Handschu Guidelines to a degree sufficient to show a NYPD policy to act in such a fashion, the Civilian Representative shall report the alleged systematic violation to the Judge assigned to the Handschu case in the Southern District of New York.  In the event the Civilian Representative decides to communicate such concerns to the Court, a copy of the communication shall first be served confidentially upon the Police Commissioner, the Deputy Commissioner of Intelligence, and the Deputy Commissioner of Legal Matters seven (7) days prior to its submission to the Court, provided that the Civilian Representative shall retain final authority over and responsibility for the content of the communication.  Submission to the Court shall be effectuated in compliance with Section VI(5)(k) below.

(i) In addition, the Civilian Representative shall file an annual report with the Court related to his or her actions and observations as a member of the Handschu Committee.  The annual report will (A) indicate whether the Civilian Representative has objected to any investigations over that period and the basis for that objection; (B) state whether the NYPD has (i) substantially obtained timely approval for extending and closing investigations, (ii) substantially obtained timely approval for the use of human sources, and (iii) substantially fulfilled its obligation to review Preliminary Inquiries, Full Investigations, and Terrorism Enterprise Investigations every 6 months, as provided in sections V(B)(5), V(C)(4)(d) and V(D)(4)(d) hereof; and (C) address any communication during the annual period by the Civilian Representative to the Court under VI(5)(g) or (h).  Prior to submission of the annual report to the Court, the Civilian Representative shall first serve copies confidentially to the Police Commissioner, Deputy Commissioner of Intelligence, and Deputy Commissioner of Legal Matters 21 days prior to submission to the Court, provided that the Civilian Representative shall retain final authority over and responsibility for the content of the report.

(j) The report and communications permitted under VI(5)(g), (h) and (i) will not include the number of investigations reviewed over the term, information deemed classified by the federal government, information obtained from other law enforcement or government agencies, information that reveals the identity of an individual or organization, information subject to the law enforcement privilege or other applicable privileges, or information that is otherwise protected by state or federal law.

(k)  At the time that the Civilian Representative submits a communication or report to the Court pursuant to VI(5)(g), (h) or (i), notice of the Court's receipt of a communication or report from the Civilian Representative shall be entered on the Court's docket.  The content of the communication or report to the Court shall, in the first instance, be maintained by the Court confidentially and under seal.  The NYPD shall have 21 days from the filing of the communication or report to notify the Court (i) whether it contains

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

privileged information or information that is prohibited from disclosure as set forth in VI(5)(j); (ii) if it believes such information can be protected through redaction of the document; or (iii) if it asserts the need to maintain the entire document confidentially and under seal.  The Court shall adjudicate the propriety and scope of any such invocation.  If the NYPD does not assert any such concerns about the information contained in the document, or if the Court determines that the document should be made public without redactions despite such objections by the NYPD, a copy of the report or communication shall be filed in the public docket and served on class counsel.  If the Court determines that redactions can cure the need for the sealing of the entire document, a copy of the report or communication with the redactions shall be filed in the public docket and served on Class Counsel while the original submission by the Civilian Representative shall be maintained under seal.  If the Court determines that the communication or report contains privileged information or information that is prohibited from disclosure as set forth in VI(5)(j) and that redaction cannot cure the need for the sealing of the entire document, the communication or report shall be maintained under seal and there shall be an entry on the Court's docket that the communication or report is being maintained under seal.

(6) Nothing herein shall effect, limit, or diminish the authorization and approval provisions for investigations, which grant exclusive approval authority to the Authorizing Officials or the Deputy Commissioner of Intelligence.

## VII. INVESTIGATIVE TECHNIQUES

(1) When conducting investigations under these guidelines, the NYPD may use any lawful investigative technique permitted by these guidelines. The choice of investigative techniques is a matter of judgment, which should take account of:

(i)  the objectives of the investigation and available investigative resources;

(ii) the intrusiveness of a technique, considering such factors as the effect on the privacy of individuals and potential damage to reputation;

(iii) the potential effect on the political or religious activity of individuals, groups or organizations and the potential effect on persons who, although not a target of the investigation are affected by or subject to the technique;

(iv)  the seriousness of the unlawful act; and

(iv v) the strength of the information indicating its existence or future commission of the unlawful act.

(2) Where the conduct of an investigation presents a choice between the use of more or less intrusive methods, the NYPD should consider whether the information could be obtained in a timely and effective way by the less intrusive means. The NYPD should not hesitate to use any lawful techniques consistent with these guidelines in an investigation, even if intrusive, where the intrusiveness is warranted in light of the seriousness of the crime or the strength of the information indicating its existence or future commission. This point is to be particularly observed in investigations relating to terrorist activities.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

(3)  Authorized methods in investigations include, among others, use of confidential informants, undercover activities and operations, eavesdropping and video surveillance (as defined in Article 700 of the NY Criminal Procedure Law), pen registers and trap and trace devices, consensual electronic monitoring, and searches and seizures.

a. Undercover Operations

(i)  Undercover operations, including confidential informants, may be used when such operations are the most effective means of obtaining information, taking into account all the circumstances of the investigation, including the need for the information and the seriousness of the threat, it has been determined that the information sought in the investigation could not be reasonably obtained in a timely and effective way by a less intrusive means. The use of undercovers and confidential informants must be authorized by the Deputy Commissioner of the Intelligence Division priorpriorBureau prior to commencement of the undercover operation. The request to use undercovers or confidential informants and action taken on the request must be in writing and must include a description of the facts on which the investigation is based and the role of the undercover.

(ii)  The use of an undercover or confidential informant will be approved for a period of 12090 days and may be extended for additional periods of 12090 days with the approval of the Deputy Commissioner of the Intelligence DivisionBureau. Such extensions may be approved for as long as the investigation continues when it has been determined that the use ofinformation sought in the undercover is the mostinvestigation could not reasonably be obtained in a timely and effective manner by less intrusive means of obtaining information. The request to extend the use of undercovers and action taken on the request must be in writing and must include the reason for the extension.

(iii) Undercovers are strictly prohibited from engaging in any conduct the sole purpose of which is to disrupt the lawful exercise of political activity, from instigating unlawful acts or engaging in unlawful or unauthorized investigative activities.

b. Eavesdropping and Video Surveillance (as defined in Article 700 of the NY Criminal Procedure Law), Pen Registers and Trap and Trace Devices, and Consensual Electronic Monitoring

(i)  All requirements for the use of such methods under the Constitution, applicable statutes, and NYPD regulations or policies must be observed.

