**Third Annual Report of the Civilian Representative
To the New York City Police Department's
Handschu Committee.**

This is the third Annual Report of the Civilian Representative to the New York City Police Department's Handschu Committee, produced pursuant to Section VI (5)(i) of the Revised Handschu Guidelines. This Report covers the work of the Handschu Committee from March 2019 to March 2020. The Handschu Committee met each month during this twelve-month period with meetings typically lasting between two and three hours. I attended each meeting during this twelve-month period.

## Preliminary Matters

It is the stated policy of the New York City Police Department ("NYPD") that investigations involving political activity conform to the guarantees of the Constitution, including the guarantee of equal protection. It is further the stated policy of the NYPD that care be exercised in the conduct of those investigations so as to protect constitutional rights, including the right to be free from investigation in which race, religion, or ethnicity is a substantial or motivating factor. Matters investigated by the NYPD must be confined to those supported by a legitimate law enforcement purpose.

As a result of a federal court order entered in 1985, the NYPD is bound by guidelines, which were revised in March 2017. These Revised Handschu Guidelines[1] ("Handschu Guidelines" or "Guidelines") govern NYPD investigation of political activity. The Handschu Guidelines (i) limit the investigation of political activity to those circumstances when there is specific information of criminal activity; (ii) establish the Handschu Committee ("Committee") to oversee compliance; and (iii) establish the role of the Civilian Representative.

[1] The Revised Handschu Guidelines are attached to this Report

The Handschu Guidelines provide for the following levels of investigation by the NYPD, which I briefly describe below. Descriptions of these investigation levels are fully set out in the Guidelines attached:

A. **Checking of Leads.** This lowest level of investigative activity encompasses the prompt and extremely limited checking-out of initial leads which is warranted when information is received regarding the possibility of the conduct of unlawful activity.

B. **Preliminary Inquiries.** A Preliminary Inquiry is warranted when the responsible handling of an allegation requires some further scrutiny beyond the prompt and extremely limited checking of an initial lead. The possibility of unlawful activity to initiate a Preliminary Inquiry requires an allegation or information that is articulable and factual. However, such allegation or information need not have been verified as true or accurate. Whether it is appropriate to open a Preliminary Inquiry immediately, or instead to engage in a limited Checking of Leads, depends on the circumstances presented.

C. **Full Investigation.** A Full Investigation may be initiated when facts or circumstances reasonably indicate that an unlawful act has been, is being, or will be committed. A Full Investigation may be conducted to prevent, solve or prosecute such unlawful activity. The standard of "reasonable indication" is substantially lower than probable cause.

D. **Terrorism Enterprise Investigation.** A Terrorism Enterprise Investigation is an investigation to determine the identity and nature of a group or organization involved in unlawful acts, its geographic dimensions, its past acts and intended goals and its capacity for harm, among other factors. A Terrorism Enterprise Investigation may be initiated when facts or circumstances reasonably indicate that two or more persons are engaged in an enterprise for the purpose of:

i. Furthering political or social goals wholly or in part through activities that involve force, violence or other unlawful acts;

n. Engaging in terrorism as defined in the N.Y. Penal Law § 490.05; or

iii. Committing certain offenses described in N.Y. Penal Law and other statutes currently in effect or later enacted.

In determining whether a Terrorism Enterprise Investigation should be conducted the NYPD shall consider all of the circumstances, including:

1. The magnitude of the threatened harm;
2. The likelihood that it will occur;
3. The immediacy of the threat; and
4. Any danger to privacy or free expression posed by the investigation.

## The Handschu Committee

Members of the Handschu Committee include: the Deputy Commissioner of Intelligence, the Chief of Intelligence, the Executive Officer of the Intelligence Bureau, the Commanding Officer of IOAS (Intelligence Operations and Analysis Section), the Executive Officer of IOAS, the Commanding Officer (or Executive Officer) of the Criminal Intelligence Section, the Assistant Commissioner for Intelligence Analysis, the Deputy Commissioner of Legal Matters, the Assistant Deputy Commissioner of Legal Matters, Special Counsel for Intelligence Affairs, and the Civilian Representative.

The Handschu Committee members are authorized and expected to attend and participate in monthly meetings at which investigations are presented for opening, extension, or closure by the Deputy Commissioner for Intelligence. For each monthly meeting all attending members will be provided with the Investigative Statement pertaining to each proposed opening, extension or closing, and any corresponding requests to use or extend the use of undercover officers or confidential informants.