(4)  Whenever an individual is known to be represented by counsel in a particular matter, the NYPD shall follow applicable law and Department procedure concerning contact with represented individuals in the absence of prior notice to their counsel.

VII

## VIII. DISSEMINATION AND MAINTENANCE OF INFORMATION

A. Dissemination

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

The NYPD may disseminate information obtained during the Checking of Leads, Preliminary Inquiries and investigations conducted pursuant to these guidelines to federal, state or local law enforcement agencies, or local criminal justice agencies when such information:

    (i)   falls within the investigative or protective jurisdiction or litigative responsibility of the agency;

    (ii)   may assist in preventing an unlawful act or the use of violence or any other conduct dangerous to human life;

    (iii)  is required to be disseminated by interagency agreement, statute, or other law.

B. Maintenance

All documentation required under these Guidelines shall be maintained by the Intelligence ~~Division~~Bureau in accordance with general police department practice and applicable municipal record retention and destruction rules, regulations and procedures. Under these rules and practices documents are retained for no less than five years.

## ~~VIII~~IX. COUNTERTERRORISM ACTIVITIES AND OTHER AUTHORIZATIONS

In order to carry out its mission of preventing the commission of terrorist acts in or affecting the City of New York and the United States and its people, the NYPD must proactively draw on available sources of information to identify terrorist threats and activities. It cannot be content to wait for leads to come in through the actions of others, but rather must be vigilant in detecting terrorist activities to the full extent permitted by law, with an eye towards early intervention and prevention of acts of terrorism before they occur. This Part accordingly identifies a number of authorized activities which further this end, and which can be carried out even in the absence of a checking of leads, Preliminary Inquiry, or Full Investigation as described in these guidelines. The authorizations include both activities that are specifically focused on terrorism and activities that are useful for law enforcement purposes in both terrorism and ~~nonterrorism~~non-terrorism contexts. The authorized law enforcement activities of the NYPD include carrying out and retaining information resulting from the following activities.

## A. COUNTERTERRORISM ACTIVITIES

1. Information Systems

The NYPD is authorized to operate and participate in identification, tracking, and information systems for the purpose of identifying and locating potential terrorists and supporters of terrorist activity, assessing and responding to terrorist risks and threats, or otherwise detecting, prosecuting, or preventing terrorist activities. Systems within the scope of this paragraph may draw on and retain pertinent information from any source permitted by law, including information derived from past or ongoing investigative activities; other information collected or provided by governmental entities, such as foreign intelligence information and lookout list information; publicly available information, whether obtained directly or through services or resources (whether nonprofit or commercial) that compile or analyze such information; and information voluntarily provided by private entities. Any such system operated by the

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# ...
DATE FILED 3/9/2107

NYPD shall be reviewed periodically for compliance with all applicable statutory provisions and Department regulations and policies.

2. Visiting Public Places and Events

For the purpose of detecting or preventing terrorist activities, the NYPD is authorized to visit any place and attend any event that is open to the public, on the same terms and conditions as members of the public generally. No information obtained from such visits shall be retained unless it relates to potential unlawful or terrorist activity.

## B. OTHER AUTHORIZATIONS

1. General Topical Research

The NYPD is authorized to carry out general topical research, including conducting online searches and accessing online sites and forums as part of such research on the same terms and conditions as members of the public generally. "General topical research" under this paragraph means research concerning subject areas that are relevant for the purpose of facilitating or supporting the discharge of investigative responsibilities. It does not include online searches for information by individuals' names or other individual identifiers, except where such searches are incidental to topical research, such as searching to locate writings on a topic by searching under the names of authors who write on the topic, or searching by the name of a party to a case in conducting legal research.

2. Use of Online Resources Generally

For the purpose of developing intelligence information to detect or prevent terrorism or other unlawful activities, the NYPD is authorized to conduct online search activity and to access online sites and forums on the same terms and conditions as members of the public generally.

3. Reports and Assessments

The NYPD is authorized to prepare general reports and assessments concerning terrorism or other unlawful activities for purposes of strategic or operational planning or in support of other legitimate law enforcement activities.

## IXX. PROTECTION OF PRIVACY AND OTHER LIMITATIONS

A. General Limitations

The law enforcement activities authorized by this Part do not include maintaining files on individuals solely for the purpose of monitoring activities protected by the First Amendment or the lawful exercise of any other rights secured by the Constitution or laws of the United States. Rather, all such law enforcement activities must have a valid law enforcement purpose and must be carried out in conformity with all applicable statutes and Department regulations and policies.

B. Construction of Part

This Part does not limit any activities authorized by or carried out under other Parts of these guidelines. The specification of authorized law enforcement activities under this

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

Part is not exhaustive, and does not limit other authorized law enforcement activities of the NYPD.

## XXI. RESERVATION

Nothing in these guidelines shall limit the general reviews or audits of papers, files, contracts, or other records in the possession of the NYPD or City of New York, or the performance of similar services at the specific request of another government agency. Such reviews, audits, or similar services must be for the purpose of detecting or preventing violations of law which are within the investigative responsibility of the NYPD.

Nothing in these guidelines is intended to limit the NYPD's responsibilities to investigate certain applicants and employees, or to pursue efforts to satisfy any other of its legal rights, privileges, or obligations. These guidelines are set forth solely for the purpose of internal NYPD guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural; enforceable at law by any party in any matter, civil or criminal, nor do they place any limitation on otherwise lawful investigative and litigative prerogatives of the NYPD or City of New York.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

# TAB C

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

# GUIDELINES FOR INVESTIGATIONS INVOLVING POLITICAL ACTIVITY

**PREAMBLE**

Subsequent to the terrorist attacks on the City of New York on September 11, 2001 which resulted in the loss of thousands of lives and the total destruction of the World Trade Center complex, it became apparent that the City faces unprecedented threats to its continued safety and security. In the view of federal, state and local law enforcement agencies, the prevention of future attacks requires the development of intelligence and the investigation of potential terrorist activity before an unlawful act occurs.