## Responsibilities of the Civilian Representative ("CR")

- Unless unable to do so for good cause, the CR is required to attend and participate in all of the monthly meetings of the Handschu Committee, and in all of the quarterly discussions led by the Special Counsel for Intelligence Affairs (whose current title is Director of Intelligence Matters).

- If the CR deems a Preliminary Inquiry, Full Investigation or a TEI is being opened, extended, or conducted in violation of the Handschu Guidelines or the law, the CR shall bring the investigation to the attention of the Police Commissioner. The Police Commissioner shall inquire into the investigation and report the findings of the inquiry to the CR within seven days after receipt of the CR's conclusion. If the Police Commissioner has not provided a timely response to the CR's concerns or if the CR is not satisfied with the Police Commissioner's response, the CR may communicate those concerns to the Judge assigned to the Handschu case in the Southern District of New York.

- The CR is authorized to review the use or extension of the use of undercover officers and/or confidential informants. The CR shall record his concerns regarding the violation and/or his objections in the minutes of the Handschu Committee meeting if he concludes: 1) the opening, extension, conduct or use of undercover officers and/or confidential informants in an investigation violates the Handschu Guidelines; or 2) that the NYPD is otherwise violating the Handschu Guidelines or the law in the use or extension of the use of undercover officers and/or confidential informants.
- The CR is empowered to report to the Court at any time if there are violations of the Handschu Guidelines. If at any time the CR deems there are systematic and repeated violations of the Handschu Guidelines to a degree sufficient to show an NYPD policy to act in such a fashion, the CR shall report the alleged systematic violation directly to the U.S. District Judge assigned to the Handschu case in the Southern District of New York.

- The CR shall file an annual report with the Court related to his actions and observations as a member of the Handschu Committee. The annual report will:

  A. Indicate whether the CR has objected to any investigations over that period and provide the basis for that objection;
  B. State whether the NYPD has (i) substantially obtained timely approval for extending and closing investigations, (ii) substantially obtained timely approval for the use of human sources, and (iii) substantially fulfilled its obligation to review Preliminary Inquiries, Full Investigations, and Terrorism Enterprise Investigations every six months; and
  C. Address any communication during the annual period by the CR to the Court.

**Preparation and Review of Investigative Statements**

As part of my role as Civilian Representative, I spent some time reviewing publicly filed declarations and speaking with those directly involved in the preparation of documents presented to the Handschu Committee.

The Legal Matters Unit for Intelligence Affairs ("LMU"), is part of the NYPD's Legal Bureau, and is integrated into the daily activities of the NYPD Intelligence Bureau. Their role includes the following:

- Reviewing, and participating in the preparation of Investigative Statements for Handschu Investigations for purposes of providing legal advice and guidance;

- Attending and participating in case review and other meetings concerning Handschu Investigations;

- Reviewing field reports prepared by investigative units conducting Handschu Investigations and other NYPD Intelligence Bureau units that arguably may be subject to the Handschu Guidelines;

- Attending a daily intelligence briefing for the Deputy Commissioner of Intelligence and Counterterrorism;

- Reviewing proposed guidelines and directives concerning NYPD Intelligence Bureau activities; and

- Meeting with the Deputy Commissioner of Intelligence and Counterterrorism to discuss compliance with the Handschu Guidelines.

Both the LMU and the Intelligence Bureau's Intelligence Analysis Unit participate in the preparation of Investigative Statements, written documents which identify the subject(s) of the investigation and the factual predicate for requesting the investigation. Typically, a member of the Intelligence Analysis Unit, working with the operational unit members assigned to the investigation, prepares an initial draft Investigative Statement. Once prepared, the Intelligence Analysis Unit provides the draft Investigative Statement to the Legal Matters Unit for its review.

It is customary for an Investigative Statement received by the Legal Matters Unit to undergo rounds of revision and coordination with the Intelligence Analysis Unit. The LMU may ask for further clarifications, explanations and/or documents as the situation calls for. The finalized Investigative Statement is then submitted to the Commanding Officer of the NYPD Intelligence Bureau and the Deputy Commissioner of Intelligence and Counterterrorism.