As a result of a federal court order entered in 1985, the New York City Police Department was bound by guidelines, known as the Handschu Guidelines, which governed the investigation of political activity. The Handschu Guidelines (i) limited the investigation of political activity to those circumstances when there was specific information of criminal activity and (ii) established the Handschu Authority to oversee compliance. After evaluating the impact of the Handschu Guidelines on the need to investigate terrorism in a changed world, the City made an application to modify the order so as to eliminate the restrictions contained in the Handschu Guidelines and the oversight of the Handschu Authority with respect to those restrictions. The City did not seek to eliminate the Handschu Authority's role to investigate an individual's complaint that the NYPD had engaged in unconstitutional conduct in the investigation of political activity.

The Court granted the City's application to modify the decree provided the City adopt the internal guidelines set forth below and distribute the guidelines to supervisory personnel who, in turn, were to make them known to those under their command. These guidelines were subsequently incorporated into an order of the Court in 288 F.Supp.2d 411, 420 (S.D.N.Y. 2003) and are enforceable as set out in 679 F.Supp.2d 488, 497 (S.D.N.Y. 2010). They shall remain in effect unless otherwise ordered by the Court. These guidelines are binding on all members of the service who are engaged in the investigation of political activity. It is the purpose of these guidelines to enable officers to perform their duties with greater certainty, confidence and effectiveness while at the same time protecting the guarantees of the Constitution.

## I.  STATEMENT OF POLICY

It is the policy of the New York City Police Department that investigations involving political activity conform to the guarantees of the Constitution, including the guarantee of equal protection. It is the policy of the New York City Police Department that care be exercised in the conduct of those investigations so as to protect constitutional rights, including the right to be free from investigation in which race, religion, or ethnicity is a substantial or motivating factor. It is the policy of the New York City Police Department that matters investigated be confined to those supported by a legitimate law enforcement purpose.

## II. GENERAL PRINCIPLES

(1) In its effort to anticipate or prevent unlawful activity, including terrorist acts, the NYPD must, at times, initiate investigations in advance of unlawful conduct. It is important that such investigations not be based solely on activities protected by the First Amendment. It is also important that investigations not intrude upon rights of expression or association in a manner that discriminates on the basis of race, religion or ethnicity, where such

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

discrimination is a substantial or motivating factor for the investigation. When, however, statements advocate unlawful activity, or indicate an apparent intent to engage in unlawful conduct, particularly acts of violence, an investigation under these guidelines may be warranted, unless it is apparent, from the circumstances or the context in which the statements are made, that there is no prospect of harm.

(2) Based upon the circumstances of a given case, investigative action may be required under exigent circumstances. Exigent circumstances are circumstances requiring action before authorization otherwise necessary under these guidelines can reasonably be obtained, in order to protect life or substantial property interests; to apprehend or identify a fleeing offender; to prevent the hiding, destruction or alteration of evidence; or to avoid other serious impairment or hindrance of an investigation.

When any investigative action, taken under exigent circumstances, would require an approval under ordinary conditions, such approval shall be obtained as soon as practicable in accordance with the provisions of these guidelines. Where a regular approval or request is required to be in writing, the approval or request following exigent circumstances shall also be in writing.

(3) Investigations shall be terminated when all logical leads have been exhausted and no legitimate law enforcement purpose justifies their continuance.

## III. APPLICABILITY

These guidelines apply only to investigations which involve political activity. They do not apply to, or limit, other activities of the NYPD in the investigation or detection of unlawful conduct, the preservation of the peace and public safety or other legitimate law enforcement activities which do not involve political activity.

## IV. ROLE OF THE INTELLIGENCE BUREAU

(1) Investigation of political activity shall be initiated by, and conducted under the supervision of the Intelligence Bureau. Nothing in this paragraph, however, is intended to prevent any member of the service from reporting his or her observations of suspicious conduct which involves political activity to his or her commanding officer or to the Intelligence Bureau.

(2) The Deputy Commissioner of Intelligence shall periodically inform and advise the Police Commissioner concerning the status of any investigations conducted pursuant to these guidelines.

## V. LEVELS OF INVESTIGATION

These guidelines provide for three levels of investigative activity. They are intended to provide the NYPD with the necessary flexibility to act well in advance of the commission of planned terrorist acts or other unlawful activity. However, if the available information shows at the outset that the threshold standard for a Preliminary Inquiry or Full Investigation is satisfied, then the appropriate investigative activity may be initiated immediately, without progressing through more limited investigative stages.

### A. Checking of Leads

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# ..
DATE FILED 3/9/2107

The lowest level of investigative activity is the "prompt and extremely limited checking out of initial leads," which should be undertaken whenever information is received of such a nature that some follow-up as to the possibility of unlawful activity is warranted. This limited activity should be conducted with an eye toward promptly determining whether further investigation (either a Preliminary Inquiry or a Full Investigation) should be conducted.

*Example: If the NYPD receives an allegation that an individual or group has advocated the commission of violence, and no other facts are available, an appropriate first step would be Checking of Leads to determine whether the individual, group, or members of the audience have the apparent ability or intent to carry out the advocated unlawful act.*

## B. Preliminary Inquiries

(1) In cases where the NYPD receives information or an allegation not warranting a Full Investigation - because there is not yet a "reasonable indication" of unlawful activity - but whose responsible handling requires some further scrutiny beyond the prompt and extremely limited checking out of initial leads, the NYPD may initiate an "inquiry" in response to the allegation or information indicating the possibility of unlawful activity. The possibility of unlawful activity to initiate a Preliminary Inquiry requires an allegation or information that is articulable and factual. However, such allegation or information need not have been verified as true or accurate. Whether it is appropriate to open a Preliminary Inquiry immediately, or instead to engage first in a limited Checking of Leads, depends on the circumstances presented.

(2) The authority to conduct inquiries short of a Full Investigation allows the NYPD to respond in a measured way to ambiguous or incomplete information, with as little intrusion as the needs of the situation permit. This is especially important in such areas as where there is no complainant involved or when an allegation or information is received from a source of unknown reliability. Such inquiries are subject to the limitations on duration under paragraph (4) below and are carried out to obtain the information necessary to make an informed judgment as to whether a Full Investigation is warranted.

*Example: Officers are not required to possess information relating to an Individual's intended unlawful use of dangerous biological agents or toxins prior to initiating investigative activity. If an individual or group has attempted to obtain such materials, or has indicated a desire to acquire them, and the reason is not apparent, investigative action, such as conducting a Checking of Leads or initiating a Preliminary Inquiry, may be appropriate to determine whether there is a legitimate purpose for the possession of the materials by the individual or group. A Preliminary Inquiry is not a required step when facts or circumstances reasonably indicating unlawful activity are already available. In such cases, a Full Investigation can be immediately opened.*

(3) A Preliminary Inquiry may be authorized by the Chief of Intelligence or Executive Officer of the Intelligence Bureau, or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials"). The Authorizing Official must

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

assure that the allegation or other information which warranted the inquiry has been recorded in writing. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence.