The Deputy Commissioner of Intelligence and the Commanding Officer (or in his absence, the Executive Officer) of the NYPD Intelligence Bureau have the ultimate responsibility for approving the opening and extension of all Handschu Investigations. Their approval is sought on the basis of the Investigative Statements.

When determination is made by executives responsible for an existing Handschu Investigation not to request an extension a written request to close the investigation is prepared and submitted to the Commanding Officer of the NYPD Intelligence Bureau and Deputy Commissioner of Intelligence and Counterterrorism.

**NYPD Access Granted to the Civilian Representative**

For the third year in a row, the NYPD has granted me access to meetings and briefings, examples below, in addition to the monthly Handschu Committee meetings. The NYPD has provided me with a pass that allows me unescorted access to the department's headquarters at 1 Police Plaza. In addition to that general access to attend Handschu Committee meetings, the NYPD has continued to grant me access to all meetings relevant to the work of the Committee. This level of access exceeds the degree of access mandated by the Handschu Guidelines.

In the last year, in addition to the Handschu Committee meetings, I have attended at least one meeting in each of the following categories:

- Briefings with the Intelligence Bureau Staff;

- Discussions with the Legal Matters Unit regarding the Handschu case tracking methodology;

- Discussions with the Legal Matters Unit to analyze trends in the Handschu Committee's work;

- Briefing by Deputy Commissioner Miller and other Intelligence Bureau executives regarding the threat of White Supremacists to New York City in response to recent mass shootings (incidents occurring around August 2019) ;

- Briefings with other domestic and foreign intelligence agencies regarding incidents of terrorism and the ensuing investigations;

- Briefings by Deputy Commissioner Miller and other Intelligence Bureau executives regarding the debriefing practices of protestors;

- Meetings with personnel of the newly formed Racially and Ethnically Motivated Extremism[2] unit (R.E.M.E), receiving an overview of the unit and an examination of its casework;

**Strengthening of the Handschu Review Process**

The Handschu Guidelines empower any member of the Handschu Committee to inquire into the status and conduct of any investigation, including investigations using undercover operations. The Committee discusses authorizations and extensions of undercover operations at least every 90 days, and sometimes more frequently. These discussions help ensure that the Committee maintains meaningful oversight of the course and conduct of an investigation.

In addition to previous efforts to strengthen the Handschu review process, during the period covered by this report, as a result of broad discussions which took place during Handschu Committee meetings, the NYPD's Intelligence Bureau has implemented various changes to its practices, for example, the Handschu Committee has revised its practices to:

- *Include, to the greatest extent possible, only information known to the NYPD through the department's investigations rather than rely on the investigations of other law enforcement agencies;*
- *Apply the Handschu guidelines to the NYPD's work when an investigation is being conducted by another law enforcement agency with the assistance of the NYPD;*
- *Include more detail regarding investigative requests by other law enforcement agencies to state when the investigative request was made, and details regarding the current status of the other agency's investigation;*
- *Include more detail regarding prior criminal history of any subject of a Handschu investigation; and*
- *Include a clearer statement of an investigation's connection to activities, people or structures in New York City.*

**Civilian Representative's Review Process**

It's important to understand both the process of the Handschu Committee, and my review process. Every month, prior to the Committee meeting, I receive a briefing book that contains: (1) the minutes of the previous Handschu Committee meeting; (2) the agenda for the current meeting; (3) all requests to open or extend Preliminary Inquiries, Full Investigations, or TEIs; (4) the corresponding authorization or extension of undercover operations in those investigations; and, (5) any requests to close investigations. The briefing book contains the facts and background

[2] The Racially and Ethnically Motivated Extremism unit (R.E.M.E.) is a unit within the NYPD that is primarily dedicated to investigating terror threats from far-right and neo-Nazi organizations. R.E.M.E. was formed in December 2019.

information that the NYPD believes justifies each particular request, as written in the Investigative Statements.