(4) Inquiries shall be completed within 180 days after initiation of the first investigative step. The date of the first investigative step is not necessarily the same date as the date on which the first incoming information or allegation was received. An extension of time in an inquiry for succeeding 90 day periods may be granted by the Deputy Commissioner of Intelligence. Any such request for extension shall be in writing and shall include a statement of the reasons why further investigative steps are warranted when there is no reasonable indication of unlawful activity. The action taken on any such request for extension shall also be recorded in writing.

(5) A Preliminary Inquiry shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Preliminary Inquiry, including, what operational steps should be taken.

(6) A Preliminary Inquiry shall be presumptively limited to a total duration of 18 months. This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where the allegations or information continue to indicate the possibility of unlawful activity and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further. When the presumptive period of duration is exceeded all other provisions regarding a Preliminary Inquiry continue to apply.

(7) All lawful investigative techniques, including the use of undercover operations and the development of sources and informants may be used in a Preliminary Inquiry except:

(a) Mail openings; and,

(b) Eavesdropping and Video Surveillance as those terms are defined in Article 700 of the New York State Criminal Procedure Law.

(8) The following investigative techniques may be used in a Preliminary Inquiry without any prior authorization from a supervisor:

(a) Examination of NYPD indices and files;

(b) Examination of records available to the public and other public sources of information;

(c) Examination of available federal, state and local government records;

(d) Interview of complainant, previously established informants, and other sources of information;

(e) Interview of the potential subject;

(f) Interview of persons who should readily be able to corroborate or deny the truth of the allegation, except this does not include pretext interviews or interviews of a

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED 3/9/2107_____

potential subject's employer or coworkers unless the interviewer was the complainant; and

(g) Physical, photographic or video surveillance of any person, provided that such surveillance does not require a warrant.

The use of any other lawful investigative technique that is permitted in a Preliminary Inquiry shall meet the requirements and limitations of Part VII and, except in exigent circumstances, requires prior approval by a supervisor.

(9) Where a Preliminary Inquiry fails to disclose sufficient information to justify an investigation, the NYPD shall terminate the inquiry and make a record of the closing.

(10) All requirements regarding inquiries shall apply to reopened inquiries.

## C. Full Investigation

A Full Investigation may be initiated when facts or circumstances reasonably indicate that an unlawful act has been, is being, or will be committed. A Full Investigation may be conducted to prevent, solve or prosecute such unlawful activity.

(1) The standard of "reasonable indication" is substantially lower than probable cause. In determining whether there is reasonable indication of an unlawful act an investigator may take into account any facts or circumstances that a prudent investigator would consider. However, the standard does require specific facts or circumstances indicating a past, current, or future violation of law. There must be an objective, factual basis for initiating the investigation; a mere hunch is insufficient.

(2) Where an unlawful act may be committed in the future, preparation for that act can be a current violation of the conspiracy or attempt provisions of state law. The standard for opening an investigation is satisfied where there is not yet a current substantive or preparatory unlawful act, but facts or circumstances reasonably indicate that such unlawful conduct will occur in the future.

(3) Any lawful investigative technique may be used in a Full Investigation, subject to the requirements and limitations of Part VI hereof.

(4) Authorization and Renewal

a. A Full Investigation may be authorized by the Chief of Intelligence or Executive Officer of the Intelligence Bureau or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials") upon a written recommendation setting forth the facts or circumstances reasonably indicating that an unlawful act has been, is being or will be committed. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence.

b. A Full Investigation may be initially authorized for a period of up to a year. An investigation may be continued upon renewed authorization for additional periods each not to exceed a year. Renewal authorization shall be obtained from the Deputy Commissioner of Intelligence. All requests for renewal authorization, and action thereon, shall be in writing.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

c.  Authorizations shall be reviewed by an Authorizing Official before the expiration of the period for which the investigation and each renewal thereof is authorized.

d.  A Full Investigation shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Full Investigation, including, what operational steps should be taken.

e.  A Full Investigation shall be presumptively limited to a total duration of 3 years. This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where facts and circumstances continue to reasonably indicate that an unlawful act has been, is being, or will be committed and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further.  When the presumptive period of duration is exceeded all other provisions regarding a Full Investigation continue to apply.

(5) An investigation which has been terminated may be reopened upon a showing of the same standard and pursuant to the same procedures as required for initiation of an investigation.  All requirements regarding investigations shall apply to reopened investigations.

## D.  Terrorism Enterprise Investigation

A Terrorism Enterprise Investigation is a Full Investigation but differs from a general investigation of unlawful conduct in several important respects. As a general rule, an investigation of a completed unlawful act is normally confined to determining who committed that act and securing evidence to establish the elements of the particular offense. It is, in this respect, self-defining. A Terrorism Enterprise Investigation must determine the identity and nature of the individual, group, or organization involved, its geographic dimensions, its past acts and intended goals, including unlawful goals, and its capacity for harm, among other factors. While a standard investigation of unlawful conduct terminates with the decision to prosecute or not to prosecute, a Terrorism Enterprise Investigation does not necessarily end, even though one or more of the participants may have been prosecuted. In addition, groups and organizations exhibit a life and continuity of operation not normally found in other types of unlawful activity. As a consequence, these investigations may continue for several years. Furthermore, the focus of such investigations may be less precise than that directed against more conventional types of unlawful conduct. Unlike the usual case involving unlawful conduct, there may be no completed offense to provide a framework for the investigation. A Terrorism Enterprise Investigation often requires the fitting together of bits and pieces of information, many meaningless by themselves, to determine whether a pattern of unlawful activity exists. For this reason, such investigations are broader and less discriminate than usual, involving the interrelation of various sources and types of information. This section focuses on investigations of enterprises that seek to further political or social goals through activities that involve force or violence, or that otherwise aim to engage in terrorism or terrorism-related crimes. It authorizes investigations to determine the structure and scope of the enterprise as well as the relationship of the members.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107_____

**1. General Authority**

a. A Terrorism Enterprise Investigation may be initiated when facts or circumstances reasonably indicate that two or more persons are engaged in an enterprise for the purpose of:

(i) furthering political or social goals wholly or in part through activities that involve force, violence or other unlawful acts;

(ii) engaging in terrorism as defined in N.Y. Penal Law § 490.05, or

(iii) committing any offense described in N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, or 490.35, or other related statutes currently in effect or subsequently enacted.