When I receive the briefing book I review each written request with the following in mind:

**General Considerations (among others)**

- What is the magnitude of the threatened harm?
- What is the likelihood that it will occur?
- Does the proposed investigation pose any danger to privacy or free expression posed by an investigation?
- Can investigators obtain the information in a timely manner using less obtrusive means?
- Is there a reasonable basis to believe that the proposal meets the applicable standard for opening or extending a Handschu investigation?
- How imminent is the threat?
  - Is the information provided remote in time or relationship to the proposed target of the investigation?
  - Is there a threat to life or substantial property interests?
  - Is there an imminent risk of evidence being hidden, destroyed, or altered?
- How reliable is the source of the information?
  - Has law enforcement used this source before?
  - Has previously provided information been obtained legally?
  - Has previously provided information proved verifiable?
  - Given the circumstances, is it necessary to investigate an individual to obtain this information, and is this investigation the most effective means of obtaining it?

When a request targets a location or institution, is there a reasonable indication that the leadership or staff members are involved in unlawful activity?

**Findings**

Anecdotal accounts by Handschu Committee members and Intelligence Bureau personnel affirm that the processes of approving Investigative Statements and continuing investigations has continued to improve year over year. Discussions of Investigative Statements continue to be more thoughtful and thorough both in Handschu committee meetings and in the numerous meetings and conversations that occur on an operational level prior to the decision to draft an Investigative Statement.

These more thorough and thoughtful discussions prior to the Handschu committee meeting may be part of the reason a slight (5%) decrease in the number of requests reviewed by the Handschu committee was seen in the past year. The number of investigative requests that the committee denied, or provisionally denied pending additional information or revision of the request, also decreased (by 50%). The number of approved requests to authorize undercover investigations decreased by 21%. The number of investigations closed increased by 17%. In the last year, there was a 17% decrease in the number of requests to open new investigations and there was a 40% increase in the approval of requests to close pending investigations.

However, the period between March 8, 2019 and March 12, 2020 saw:

1. the *average length* of all Handschu investigations *increase* from 302 days to 605 days;

2. the *average length* of Preliminary Investigations *increase* by 118 days;

3. the *average length* of a Full Investigation *increase* by 454 days; and

4. the *average length* of a Terrorism Enterprise Investigation *increase* by 644 days.

The reason the average length of investigations increased while the number of open investigations decreased may best be explained by a simple example. Let's assume that there are three investigations open. Investigation #1 has been open for 150 days; investigation #2 has been open for 150 days; and investigation #3 has been open for 30 days. The *average* investigation has been open for 110 days (150 + 150 + 30 = 330 days, divided by 3 investigations). If the 30 day investigation is closed (33% fewer investigations) the *average* number of days the investigations have been open will *increase* to 150 days. You might imagine that there are some recognized terrorist organizations who have garnered the long-term investigative interest of the NYPD. The length of those long-term, continuing investigations will skew the averages when shorter investigations are closed.

Taken together, the anecdotal accounts, data, and my observations over the last year leads me to the belief that the work and analytical rigor of the Handschu Committee has gotten stronger. The Investigative statements are clearer and more fulsome and the discussions are more focused and salient.

Here is a brief year to year comparison of some select data points. In the last year:

- The number of requests reviewed by the Handschu Committee decreased by 5%
- Instances where the Deputy Commissioner of Intelligence *denied* a request to close an investigation was 0
- The average length of all Handschu investigations (Preliminary, Full, and Terrorism Enterprise) closed between March 8, 2019 (the cutoff date for the data included in my last report) to March 12, 2020 was 605 days which is an average increase of 302 days.
- The number of Investigations closed by the Handschu Committee increased by 17%
- The number of Preliminary Investigations closed equaled the number closed in the last reporting period.
- The number of Full Investigations closed increased by 150%
- The number of Terrorism Enterprise Investigations closed remained the same
- The number of Approved Requests to Open Investigations decreased by 17%
- The number of Approved Requests to Authorize Undercover Investigations decreased by 21%
- The number of Approved Requests to Extend Investigations increased by 5%
- The number of Approved Requests to Close an Investigation increased by 40%

**Required Reporting Pursuant to Section VI (5)(i) of the Revised Handschu Guidelines**

**The Civilian Representative's Findings**

Pursuant to Section VI (5)(i) of the Handschu Guidelines the Civilian Representative (CR) is required to report on five items:

1. Whether or not the CR has objected to any investigation over the period covered by this report and my basis for that objection.

I have not made any formal objections to any investigation within the past year. All of the members of the Handschu Committee discussed at great length each decision to open or extend an investigation. The Committee made no final recommendation to open or extend an investigation that I, after substantive participation in these discussions, did not agree with. Additionally, there has not been an occasion where I believed that a request should not be approved and other members of the Handschu Committee expressed disagreement.