The standard of "reasonable indication" is identical to that governing Full Investigations generally. In determining whether an investigation should be conducted, the NYPD shall consider all of the circumstances including:

(i) the magnitude of the threatened harm;

(ii) the likelihood that it will occur;

(iii) the immediacy of the threat; and

(iv) any danger to privacy or free expression posed by an investigation.

In practical terms, the "reasonable indication" standard for opening a Terrorism Enterprise Investigation could be satisfied in a number of ways.

*Example: Direct information about statements made in furtherance of an enterprise's objectives which show a purpose of committing crimes described in N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35 or other related statutes currently in effect or subsequently enacted, would satisfy the threshold.*

*Example: Activities such as attempting to obtain dangerous biological agents, toxic chemicals, or nuclear materials, or stockpiling explosives or weapons, with no discernible lawful purpose, may be sufficient to reasonably indicate that an enterprise aims to engage in terrorism.*

b. While no particular factor or combination of factors is required, considerations that will generally be relevant to the determination as to whether the threshold standard for a Terrorism Enterprise Investigation is satisfied include, as noted, a group's statements, its activities, and the nature of potential unlawful acts suggested by the statements or activities. Thus, where there are grounds for inquiry concerning a group, it may be helpful to gather information about these matters, and then to  consider whether these factors, either individually or in combination, reasonably indicate that the group is pursuing terrorist activities or objectives as defined in the threshold standard. Findings that would weigh in favor of such a conclusion include, for example, the following:

(1) Threats or advocacy of violence or other covered unlawful acts. Statements are made in relation to or in furtherance of an enterprise's political or social

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

objectives that threaten or advocate the use of force or violence, or statements are made in furtherance of an enterprise that otherwise threaten or advocate unlawful conduct within the scope of N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35, or other related statutes currently in effect or subsequently enacted which may concern such matters as , for example:

(i) engaging in attacks involving or threatening massive loss of life or injury, mass destruction, or endangerment of the national security;

(ii) killing or injuring public officials, or destroying public facilities, or defying lawful authority;

(iii) killing, injuring or intimidating individuals because of their status as United States nationals or persons, or because of their national origin, race, color, religion or sex; or

(iv) depriving individuals of any rights secured by the Constitution or laws of the United States or the State of New York.

(2) Apparent ability or intent to carry out violence or other covered activities. The enterprise manifests an apparent ability or intent to carry out violence or other activities within the scope of N.Y. Penal Law §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35 or other related statutes currently in effect or subsequently enacted, for example:

(i) by acquiring or taking steps towards acquiring, biological agents or toxins, toxic chemicals or their precursors, radiological or nuclear materials, explosives or other destructive or dangerous material (or plans or formulas for such materials), or weapons, under circumstances where, by reason of the quantity or character of the items, the lawful purpose of the acquisition is not apparent;

(ii) by the creation, maintenance, or support of an armed paramilitary organization;

(iii) by paramilitary training; or

(iv) by other conduct demonstrating an apparent ability or intent to injure or intimidate individuals, or to interfere with the exercise of their constitutional or statutory rights.

(3) Potential Unlawful Act. The group's statements or activities suggest potential unlawful acts that may be relevant in applying the standard for initiating a Terrorism Enterprise Investigation - such as crimes under the provisions of the N.Y. Penal Law that set forth specially defined terrorism or support of terrorism offenses, or that relate to such matters as aircraft hijacking or destruction, attacks on transportation, communications, or energy facilities or systems, biological or chemical weapons, nuclear or radiological materials, assassinations or other violence against public officials or facilities, or explosives.

c.  Mere speculation that force or violence might occur during the course of an otherwise peaceable demonstration is not sufficient grounds for initiation of an

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

investigation under this subpart. But where facts or circumstances reasonably indicate that an individual or group has engaged or aims to engage in conduct described in paragraph 1.a. above in a demonstration, an investigation may be initiated in conformity with the standards of that paragraph. This does not limit the collection of information about public demonstrations by individuals or groups that are under active investigation pursuant to paragraph 1.a. above or any other provisions of these guidelines.

**2. Purpose**

The immediate purpose of a Terrorism Enterprise Investigation is to obtain information concerning the nature and structure of the enterprise as specifically delineated in paragraph (3) below, with a view to the longer range objectives of detection, prevention, and prosecution of the unlawful activities of the enterprise.

**3. Scope**

    a. A Terrorism Enterprise Investigation initiated under these guidelines may collect such information as:

        (i) the identity and nature of an individual or group and its members, their associates, and other persons likely to be acting in furtherance of its unlawful objectives, provided that the information concerns such persons' activities on behalf of or in furtherance of the suspected unlawful activity of the individual, group, or organization;

        (ii) the finances of the individual, group, or organization;

        (iii) the geographical dimensions of the individual, group, or organization; and

        (iv) past and future activities and goals of the individual, group, or organization.

    b. In obtaining the foregoing information, any lawful investigative technique may be used in accordance with the requirements of these guidelines.

**4. Authorization and Renewal**

    a. A Terrorism Enterprise Investigation may be authorized by the Chief of Intelligence or Executive Officer of the Intelligence Bureau or the Commanding Officer of the Criminal Intelligence Section ("the Authorizing Officials"), upon a written recommendation setting forth the facts or circumstances reasonably indicating the existence of an enterprise as described in paragraph 1.a. above. Upon such authorization a notification must be made for final approval by the Deputy Commissioner of Intelligence. When exigent circumstances exist, as described in these guidelines, a Terrorism Enterprise Investigation may be commenced upon the verbal authorization of an Authorizing Official. However, in such cases, the required written recommendation must be submitted as soon as practicable.

    b. A Terrorism Enterprise Investigation may be initially authorized for a period of up to a year. An investigation may be continued upon renewed authorization for additional periods each not to exceed a year. Renewal

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

authorization shall be obtained from the Deputy Commissioner of Intelligence. The request for renewal and action thereon shall be in writing.