At Handschu Committee meetings, the Committee discusses every request in the briefing book in detail. Typically, the Assistant Commissioner of Intelligence Analysis leads the discussion while other Committee members join to provide additional information, background and insights as necessary. Everyone in attendance, both Committee members and other relevant personnel, participate in the discussion of each request. Often, Deputy Commissioner Miller begins the discussion of each investigative request during or after the Assistant Commissioner of Intelligence Analysis's presentation. Everyone in the meeting is free to ask questions. If my concerns are not addressed by the presentation or the following discussion, I will raise those concerns during the discussion. My questions have included, among other things, concerns about: (1) the remoteness of the latest information provided; (2) the demonstrated reliability of the person(s) providing the considered information; (3) the potentially protected nature of the speech; and (4) the quantum of reliable information supporting the request. Through this process, the Handschu Committee has reached a consensus on the propriety of each request.

If, after reviewing a request and prior to the Handschu Committee meeting, I am concerned about the propriety of an application or the justifications provided, I will note my questions for discussion in the Committee meeting. On some occasions I have alerted the Director of Intelligence Matters, head of the Legal Matters Unit for Intelligence Affairs, of my concerns *prior* to the meeting, so that the NYPD would be prepared to bring any additional materials or personnel to the meeting to provide more detail regarding the request challenged.

Deputy Commissioner Miller is deferential to the Committee's recommendations; at each instance in which the Committee has come to a general consensus that there is not enough information to initiate or extend a proposed investigation, Deputy Commissioner Miller has declined to do so. On some occasions, the denial of an opening or extension was driven by concerns raised by Deputy Commissioner Miller or other NYPD personnel.

2. Whether the NYPD has substantially obtained timely approval for extending and closing investigations.

I find that over the last twelve months the NYPD has met their deadlines for extending and closing investigations 100% of the time. This observation is based upon my review of the NYPD data on the extension and closing of investigations, in addition to quarterly presentations on the deadlines by the Director of Intelligence Matters.

The Intelligence Bureau's tracking system includes automated alerts notifying certain Intelligence Bureau and Legal Bureau personnel when all active investigations and undercover authorizations are due for renewal. This system became active on July 1, 2016. As a redundancy, the Legal Matters Unit also revised its spreadsheet for tracking Handschu-related deadlines in September 2016. The Legal Matters Unit's spreadsheet tracks, among other things, deadlines for investigations, undercover authorizations, operational reviews, and presumptive time limits for investigations. Both the development of the Intelligence Bureau's tracking system and revisions to the Legal Matters Unit spreadsheet were undertaken to assist in complying with the Handschu Guidelines. Neither the Intelligence Bureau's tracking system nor Legal Matters Unit's spreadsheet have changed since the Handschu Guidelines were revised in March 2017.

3. Whether the NYPD has substantially obtained timely approval for the use of human sources.

I find that over the past twelve months the NYPD has met their deadlines for the approval of the use of human resources 100% of the time. This observation is based upon my review of the NYPD data, and quarterly presentations by the Director of Intelligence Matters,.

4. Whether the NYPD has substantially fulfilled its obligations to review Preliminary Investigations, Full Investigations, and Terrorism Enterprise Investigations every six months.

I find that the NYPD has a 100% compliance rate with its obligation to review Preliminary Investigations, Full Investigations and Terrorism Enterprise Investigations every six months. This observation is based upon my review of the NYPD data, and quarterly presentations by the Director of Intelligence Matters.

5. Whether or not I have addressed any communication during the annual period to the Court under VI (5)(g) or (h)

I have not communicated with the Court under VI(5)(g) or (h) during the relevant time period. I have not had concerns about the NYPD's compliance with the Handschu Guidelines and have not observed any Handschu violations.

In the last year I have also held meetings with individual citizens, representatives of various community organizations, religious leaders, concerned lawyers and New York City officials to discuss my work as the Civilian Representative, and to listen to their concerns. I have also held meetings where I have briefed community members on the way the Handschu Committee functions. I think these discussions are very useful and I intend to continue to hold meetings with community members over the next year.

Respectfully Submitted,

Stephen C. Robinson
NYPD Handschu Committee
Civilian Representative

December 31, 2020