c.  Authorizations shall be reviewed by an Authorizing Official before the expiration of the period for which the investigation and each renewal thereof is authorized. In some cases, the enterprise may meet the threshold standard but be temporarily inactive in the sense that it has not engaged in recent acts of violence or other unlawful activities as described in 1.a., nor is there any immediate threat of harm - yet the composition, goals and prior history of the group suggest the need for continuing law enforcement interest. The investigation may be continued in such cases with whatever scope is warranted in light of these considerations.

d.  All Terrorism Enterprise Investigations shall be subject to a review every 6 months by the Chief of Intelligence, or an appropriate executive of the Intelligence Bureau designated by him, to discuss the status of the Terrorism Enterprise Investigation, including, what operational steps should be taken.

e.  A Terrorism Enterprise Investigation shall be presumptively limited to a total duration of 5 years, except where the subject of a Terrorism Enterprise Investigation is a designated foreign terrorist organization.  This presumptive period of duration may be exceeded in the sole discretion of the Deputy Commissioner of Intelligence, in consultation with the Handschu Committee, where facts and circumstances continue to reasonably indicate that two or more persons are engaged in an enterprise for the purposes stated above and either that some further leads should be lawfully investigated or that there is a legitimate law enforcement purpose to be pursued further.  When the presumptive period of duration is exceeded all other provisions regarding a Terrorism Enterprise Investigation continue to apply.

f.  An investigation which has been terminated may be reopened upon a showing of the same standard and pursuant to the same procedures as required for initiation of an investigation.


## VI.    HANDSCHU COMMITTEE

(1) There is hereby established a committee (the "Handschu Committee") whose members are expected and authorized to attend and participate in monthly meetings at which investigations are presented for opening, extension or closure by the Deputy Commissioner for Intelligence. For each monthly meeting, all attending members will be provided with the investigative statement pertaining to each proposed opening, extension or closing and any corresponding requests to use or extend the use of undercover officers or confidential informants.  At the monthly meeting, any member of the Handschu Committee may ask questions and offer opinions regarding the opening, extension or closure of an investigation presented.

(2) Any member of the Handschu Committee may further inquire into the status and conduct of any investigation presented at the meeting, including the use of undercover operations pursuant to section VII herein, provided however that information pertaining to the identity of participants

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

in undercover operations, including confidential informants, shall not be disclosed. A member of the Intelligence Bureau with detailed knowledge of operational steps taken in each investigation presented shall be present at the meeting to help address any questions that arise.

(3) Members of the Handschu Committee from the NYPD will include the Deputy Commissioner of Intelligence, the Chief of Intelligence, the Executive Officer of the Intelligence Bureau, the Commanding Officer of IOAS (Intelligence Operations and Analysis Section), the Executive Officer of IOAS, the Commanding Officer (or the Executive Officer) of the Criminal Intelligence Section, the Assistant Commissioner for Intelligence Analysis, the Deputy Commissioner of Legal Matters, Assistant Deputy Commissioner of Legal Matters, Special Counsel for Intelligence Affairs, and/or their successors or persons who occupy similar positions of authority or expertise.

(4) The Special Counsel for Intelligence Affairs shall lead a quarterly discussion for the Handschu Committee related to the NYPD's compliance during that period in (i) obtaining timely approval in extending or closing investigations, (ii) obtaining timely approval of human source authorizations, and (iii) conducting reviews of Preliminary Inquiries, Full Investigations, and Terrorism Enterprise Investigations every 6 months, as provided in sections V(B)(5), V(C)(4)(d) and V(D)(4)(d) hereof. As part of this quarterly discussion, any member of the Handschu Committee may raise concerns regarding any other aspect of compliance with the Handschu Guidelines. The substance of these quarterly discussions shall be recorded in the minutes of the Handschu Committee meeting.

(5) There shall also be a Civilian Representative on the Handschu Committee who shall, unless unable to do so for good cause, attend and participate in all of the monthly meetings for opening, extension, or closure of investigations and in all of the quarterly discussions led by the Special Counsel for Intelligence Affairs on the same terms and conditions as set forth in paragraphs (1), (2) and (4) above. The Civilian Representative shall be a lawyer who has never previously been an employee of the NYPD. The Civilian Representative shall be appointed by the Mayor upon consultation with the Police Commissioner. The Civilian Representative may be replaced by the Mayor for good cause, with 14 days' advance notice to Class Counsel prior to such replacement. In the event that the Civilian Representative resigns, the Mayor in consultation with the Police Commissioner will appoint a replacement. The position of Civilian Representative will exist for a minimum of five years from the appointment of the first person to fill that role. After that initial five year period, the position of Civilian Representative will continue unless the Mayor applies to the Court for an amendment to the Revised Handschu Guidelines abolishing the position, upon 30 days' advance notice to Class Counsel prior to such application. The amendment to the Revised Handschu Guidelines abolishing the position shall be granted by the Court if the Court finds there have not been systematic and repeated violations of the Guidelines to a degree sufficient to show an NYPD policy to act in such a fashion for a period of three years immediately prior to the application, as shown in the reports submitted to the Court by the Civilian Representative.

(a) The Civilian Representative shall submit to a background investigation conducted by the Department of Investigation.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

(b) The NYPD will facilitate an application for a federal security clearance for the Civilian Representative.

(c) The Civilian Representative shall execute a Non-Disclosure Agreement with the NYPD setting forth his or her undertaking that the proceedings of the Handschu Committee, as well as all materials reviewed by the Civilian Representative for or at the meetings of the Committee, shall be kept confidential and shall not be disclosed to any person except as set forth therein.

(d) The Civilian Representative shall be required to familiarize himself or herself with the Revised Handschu Guidelines governing the investigation of political activity by the NYPD.

(e) If the Civilian Representative concludes that an investigation is being opened, extended, or conducted in violation of the Revised Handschu Guidelines, or that the NYPD is otherwise violating the Revised Handschu Guidelines, the Civilian Representative shall record his or her concerns regarding the purported violation and/or his or her objection to the investigation and the grounds for the objection in the minutes of the Handschu Committee meeting.

(f) If the Civilian Representative concludes that an investigation is being opened, extended, or conducted in violation of the Revised Handschu Guidelines, the Civilian Representative shall bring such investigation to the attention of the Police Commissioner. The Civilian Representative shall be provided with means to present his or her conclusion to the Police Commissioner directly (hereafter, "a VI(5)(f) communication"). The Police Commissioner shall inquire into the investigation and report the findings of the inquiry to the Civilian Representative within seven (7) days after receipt of the VI(5)(f) communication.

(g) If the Civilian Representative has concerns about the NYPD's compliance with the Revised Handschu Guidelines, and the Police Commissioner has not provided a timely response to the Civilian Representative's VI(5)(f) communication regarding such concerns, or the Civilian Representative is not satisfied with the Police Commissioner's response, the Civilian Representative may communicate those concerns to the Judge assigned to the Handschu case in the Southern District of New York at any time. In the event the Civilian Representative decides to communicate such concerns to the Court, a copy of the communication shall first be served confidentially upon the Police Commissioner, the Deputy Commissioner of Intelligence, and the Deputy Commissioner of Legal Matters seven (7) days prior to its submission to the Court. The Civilian Representative shall retain final authority over and responsibility for the content of the communication. Submission to the Court shall be effectuated in compliance with Section VI(5)(k) below.

(h) After complying with provision VI(5)(f) hereof, if the Civilian Representative concludes at any time that the NYPD is systematically and repeatedly violating the Revised Handschu Guidelines to a degree sufficient to show a NYPD policy to act in

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

such a fashion, the Civilian Representative shall report the alleged systematic violation to the Judge assigned to the Handschu case in the Southern District of New York.  In the event the Civilian Representative decides to communicate such concerns to the Court, a copy of the communication shall first be served confidentially upon the Police Commissioner, the Deputy Commissioner of Intelligence, and the Deputy Commissioner of Legal Matters seven (7) days prior to its submission to the Court, provided that the Civilian Representative shall retain final authority over and responsibility for the content of the communication.  Submission to the Court shall be effectuated in compliance with Section VI(5)(k) below.

(i) In addition, the Civilian Representative shall file an annual report with the Court related to his or her actions and observations as a member of the Handschu Committee.  The annual report will (A) indicate whether the Civilian Representative has objected to any investigations over that period and the basis for that objection; (B) state whether the NYPD has (i) substantially obtained timely approval for extending and closing investigations, (ii) substantially obtained timely approval for the use of human sources, and (iii) substantially fulfilled its obligation to review Preliminary Inquiries, Full Investigations, and Terrorism Enterprise Investigations every 6 months, as provided in sections V(B)(5), V(C)(4)(d) and V(D)(4)(d) hereof; and (C) address any communication during the annual period by the Civilian Representative to the Court under VI(5)(g) or (h).  Prior to submission of the annual report to the Court, the Civilian Representative shall first serve copies confidentially to the Police Commissioner, Deputy Commissioner of Intelligence, and Deputy Commissioner of Legal Matters 21 days prior to submission to the Court, provided that the Civilian Representative shall retain final authority over and responsibility for the content of the report.

(j) The report and communications permitted under VI(5)(g), (h) and (i) will not include the number of investigations reviewed over the term, information deemed classified by the federal government, information obtained from other law enforcement or government agencies, information that reveals the identity of an individual or organization, information subject to the law enforcement privilege or other applicable privileges, or information that is otherwise protected by state or federal law.

(k)  At the time that the Civilian Representative submits a communication or report to the Court pursuant to VI(5)(g), (h) or (i), notice of the Court's receipt of a communication or report from the Civilian Representative shall be entered on the Court's docket.  The content of the communication or report to the Court shall, in the first instance, be maintained by the Court confidentially and under seal.  The NYPD shall have 21 days from the filing of the communication or report to notify the Court (i) whether it contains privileged information or information that is prohibited from disclosure as set forth in VI(5)(j); (ii) if it believes such information can be protected through redaction of the document; or (iii) if it asserts the need to maintain the entire document confidentially and under seal.  The Court shall adjudicate the propriety and scope of any such invocation.  If the NYPD does not assert any such concerns about the information contained in the document, or if the Court determines that the document should be made public without redactions despite such objections by the NYPD, a copy of the report or communication

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

shall be filed in the public docket and served on class counsel.  If the Court determines that redactions can cure the need for the sealing of the entire document, a copy of the report or communication with the redactions shall be filed in the public docket and served on Class Counsel while the original submission by the Civilian Representative shall be maintained under seal.  If the Court determines that the communication or report contains privileged information or information that is prohibited from disclosure as set forth in VI(5)(j) and that redaction cannot cure the need for the sealing of the entire document, the communication or report shall be maintained under seal and there shall be an entry on the Court's docket that the communication or report is being maintained under seal.

(6) Nothing herein shall effect, limit, or diminish the authorization and approval provisions for investigations, which grant exclusive approval authority to the Authorizing Officials or the Deputy Commissioner of Intelligence.

## VII.  INVESTIGATIVE TECHNIQUES

(1) When conducting investigations under these guidelines, the NYPD may use any lawful investigative technique permitted by these guidelines. The choice of investigative techniques is a matter of judgment, which should take account of:

(i)  the objectives of the investigation and available investigative resources;

(ii) the intrusiveness of a technique, considering such factors as the effect on the privacy of individuals and potential damage to reputation;

(iii) the potential effect on the political or religious activity of individuals, groups or organizations and the potential effect on persons who, although not a target of the investigation are affected by or subject to the technique;

(iv)  the seriousness of the unlawful act; and

(v) the strength of the information indicating its existence or future commission of the unlawful act.

(2) Where the conduct of an investigation presents a choice between the use of more or less intrusive methods, the NYPD should consider whether the information could be obtained in a timely and effective way by the less intrusive means. The NYPD should not hesitate to use any lawful techniques consistent with these guidelines in an investigation, even if intrusive, where the intrusiveness is warranted in light of the seriousness of the crime or the strength of the information indicating its existence or future commission. This point is to be particularly observed in investigations relating to terrorist activities.

(3)  Authorized methods in investigations include, among others, use of confidential informants, undercover activities and operations, eavesdropping and video surveillance (as defined in Article 700 of the NY Criminal Procedure Law), pen registers and trap and trace devices, consensual electronic monitoring, and searches and seizures.

a. Undercover Operations

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

(i)   Undercover operations, including confidential informants, may be used when taking into account all the circumstances of the investigation, including the need for the information and the seriousness of the threat, it has been determined that the information sought in the investigation could not be reasonably obtained in a timely and effective way by a less intrusive means. The use of undercovers and confidential informants must be authorized by the Deputy Commissioner of the Intelligence Bureau prior to commencement of the undercover operation. The request to use undercovers or confidential informants and action taken on the request must be in writing and must include a description of the facts on which the investigation is based and the role of the undercover.

(ii)  The use of an undercover or confidential informant will be approved for a period of 90 days and may be extended for additional periods of 90 days with the approval of the Deputy Commissioner of the Intelligence Bureau. Such extensions may be approved for as long as the investigation continues when it has been determined that the information sought in the investigation could not reasonably be obtained in a timely and effective manner by less intrusive means. The request to extend the use of undercovers and action taken on the request must be in writing and must include the reason for the extension.

(iii) Undercovers are strictly prohibited from engaging in any conduct the sole purpose of which is to disrupt the lawful exercise of political activity, from instigating unlawful acts or engaging in unlawful or unauthorized investigative activities.

b. Eavesdropping and Video Surveillance (as defined in Article 700 of the NY Criminal Procedure Law), Pen Registers and Trap and Trace Devices, and Consensual Electronic Monitoring

(i)   All requirements for the use of such methods under the Constitution, applicable statutes, and NYPD regulations or policies must be observed.

(4) Whenever an individual is known to be represented by counsel in a particular matter, the NYPD shall follow applicable law and Department procedure concerning contact with represented individuals in the absence of prior notice to their counsel.

## VIII. DISSEMINATION AND MAINTENANCE OF INFORMATION

A. Dissemination

The NYPD may disseminate information obtained during the Checking of Leads, Preliminary Inquiries and investigations conducted pursuant to these guidelines to federal, state or local law enforcement agencies, or local criminal justice agencies when such information:

(i)   falls within the investigative or protective jurisdiction or litigative responsibility of the agency;

(ii)  may assist in preventing an unlawful act or the use of violence or any other conduct dangerous to human life;

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

     (iii)  is required to be disseminated by interagency agreement, statute, or other law.

B. Maintenance

All documentation required under these Guidelines shall be maintained by the Intelligence Bureau in accordance with general police department practice and applicable municipal record retention and destruction rules, regulations and procedures. Under these rules and practices documents are retained for no less than five years.

## IX. COUNTERTERRORISM ACTIVITIES AND OTHER AUTHORIZATIONS

In order to carry out its mission of preventing the commission of terrorist acts in or affecting the City of New York and the United States and its people, the NYPD must proactively draw on available sources of information to identify terrorist threats and activities. It cannot be content to wait for leads to come in through the actions of others, but rather must be vigilant in detecting terrorist activities to the full extent permitted by law, with an eye towards early intervention and prevention of acts of terrorism before they occur. This Part accordingly identifies a number of authorized activities which further this end, and which can be carried out even in the absence of a checking of leads, Preliminary Inquiry, or Full Investigation as described in these guidelines. The authorizations include both activities that are specifically focused on terrorism and activities that are useful for law enforcement purposes in both terrorism and non-terrorism contexts. The authorized law enforcement activities of the NYPD include carrying out and retaining information resulting from the following activities.

### A. COUNTERTERRORISM ACTIVITIES

1. Information Systems

The NYPD is authorized to operate and participate in identification, tracking, and information systems for the purpose of identifying and locating potential terrorists and supporters of terrorist activity, assessing and responding to terrorist risks and threats, or otherwise detecting, prosecuting, or preventing terrorist activities. Systems within the scope of this paragraph may draw on and retain pertinent information from any source permitted by law, including information derived from past or ongoing investigative activities; other information collected or provided by governmental entities, such as foreign intelligence information and lookout list information; publicly available information, whether obtained directly or through services or resources (whether nonprofit or commercial) that compile or analyze such information; and information voluntarily provided by private entities. Any such system operated by the NYPD shall be reviewed periodically for compliance with all applicable statutory provisions and Department regulations and policies.

2. Visiting Public Places and Events

For the purpose of detecting or preventing terrorist activities, the NYPD is authorized to visit any place and attend any event that is open to the public, on the same terms and conditions as members of the public generally. No information obtained from such visits shall be retained unless it relates to potential unlawful or terrorist activity.

### B. OTHER AUTHORIZATIONS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#_____
DATE FILED 3/9/2107

1. General Topical Research

The NYPD is authorized to carry out general topical research, including conducting online searches and accessing online sites and forums as part of such research on the same terms and conditions as members of the public generally. "General topical research" under this paragraph means research concerning subject areas that are relevant for the purpose of facilitating or supporting the discharge of investigative responsibilities. It does not include online searches for information by individuals' names or other individual identifiers, except where such searches are incidental to topical research, such as searching to locate writings on a topic by searching under the names of authors who write on the topic, or searching by the name of a party to a case in conducting legal research.

2. Use of Online Resources Generally

For the purpose of developing intelligence information to detect or prevent terrorism or other unlawful activities, the NYPD is authorized to conduct online search activity and to access online sites and forums on the same terms and conditions as members of the public generally.

3. Reports and Assessments

The NYPD is authorized to prepare general reports and assessments concerning terrorism or other unlawful activities for purposes of strategic or operational planning or in support of other legitimate law enforcement activities.

## X. PROTECTION OF PRIVACY AND OTHER LIMITATIONS

A. General Limitations

The law enforcement activities authorized by this Part do not include maintaining files on individuals solely for the purpose of monitoring activities protected by the First Amendment or the lawful exercise of any other rights secured by the Constitution or laws of the United States. Rather, all such law enforcement activities must have a valid law enforcement purpose and must be carried out in conformity with all applicable statutes and Department regulations and policies.

B. Construction of Part

This Part does not limit any activities authorized by or carried out under other Parts of these guidelines. The specification of authorized law enforcement activities under this Part is not exhaustive, and does not limit other authorized law enforcement activities of the NYPD.

## XI.    RESERVATION

Nothing in these guidelines shall limit the general reviews or audits of papers, files, contracts, or other records in the possession of the NYPD or City of New York, or the performance of similar services at the specific request of another government agency. Such reviews, audits, or similar services must be for the purpose of detecting or preventing violations of law which are within the investigative responsibility of the NYPD.

Nothing in these guidelines is intended to limit the NYPD's responsibilities to investigate certain applicants and employees, or to pursue efforts to satisfy any other of its legal rights, privileges,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED 3/9/2107

or obligations. These guidelines are set forth solely for the purpose of internal NYPD guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural; enforceable at law by any party in any matter, civil or criminal, nor do they place any limitation on otherwise lawful investigative and litigative prerogatives of the NYPD or City of New York.